# Exhibit A

> THIS OPINION IS A PRECEDENT OF THE
> TTAB

Oral Hearing Held: February 1, 2022                  Mailed: December 20, 2022

## United States Patent And Trademark Office

## Trademark Trial and Appeal Board
————

*Empresa Cubana Del Tabaco d.b.a. Cubatabaco*
*v.*
*General Cigar Co., Inc.*
—————

Cancellation No. 92025859

—————

Michael R. Krinksy, Lindsey Frank, and David Goldstein of Rabinowitz Boudin Standard Krinsky & Lieberman PC, for Empresa Cubana Del Tabaco d.b.a. Cubatabaco.

Andrew L. Deutsch,[1] John M. Nading and Joshua Schwartzman of DLA Piper LLP US, for General Cigar Co., Inc.
————

Before Zervas, Cataldo, and Pologeorgis,
   Administrative Trademark Judges.

Opinion by Pologeorgis, Administrative Trademark Judge:

---

[1] Following briefing and the oral hearing in this matter, Mr. Deutsch withdrew as counsel of record for Respondent because of his retirement from the practice of law. *See* 379 TTABVUE.

Citations in this opinion to the briefs and other docket entries refer to TTABVUE, the Board's online docketing system. *Turdin v. Tribolite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014). Specifically, the number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry where the cited materials appear.

Cancellation No. 92025859

## Overview

Petitioner, Empresa Cubana Del Tabaco d.b.a. Cubatabaco, a Cuban company, seeks to cancel, pursuant to Section 14 of the Lanham Act of 1946, 15 U.S.C. § 1064(c), two registrations owned by Respondent General Cigar Co., Inc., a Delaware corporation, namely, Registration Nos. 1147309[2] and 1898273[3] for the marks COHIBA (in typeset form[4]) and **COHIBA** (in stylized form), respectively, both registered on the Principal Register and both for "cigars" in International Class 34. Petitioner asserts various grounds for cancellation identified below against Respondent's registrations, individually and collectively, including a claim under Article 8 of the Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907 (1929), (hereinafter referred to as "the Pan American Convention"), to which the United States and Cuba are parties. U.S. Dep't of State, Treaties in Force 534 (2020). A petitioner may seek to cancel a registration under Article 8 of the Pan American Convention if the petitioner's mark enjoyed legal protection in another contracting state prior to the respondent's application filing

---

[2] Issued on February 17, 1981; Section 8 affidavit (15 U.S.C. § 1058) (third 10-year) accepted/Section 9 affidavit (15 U.S.C. § 1059) granted on November 18, 2021.

[3] Issued on June 6, 1995; Section 8 affidavit (15 U.S.C. § 1058) (second 10-year) accepted/Section 9 affidavit (15 U.S.C. § 1059) granted on July 6, 2015.

[4] Prior to November 2, 2003, "standard character" drawings were known as "typed" or "typeset" drawings. *See In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1909 n.2 (Fed. Cir. 2012) ("until 2003, 'standard character' marks formerly were known as 'typed' marks."). A typed or typeset mark is the legal equivalent of a standard character mark. TRADEMARK MANUEL OF EXAMINING PROCEDURE (TMEP) § 807.03(i) (July 2022). By definition, a standard character mark is not limited to any particular stylization, font style, size or color. *See* Trademark Rule 2.52(a), 37 C.F.R. § 2.52(a).

Cancellation No. 92025859

date and the respondent either had knowledge of the petitioner's mark prior to filing its application or the petitioner used the mark in the U.S. prior to the respondent's filing date. For the reasons explained below, we grant the petition to cancel both of Respondent's registrations under Article 8 of the Pan American Convention.

## The Pleadings

By way of its amended petition to cancel,[5] Petitioner pleads the following grounds for cancellation:

- Claims asserted only against Respondent's Registration No. 1147309 for the mark COHIBA (in typeset form): (1) abandonment, (2) fraud, and (3) adoption of the mark in bad faith and for impermissible reasons.

- Claims asserted only against Respondent's Registration No. 1898273 for the mark **COHIBA** (stylized form): (1) likelihood of confusion under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), (2) Respondent applied for and obtained the COHIBA registration for the purpose of capitalizing on and exploiting the renown and reputation of Petitioner's COHIBA mark in the United States,[6] (3) relief under Article 6bis of the Paris Convention for Protection of Industrial Property, and (4)

---

[5] 61 TTABVUE.

[6] We construe this ground as a claim of misrepresentation of source of the goods under Section 14(c) of the Lanham Act, 15 U.S.C. § 1064(3), because the parties tried and briefed the claim as such. *See* Petitioner's main trial brief, p. 52-54 and supporting citations to the trial record (366 TTABVUE 54-56); *see also* Respondent's main trial brief, p. 53-55 and supporting citations to the trial record (368 TTABVUE 55-57). We thus construe Petitioner's operative pleading, as amended, to include this claim. *See* Fed. R. Civ. P. 15(b). We similarly construe Respondent's operative answer to be amended to deny the salient allegations of this construed misrepresentation of source claim.

Cancellation No. 92025859

purported claim based on the "well-known" mark doctrine.

● Claims asserted against both Registration Nos. 1147309 and 1898273: (1) claim under Articles 7 and 8 of the Pan American Convention, and (2) priority of use.[7]

Petitioner also pleads, inter alia, ownership of pending application Serial No. 75226002 for the typeset mark COHIBA for "raw tobacco; cigars; chewing tobacco; cigarettes; cut tobacco; matches; tobacco pipes not of precious metals; tobacco pipe holders not of precious metals; ashtrays not of precious metals; match boxes not of precious metals; cigar cases not of precious metals; and humidors not of precious metals" in International Class 34, filed under Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(e), on the basis of its ownership of a Cuban registration of the mark **COHIBA** [8] for the same goods.[9] Additionally, Petitioner alleges that its pending application was refused registration based on Respondent's subject registrations on the ground that Petitioner's mark, when used on or in connection with the identified goods, so resembles Respondent's COHIBA marks that confusion would be likely.[10]

---

[7] Priority of use is not a stand-alone claim, but rather one element of a likelihood of confusion claim under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). Thus, in order to prevail on its pleaded likelihood of confusion claim against Respondent's subject Registration No. 1898273, Petitioner must prove **both** priority of use of its pleaded mark and a likelihood of confusion. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 44-45 (CCPA 1981).

[8] This is the manner in which the mark COHIBA is displayed on Petitioner's Cuban trademark registration. *See* Petitioner's Notice of Reliance, Exh. 1 (169 TTABVUE 164).

[9] Petitioner's Amended Petition to Cancel, ¶ 1 (61 TTABVUE 3).

[10] *Id*. at ¶ 16 (61 TTABVUE 8).

Cancellation No. 92025859

Respondent denied the salient allegations of the amended petition to cancel[11] and asserted the following "affirmative defenses":[12]

- failure to state a claim upon which relief may be granted and failure to plead fraud with particularity;[13]

- Petitioner's pleaded claims are barred by claim preclusion, issue preclusion, as well as the common law concept of merger and bar;

- Petitioner lacks standing to pursue its claims;[14]

- The Board is barred from granting the relief sought by Petitioner, as cancellation of Respondent's COHIBA registrations would be an impermissible transfer of an interest in property to a Cuban entity in violation of the Cuban Assets Control Regulations, 31 C.F.R. § 515.201, et seq.;

- Laches, estoppel, waiver, acquiescence, and unclean hands;

- Petitioner has abandoned its pleaded mark in the United States by failing to enforce it against infringers and/or counterfeiters;

- The statute of limitations of Section 14 of the Lanham Act bars Petitioner's claims in connection with Registration No. 1147309; and

- Petitioner failed to seek leave of the Board prior to filing its amended

---

[11] *See generally* Respondent's Answer to amended Petition to Cancel (62 TTABVUE).

[12] *Id.* (62 TTABVUE 24-26).

[13] The asserted defenses of failure to state a claim and that a particular claim (in this instance, fraud) is not properly pleaded are not true affirmative defenses because they relate to an assertion of the insufficiency of the pleading of Petitioner's claims rather than a statement of a defense to a properly pleaded claim. *See Hornblower & Weeks Inc. v. Hornblower & Weeks Inc.*, 60 USPQ2d 1733, 1738 n.7 (TTAB 2001). They hence are given no further consideration.

[14] Lack of standing, now referred to as entitlement to a statutory cause of action (as discussed more fully below), is also not a true affirmative defense because "[t]he facts regarding standing . . . are part of [a plaintiff's] case and must be affirmatively proved." *Apollo Med. Extrusion Techs., Inc. v. Med. Extrusion Techs., Inc.*, 123 USPQ2d 1844, 1848 (TTAB 2017) (quoting *Lipton Ind., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982)). It hence is not given any further consideration.

Cancellation No. 92025859

pleading and therefore the amended pleading should be dismissed.[15]

Petitioner stated in its main trial brief that it is not pursuing its pleaded Article 6bis and "well-known" mark doctrine claims.[16] Thus, these claims are waived. *In re Google Techs. Holdings, LLC*, 980 F.3d 858, 2020 USPQ2d 11465, at *3 (Fed. Cir. 2020) (waiver is the intentional relinquishment or abandonment of a known right). In addition, because Respondent discussed only issue preclusion in its brief, it has waived its other affirmative defenses. *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1753 n.6 (TTAB 2013) (affirmative defense not argued in brief deemed waived), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014); *NT-MDT LLC v. Kozodaeva*, 2021 USPQ2d 433, at *5 n.8 (TTAB 2021) (citing *Alcatraz Media*). The parties participated in an oral hearing on the case on February 1, 2022.

## The Record

The record includes the pleadings, as amended, and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the files of Respondent's registrations. The parties each have submitted an extensive volume of evidence, including, by stipulation of the parties[17] and as approved by the Board,[18] evidence submitted in a federal civil action

---

[15] By order dated June 23, 2011, *see* 60 TTABVUE, the Board noted that Petitioner indicated in its March 28, 2011 communication its intent to file an amended pleading, *see* 54 TTABVUE, and, therefore, the Board allowed Petitioner time to do so. Thus, Respondent's purported "affirmative defense" that Petitioner failed to seek leave of the Board prior to filing its amended pleading is unavailing and will not be further considered.

[16] 366 TTABVUE 9.

[17] 89 TTABVUE.

[18] 91 TTABVUE.

Cancellation No. 92025859

between the parties, as discussed more fully below. Petitioner's submissions are listed in Appendix A of Petitioner's trial brief[19] and Respondent's submissions are listed in Appendix A of Respondent's trial brief.[20]

We note that some of the evidence proffered by the parties has been designated confidential and filed under seal. We will discuss only in general terms the relevant evidence submitted under seal, if necessary and appropriate. However, to the extent that either party improperly designated testimony and evidence as confidential, we are not bound to maintain the asserted confidential designation. Trademark Rule 2.116(g), 37 C.F.R. § 2.116(g) ("[t]he Board may treat as not confidential that material which cannot reasonably be considered confidential, notwithstanding a designation as such by a party."); *see also Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *12 (TTAB 2022) ("If a party over-designates material as confidential, the Board will not be bound by the party's designation, and will treat as confidential only testimony and evidence that is truly confidential and commercially sensitive trade secrets."); *Kohler Co. v. Honda Giken Kogyo K.K.*, 125 USPQ2d 1468, 1475 (TTAB 2017) (citing *Noble House Home Furnishings, LLC v. Floorco Enters., LLC*, 118 USPQ2d 1413, 1416 n.21 (TTAB 2016)).

We additionally note that the parties have submitted printouts from various websites downloaded from the Internet. Although admissible for what they show on their face, *see* Trademark Rule 2.122(e)(2), 37 C.F.R. § 2.122(e)(2), if the parties seek

---

[19] 365 TTABVUE 58-77 (confidential version) and 366 TTABVUE 58-77 (redacted version).

[20] 367 TTABVUE 59-70 (confidential version) and 368 TTABVUE 59-70 (redacted version).

Cancellation No. 92025859

to rely on the contents of the webpages for the truth of any assertion made therein, the statements in the websites are hearsay unless supported by testimony or other evidence. Fed. R. Evid. 801(c); *WeaponX Performance Prods. Ltd. v. Weapon X Motorsports, Inc.*, 126 USPQ2d 1034, 1038 (TTAB 2018); *Safer, Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1039-40 (TTAB 2010); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 704.08(b) (2022) ("The probative value of Internet documents is limited. They can be used to demonstrate what the documents show on their face. However, documents obtained through the Internet may not be used to demonstrate the truth of what has been printed.").

## Evidentiary Objections

Both parties lodged extensive evidentiary objections on various grounds, including relevancy and hearsay.[21] As a general matter, "the Board is capable of weighing the relevance and strength or weakness of the objected-to testimony and evidence, including any inherent limitations," and keeping in mind "the various objections raised by the parties" in determining the probative value of objected-to testimony and evidence. *Kohler Co. v. Honda Giken Kogyo K.K.*, 125 USPQ2d at 1478 (citing *Luxco,*

---

[21] *See* Appendix B of Petitioner's Main Brief (365 TTABVUE 78-127 (confidential version) and (366 TTABVUE 78-127 (redacted version)); *see* Appendix B of Respondent's Main Brief (367 TTABVUE 71-126 (confidential version)) and (368 TTABVUE 71-126 (redacted version)). The parties also objected to certain evidence on the ground of lack of foundation. However, objections that the submitting party failed to establish the proper foundation for evidence are procedural in nature and must be raised promptly to allow an opportunity to cure. *Moke America LLC v. Moke USA, LLC*, 2020 USPQ2d 10400, at *4 (TTAB 2020); *The Wet Seal, Inc. v. FD Mgmt.*, Inc., 82 USPQ2d 1629, 1637 n. 16 (TTAB 2007). Because the foundation objections were raised only in the trial briefs, they are waived as untimely. *Sabhnani v. Mirage Brands, LLC*, 2021 USPQ2d 1241 (TTAB 2021); *Pass & Seymour, Inc. v. Syrelec*, 224 USPQ 845, 846 (TTAB 1984).

Cancellation No. 92025859

*Inc. v. Consejo Regulador del Tequila, A.C.*, 121 USPQ2d 1477, 1479 (TTAB 2017)).

Suffice it to say, we have considered all of the testimony and exhibits submitted by the parties. In doing so, we have kept in mind the various objections raised by the parties, and we have accorded, to the extent necessary and appropriate, whatever probative value the subject testimony and exhibits merit.

## Procedural History of Proceeding

On January 15, 1997, Petitioner filed its original petition to cancel.[22] In lieu of filing an answer to the original complaint, Respondent filed a motion to dismiss on the ground that Petitioner, as a Cuban entity, was purportedly required to obtain a specific license from the U.S Department of Treasury's Office of Foreign Assets Control (OFAC) in order to commence this proceeding but failed to do so.[23] Prior to reaching the merits of Respondent's motion to dismiss, the Board became aware of a federal civil action between the parties before the United States District Court for the Southern District of New York and required the parties to submit copies of the civil action pleadings.[24] By order dated January 28, 1998, the Board suspended this cancellation proceeding pending the final disposition of the civil action.[25] The civil action concluded in July of 2010. A review of the disposition of the civil action is

---

[22] 1 TTABVUE.

[23] 5 TTABVUE. In a communication filed on March 23, 2011, Respondent advised the Board that, in light of the federal litigation between the parties, Respondent's motion to dismiss is no longer viable. *See* 53 TTABVUE. As such, Respondent further advised that it is withdrawing its motion to dismiss without prejudice. *Id.* Accordingly, we give no further consideration to Respondent's motion to dismiss.

[24] 10 TTABVUE.

[25] 15 TTABVUE.

Cancellation No. 92025859

warranted, in light of the operative pleadings of this case.

Prior to filing its federal complaint, Petitioner requested a special license from OFAC to commence litigation against Respondent in a federal district court for its use of the COHIBA mark. In October of 1997, OFAC agreed and granted Petitioner a special license to "initiate legal proceedings in the U.S. courts and to otherwise pursue their judicial remedies with respect to claims to the COHIBA trademark." *See Empresa Cubana Del Tabaco, d.b.a. Cubatabaco v. Culbro Corp., Gen. Cigar Co., Inc. and Gen. Cigar Holdings, Inc.*, 399 F.3d 462, 73 USPQ2d 1936, 1945 (2d Cir. 2005). On November 12, 1997, Petitioner commenced the civil action in the U.S. District Court for the Southern District of New York.[26] In its civil complaint, Petitioner alleged that Respondent's use of the COHIBA mark constituted trademark infringement, trade dress infringement, false designation of source of origin, unfair competition, misappropriation and violation of the Federal Trademark Dilution Act under the Lanham Act, international conventions,[27] and New York State law, including New York State common law.[28] Petitioner requested that the district court grant, among other relief, an order canceling Respondent's subject registrations.[29]

During the civil action proceeding, Petitioner stipulated to the dismissal with

---

[26] 11 TTABVUE 5-21.

[27] Petitioner brought claims under (1) Sections 6bis and 10bis, as well as Article 10, of the Paris Convention for Protection of Industrial Property, (2) Articles 7, 8, 20 and 21 of the Pan American Convention under Section 44(h) of the Lanham Act, 15 U.S.C. § 1126(h), and (3) Article 22 of the Trade-Related Aspects of Intellectual Property Rights (TRIPS). *Id*.
[28] *Id*.

[29] *Id*.

Cancellation No. 92025859

prejudice of its TRIPS claim, the claim that Respondent violated Article 10 of the Paris Convention, and claims under Section 43(a) of the Lanham Act for false designation of origin and deceptive advertising in light of the U.S. Court of Appeals for the Second Circuit's decision in *Havana Club Holding S.A. v. Galleon S.A.*, 203 F.3d 116 (2d Cir. 2000).[30] *See Empresa Cubana de Tabaco v. Culbro Corp.*, 123 F. Supp. 2d 203 (S.D.N.Y. 2000).

Respondent thereafter moved for summary judgment in the civil action to dismiss Petitioner's complaint on the basis of estoppel, acquiescence, and laches due to Petitioner's alleged long delay in challenging Respondent's use and registrations of the COHIBA trademark. Petitioner cross-moved (1) to strike Respondent's affirmative defenses of estoppel, acquiescence, and laches; and (2) for partial summary judgment on its claims of abandonment and under Articles 7 and 8 of the Pan American Convention, Article 6bis of the Paris Convention for the Protection of Industrial Property ("Paris Convention"), New York common law, and the Federal Trademark Dilution Act.

Ruling on the parties' cross-motions for summary judgment, the district court (1) granted Petitioner's motion for summary judgment, in part, on its abandonment claim finding Respondent abandoned its COHIBA mark for a period of time and failed to establish an intent to resume use and therefore cancelled Respondent's Reg. No. 1147309 (the standard character COHIBA mark); (2) denied Petitioner's motion for

---

[30] The stipulation stated that the dismissal was with prejudice, except that dismissal would be without prejudice if the U.S. Supreme Court reversed or vacated certain portions of the Second Circuit's decision in *Havana Club*.

Cancellation No. 92025859

summary judgment, in part, on the grounds that (i) material issues of fact exist as to whether Respondent intentionally infringed upon Petitioner's COHIBA mark, and (ii) material issues of fact exist as to whether Petitioner's COHIBA mark was well known in the United States at the time Respondent registered its COHIBA mark; and (3) denied Respondent's motion for summary judgment on its asserted equitable affirmative defenses and granted Petitioner's cross-motion for summary judgment, in part, to dismiss these affirmative defenses. *Empresa Cubana Del Tabaco v. Culbro Corp.*, 123 F. Supp. 2d 247 (S.D.N.Y. 2002). Additionally, the district court dismissed Petitioner's claims under (1) Articles 7 and 8 of the Pan American Convention brought under Section 44(h) of the Lanham Act, 15 U.S.C. § 1126(h), and (2) Article 6bis of the Paris Convention because these international conventions did not confer a right to sue for unfair competition separate from the Lanham Act. *Id.*[31]

On March 26, 2004, the district court, after a bench trial, dismissed Petitioner's claims for New York common-law unfair competition and misappropriation, finding that bad faith was an essential element of these claims, and that there was no evidence that Respondent selected or used the COHIBA mark in bad faith. *See Empresa Cubana Del Tabaco, d.b.a. Cubatabaco v. Culbro Corp.*, 70 USPQ2d 1650 (S.D.N.Y. 2004). The district court also dismissed Petitioner's claims for violation of

---

[31] The district court denied motions by both Petitioner and Respondent to reconsider the district court's disposition of the parties' cross-motions for summary judgment. *See Empresa Cubana de Tabaco v. Culbro Corp.*, 2002 WL 31251005 (S.D.N.Y. Oct. 8, 2002). Additionally, on March 12, 2003, the district court struck Respondent's inadequate defense of abandonment and permitted it to amend its answer to assert an adequate abandonment defense, and excluded the testimony of two late-disclosed witnesses. *See Empresa Cubana de Tabaco v. Culbro Corp.*, 213 F.R.D. 151 (S.D.N.Y. 2003).

Cancellation No. 92025859

the Federal Trademark Dilution Act and the New York anti-dilution statute, and for trade dress infringement, deceptive trade practices, trade dress dilution and false advertising. *Id.* at 1692-96.

The district court, however, found in favor of Petitioner on its Lanham Act Section 43(a) claim for trademark infringement. *Id.* at 1692. It concluded that by 1992, when Respondent applied for its second registration for the COHIBA mark, Petitioner had acquired priority rights in the mark COHIBA in the United States over Respondent under the well-known or famous marks doctrine. *Id.* It based this finding upon its previous holding that Respondent had lost its priority by abandoning use of the COHIBA mark in 1987 and not resuming such use until 1992. *Empresa Cubana Del Tabaco v. Culbro Corp.*, 123 F. Supp. 2d at 269. However, according to the district court, by 1992 Petitioner's COHIBA mark had become famous in the United States and was associated with Petitioner's cigars. The district court stated that Petitioner had rights in the mark that were superior to those of Respondent and these rights precluded Respondent from obtaining its second registration for the COHIBA mark, i.e., Registration No. 1898273. 70 USPQ2d at 1692. The district court also found that there was a likelihood of U.S. consumer confusion between Petitioner's COHIBA mark used in connection with Petitioner's associated goods and Respondent's COHIBA mark and its associated goods. *Id.* at 1689.

In view of these findings, the district court ordered the cancellation of Respondent's Registration No. 1898273 for the mark COHIBA, enjoined Respondent from further use of the COHIBA mark, and ordered Respondent to recall all goods

Cancellation No. 92025859

being offered for sale under the COHIBA mark. *Id.*; *Empresa Cubano Del Tabaco v. Culbro Corp. and General Cigar Co., Inc.*, 2004 WL 925647 (S.D.N.Y. Apr. 30, 2004).

Respondent appealed to the U.S. Court of Appeals for the Second Circuit from the adverse portions of the district court's judgment. Petitioner cross-appealed from those portions of the district court's pretrial orders and the district court's judgment that had dismissed some of Petitioner's claims.

On February 24, 2005, the Second Circuit reversed the district court's finding of trademark infringement. *See Empresa Cubana Del Tabaco, d.b.a. Cubatabaco v. Culbro Corp., Gen. Cigar Co., Inc. and Gen. Cigar Holdings, Inc.*, supra. It vacated the district court's cancellation of Respondent's second registration, and the injunctive and recall relief ordered by the district court.[32] The Second Circuit based its reversal on the Cuban Asset Control Regulations ("CACR"), 31 C.F.R. § 515.201, et seq., which codify the terms of the United States' economic embargo on Cuba. The CACR prevents Cuban entities from selling cigars in the United States. 73 USPQ2d at 1938. The Second Circuit further held that (1) "absent a general or specific license" from OFAC, Section 515.201(b) of the CACR "prohibits the transfer of property rights, including trademark rights, to a Cuban entity by a person subject to the jurisdiction of the United States." 73 USPQ2d at 1944. It also found that forbidden property

---

[32] The Second Circuit did not address the district court's conclusion that Respondent had abandoned its first COHIBA registration, effectively dismissing the issue as moot. *Empresa Cubana del Tabaco v. Culbro Corp.*, 73 USPQ2d at 1943. ("We also do not decide whether the District Court properly found that [Respondent] had abandoned its mark between 1987 and 1992. We have no need to decide that issue because even if [Respondent] did abandon its mark, it owns the mark now because it resumed use of the mark in November 1992 and [Petitioner] is unable, in light of the embargo, to establish that it acquired rights to the mark in the interval.").

14

Cancellation No. 92025859

transfers include transfers by operation of law. 73 USPQ2d at 1945-46.

The Second Circuit found it unnecessary to decide whether the Lanham Act incorporated the "famous marks" doctrine, because even if it were incorporated, Section 515.201(b)(2) of the CACR "clearly bars [Petitioner's] acquisition of the COHIBA mark through the famous marks doctrine."[33] 73 USPQ2d at 1946. The Second Circuit held that Petitioner was not authorized to acquire any rights in the COHIBA mark under any general license in effect previously or at the time of the opinion. 73 USPQ2d at 1947. The court also concluded that the special license granted to Petitioner by OFAC, which allowed Petitioner to sue Respondent in U.S. courts, "does not authorize transfers of property barred by the Regulations," and thus could not support acquisition of the COHIBA mark by Petitioner via the famous mark

---

[33] After oral argument but prior to issuing its decision, the Second Circuit invited the United States Departments of Justice and Treasury ("government") to submit a brief as amicus curiae addressing the question of whether the Cuban embargo regulations barred Petitioner's acquisition of the COHIBA mark in the United States via the famous marks doctrine. 73 USPQ2d at 1942. On November 12, 2004, the government filed its letter brief. *Id*. There, the government asserted that the embargo regulations bar Petitioner's acquisition of the mark via the famous marks doctrine and that the district court's finding of trademark infringement under Section 43(a) must therefore be reversed. *Id*. In addition, the government reasoned that the portion of the district court's order requiring Respondent to deliver merchandise and other materials bearing the COHIBA mark to Petitioner is barred by the regulations. *Id*. According to the government, however, the regulations do not bar the portion of the district court's order that cancels Respondent's registration and enjoins its use of the COHIBA mark. *Id*. at 1942-43. The government noted that Petitioner's ownership of the U.S. COHIBA mark is not required for a Section 43(a) claim, and expressed the view that, given the district court's factual findings, the cancellation of Respondent's mark and the injunction against Respondent's use of the mark is appropriate relief. *Id*. at 1943. On December 3, 2004, the parties filed letter briefs responding to the amicus curiae letter brief filed by the government. *Id*. Petitioner asserted that the government correctly concluded that it was entitled to the relief ordered by the district court under Section 43(a) of the Lanham Act. *Id*. Respondent agreed with the government's conclusion that the embargo regulations barred Petitioner's acquisition of the mark through the famous marks doctrine, but asserted that the government is incorrect in its claim that Petitioner is nonetheless entitled to relief under Section 43(a) of the Lanham Act. *Id*.

Cancellation No. 92025859

doctrine. *Id.*

The Second Circuit also rejected the argument that, even if Petitioner could not acquire the COHIBA mark in the United States, it was still entitled to obtain cancellation of Respondent's registration of the COHIBA mark and an injunction preventing Respondent from using the mark in the United States on the basis of alleged consumer confusion. The Second Circuit specifically held that,

> granting [Petitioner] the injunctive relief sought would effect a transfer of property rights to a Cuban entity in violation of the embargo. There is no contest that, as matters stand, [Respondent] has the full panel of property rights in the COHIBA mark, including the right to exclude or limit others seeking to use the mark in the United States... As it is exactly this brand of property right transfer that the embargo prohibits, we cannot sanction a grant of injunctive remedy to [Petitioner] in the form of the right, privilege and power to exclude [Respondent] from using its duly registered mark... [T]his limitation on judicial authority applies equally to [Petitioner's] Lanham Act and Paris Convention claims.

73 USPQ2d at 1947.

The Second Circuit also found that, inasmuch as Respondent was the owner and sole rightful user of the COHIBA mark in the United States due to its valid registration for the mark, Petitioner could not obtain relief on the basis that Respondent's use of the COHIBA mark is likely to cause confusion in the United States. 73 USPQ2d at 1949. The Second Circuit concluded that Petitioner's claims "against [Respondent's] use of its duly registered COHIBA mark cannot succeed as a matter of law." *Id.*

The Second Circuit further found that Article 6bis of the Paris Convention and Sections 44(b) and 44(h) of the Lanham Act do not require "cancellation of [Respondent's] properly registered trademark" or an injunction against use of the

Cancellation No. 92025859

mark. 73 USPQ2d at 1950. It also affirmed the district court's dismissal of Petitioner's claims under Articles 7, 8, 20 and 21 of the Pan American Convention and Article 10bis of the Paris Convention. 73 USPQ2d at 1950-53. Additionally, the Second Circuit affirmed the district court's dismissal of Petitioner's other claims, including its dismissal of New York unfair competition and misappropriation claims on the grounds that Respondent had not acted in bad faith. 73 USPQ2d at 1954.

The Second Circuit remanded the case to the district court for entry of an order (1) dismissing all of Petitioner's remaining claims, and (2) "vacat[ing] those portions of the District Court's order that cancel[led] [Respondent's] registration," enjoined Respondent from use of the COHIBA mark, and required recall of COHIBA-labeled products and corrective notices. 73 USPQ2d at 1954. The Second Circuit issued its judgment as a mandate on February 8, 2006, after the U.S. Supreme Court denied Petitioner's petition for a writ of certiorari. *See Empresa Cubana Del Tabaco, aka Cubatabaco v. General Cigar Co., Inc.*, 547 U.S. 1205 (2006). The district court then dismissed all remaining claims. *Empresa Cubana Del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399 (S.D.N.Y. May 15, 2006).

A later proceeding in the federal civil action requires brief mention. In 2006, Respondent moved to amend the district court's final order of dismissal to include an instruction to the Director of the USPTO to dismiss this cancellation proceeding and to direct that Petitioner's pending application for the mark COHIBA be abandoned. The district court denied Respondent's motion to amend as untimely. *Empresa Cubano Del Tabaco dba Cubatabaco v. Culbro Corp. and General Cigar Co.*, 478 F.

Cancellation No. 92025859

Supp. 2d 513 (S.D.N.Y. 2007).  On appeal, the Second Circuit affirmed, finding that Respondent's request was based on an estoppel theory. *Empresa Cubano Del Tabaco dba Cubatabaco v. Culbro Corp., General Cigar Co., Inc., and General Cigar Holdings, Inc.*, 541 F.3d 476, 88 USPQ2d 1125, 1128 (2d Cir. 2008). Specifically, the Second Circuit stated that "we see no reason why it was an abuse of discretion for the district court simply to tell [Respondent] to raise its estoppel claim before the [US]PTO and let the agency decide, subject to review by the Federal Circuit, what preclusive effect should be given to our decision in Empresa V, if any."[34] 88 USPQ2d at 1128.

Following the conclusion of the federal civil action, the Board resumed this proceeding on June 23, 2011.[35] Soon thereafter, Respondent filed a motion for summary judgment on the grounds that (1) Petitioner lacks standing to pursue this cancellation proceeding, and (2) Petitioner's asserted claims are precluded by the doctrines of claim and issue preclusion.[36] The Board granted Respondent's motion for summary judgment solely on the ground of lack of standing.[37] While acknowledging that standing is generally conferred on a plaintiff whose pleaded pending application has been refused registration under Section 2(d) of the Lanham Act based on

---

[34] The "Empresa V" decision identified in this quote pertains to the Second Circuit's 2005 decision on the appeal of the district court judgment in *Empresa Cubana Del Tabaco, d.b.a. Cubatabaco v. Culbro Corp., Gen. Cigar Co., Inc. and Gen. Cigar Holdings, Inc.*, described above.

[35] 60 TTABVUE.

[36] 64 TTABVUE.

[37] 75 TTABUVE.

Cancellation No. 92025859

defendant's subject registration, as is the case here, the Board nonetheless found that Petitioner, in this instance, could not avail itself of such circumstances as a basis for its standing to pursue this case.[38] More specifically, because the Second Circuit held that "[t]here is no contest that, as matters stand, [Respondent] has the full panel of proprietary rights in the COHIBA mark, including the right to exclude or limit others seeking to use the mark in the United States," *see* 73 USPQ2d at 1947, the Board concluded that there was no genuine dispute of material fact that Petitioner lacked a legitimate commercial interest in the COHIBA mark in the United States and that, as a result, its belief in damage resulting from an alleged likelihood of confusion under the Lanham Act or any international conventions between its asserted mark and Respondent's mark, or under any other legal theory, was unfounded.[39]

On May 9, 2013, Petitioner filed a notice of appeal to the U.S. Court of Appeals for the Federal Circuit of the Board's decision granting summary judgment for lack of standing.[40] On June 4, 2014, the Federal Circuit issued a decision holding that "[b]ecause this court finds that [Petitioner] has a statutory cause of action to petition the Board to cancel [Respondent's] Registrations, and that issue and claim preclusion do not bar [Petitioner's] Amended Petition to cancel the Registrations, this court vacates the Board's decision and remands for further proceedings consistent with this opinion." *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d

---

[38] *Id*. at 14.

[39] *Id*. at 14-16.

[40] 76 TTABVUE.

Cancellation No. 92025859

1058, 1059 (Fed. Cir. 2014). More specifically, the Federal Circuit held that "[b]ecause the USPTO refused [Petitioner's] registration based on a likelihood of confusion with [Respondent's] Registrations, [Petitioner] has a real interest in cancelling the Registrations and a reasonable belief that the Registrations blocking its application are causing it damage. [Petitioner] therefore has a cause of action under the Lanham Act to seek cancellation of the Registrations." 111 USPQ2d at 1062. Additionally, the Federal Circuit emphasized that Section 515.527 of the CACR, 31 C.F.R. § 515.527, specifically authorizes Cuban entities to engage in transactions "related to the registration and renewal" of trademarks in the [USPTO] and "may be relied on ... to petition to cancel a prior registration of a trademark where these actions relate to the protection of a trademark in which Cuba or a Cuban national general license has an interest." *Id.* (citation omitted). The court further reasoned that this regulation, and the related proceedings at the Board, gave Petitioner a "legitimate commercial interest" in the COHIBA mark such that a finding of standing before the Board was appropriate. *Id.*

The Federal Circuit also found that there is no issue or claim preclusion with regard to **any** of the claims asserted by Petitioner in its amended petition to cancel. *Id.* at 1063. With regard to Petitioner's claim under Articles 7 and 8 of the Pan American Convention, the Federal Circuit stated that, "[i]n the district court litigation, [Petitioner] claimed relief under Articles 7 and 8 pursuant to Sections 44(b) and 44(h) of the Lanham Act." *Id.* The Federal Circuit further noted that, "[r]elying on *Havana Club Holding S.A. v. Galleon S.A.*, 203 F.3d 116, 124 [53 USPQ2d 1609,

20

Cancellation No. 92025859

1614] (2d Cir. 2000), the Second Circuit rejected that argument, holding that Petitioner's Pan American Convention claims were not related to the repression of unfair competition and therefore did not fall within the ambit of Section 44(h)." *Id.*

The Federal Circuit explained that Petitioner's assertion in this Board proceeding is that the Board can cancel registrations directly under Article 8, pursuant to the Board's jurisdiction under Section 17(a) of the Lanham Act, 15 U.S.C. § 1067(a). *Id.* The Federal Circuit concluded that, unlike in the federal civil action, the Board need not consider the interplay of the Pan American Convention with Section 44(h) of the Lanham Act and, in any event, noted that the Second Circuit did not address whether Petitioner could request that the Board cancel the registrations directly under those same Pan American Convention provisions. *Id.* Thus, the Federal Circuit held that issue preclusion did not bar Petitioner's claim under Articles 7 and 8 in this Board proceeding. *Id.*

As noted, the Federal Circuit also held that claim preclusion does not bar the claims asserted in Petitioner's amended petition to cancel because the Second Circuit never issued a final judgment on the merits of Petitioner's cancellation claims. 111 USPQ2d at 1065. The Federal Circuit further found that the transactional facts involved in the Second Circuit decision differ from those in the cancellation proceeding before the Board. *Id.* Specifically, the Federal Circuit noted that the Second Circuit decided that, under the CACR, Petitioner could not enjoin Respondent from using the COHIBA mark because it would entail a prohibited transfer of property to a Cuban entity. *Id.* In the proceedings before the Board, however, the

Cancellation No. 92025859

Federal Circuit found that Petitioner need not own the mark to cancel Respondent's registrations under Section 14 of the Lanham Act, 15 U.S.C. § 1064. *Id.* In other words, "the CACR's effect before the Board is necessarily different." *Id.* Thus, the Federal Circuit ruled that claim preclusion does not bar any of the claims asserted in Petitioner's amended petition to cancel, including the claim brought under Articles 7 and 8 of the Pan American Convention. *Id.*

## Entitlement to a Statutory Cause of Action

Entitlement to a statutory cause of action is a threshold issue in every inter partes case. *See Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 109 USPQ2d 2061, 2067 n.4 (2014)). A party in the position of plaintiff may seek to cancel the registration of another's mark where such cancellation is within the zone of interests protected by the statute, 15 U.S.C. § 1064, and the plaintiff's reasonable belief in damage is proximately caused by registration of the defendant's mark. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *6-7 (Fed. Cir. 2020).[41]

An entitlement to a statutory cause of action is generally conferred on a plaintiff whose pleaded pending application has been refused registration under Section 2(d) of the Lanham Act based on a defendant's subject registration. *See, e.g., Great Seats*

---

[41] Board decisions have previously analyzed the requirements of Sections 13 and 14 of the Trademark Act, 15 U.S.C. §§ 1063-64, under the rubric of "standing." Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting Section 13 and 14 remain applicable. *See Spanishtown Enters., Inc. v. Transcend Res., Inc.*, 2020 USPQ2d 11388, at *2 (TTAB 2020).

Cancellation No. 92025859

*Ltd. v. Great Seats, Inc.*, 84 USPQ2d 1235, 1237 (TTAB 2007); *Cerveceria Modelo S.A. de C.V. v. R.B. Marco & Sons, Inc.*, 55 USPQ2d 1298, 1299 (TTAB 2000); *Hartwell Co. v. Shane*, 17 USPQ2d 1569, 1570 (TTAB 1990).

The evidence of record includes Petitioner's pending application for the mark COHIBA,[42] as well as the Office Action refusing registration based on Respondent's subject registrations.[43] The Federal Circuit already determined that because Petitioner's pleaded pending application has been refused registration based on Respondent's registrations and the general license under CACR permits a Cuban entity to seek cancellation,[44] Petitioner is entitled to pursue a statutory cause of action to seek cancellation of Respondent's subject registrations.[45]

## Article 8 of the Pan American Convention

### A. Background

We now turn to a general discussion of the Pan American Convention. The United States participated in a number of International Conferences of American States with

---

[42] Petitioner's Notice of Reliance, Exh. 1; 169 TTABVUE 162-63.

[43] Petitioner's Notice of Reliance, Exh. 1; 169 TTABVUE 152-160.

[44] In further support of its entitlement to a statutory cause of action, Petitioner submitted a letter from OFAC dated August 19, 1996, stating that § 515.27 of CACR permits a Cuban entity to seek cancellation of a U.S. registered mark where this action relates to the protection of a trademark in which Cuba or a Cuban national general licensee has an interest. 169 TTABVUE 170.

[45] Once a petitioner meets the requirements for a statutory cause of action on one claim, it can rely on any available statutory grounds for cancellation set forth in the Lanham Act. *See, e.g., Corporacion Habanos SA v. Rodriguez*, 99 USPQ2d 1873, 1877 (TTAB 2011) (because petitioners demonstrated their standing – now entitlement to a statutory cause of action – as to at least one ground, they may assert any other legally sufficient claims including those under Section 2(a), the Pan American Convention and fraud).

Cancellation No. 92025859

respect to trademarks during the early twentieth century. These conferences resulted in several multi-lateral trademark conventions to which the United States became a party, including the "General Inter-American Convention for Trade Mark and Commercial Protection of Washington, 1929," which is known informally as the Pan American Convention. Cuba is also a party to the Pan American Convention.[46] The Pan American Convention pertains to trademarks, trade names, unfair competition, and false indications of geographical origin or source. The beneficiaries under the Pan American Convention are defined as (1) nationals of contracting states, and (2) domiciled foreigners who own a manufacturing or commercial establishment or an agricultural development in any of the contracting states.

The Board's seminal decision pertaining to the Pan American Convention is *British-American Tobacco Co. v. Phillip Morris Inc.*, 55 USPQ2d 1585 (TTAB 2000). In that case, the Board denied the respondent's motion to dismiss the petition to cancel and held that the Board had the requisite jurisdiction to consider the petitioner's claim brought under Article 8 of the Pan American Convention in a cancellation proceeding.

Consistent with the U.S. Supreme Court's decision in *Bacardi Corp. of Am. v. Domenech*, 311 U.S. 150, 161, 47 USPQ 350, 355 (1940), the Board noted that the Pan American Convention is self-executing and, therefore, became U.S. law upon ratification, requiring no special implementing legislation. *British-American*

---

[46] Additional signatories to the Pan American Convention are Colombia, Peru, Guatemala, Haiti, Honduras, Nicaragua, Panama, and Paraguay.

Cancellation No. 92025859

*Tobacco*, 55 USPQ2d at 1589. As such, the Board concluded that the Pan American Convention has the same force as a federal statute and provides remedies independent of the Lanham Act. *Id.*

The Board in *British-American Tobacco* then considered whether Article 8 created a cause of action within the Board's subject matter jurisdiction. The Board reasoned that since it was authorized under Section 17 of the Lanham Act, 15 U.S.C. § 1067,[47] to determine the registrability of marks in the context of ex parte appeals and inter partes proceedings, it had the requisite jurisdiction to consider a claim brought before it under Article 8 because that article expressly related to the registrability of marks. *Id.* Lastly, the Board found that a finding of jurisdiction did not violate the doctrine of territoriality but rather constituted an exception to the doctrine explicitly created by the Pan American Convention.[48] *Id.*

Article 8 states:

> When the owner of a mark seeks the registration or deposit of the mark in a Contracting State other than that of origin of the mark and such registration or deposit is refused because of the previous registration or deposit of an interfering mark, he shall have the right to apply for and obtain the cancellation or annulment of the interfering mark upon proving, in accordance with the legal procedure of the country in which cancellation is sought, the stipulations in Paragraph (a) and those of either Paragraph (b) or (c) below:

---

[47] Section 17(a) of the Lanham Act, 15 U.S.C. § 1067(a), provides that "[i]n every case of interference, opposition to registration, application to register as a lawful concurrent user**, or application to cancel the registration of a mark**, the Director shall give notice to all parties and **shall direct [the] Trademark Trial and Appeal Board to determine and decide the respective rights of registration**." (emphasis added). 15 U.S.C. § 1067(a).

[48] "Under the territoriality doctrine, a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark." J. Thomas McCarthy, 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 29:1 (5th ed. March 2022 update). In contrast, "the 'universality' theory posits that a mark signifies the same source wherever the mark is used in the world." *Id.*

Cancellation No. 92025859

      (a)  That he enjoyed legal protection for his mark in another of the Contracting States prior to the date of the application for the registration or deposit which he seeks to cancel; and

      (b)  That the claimant of the interfering mark, the cancellation of which is sought, had knowledge of the use, employment, registration or deposit in any of the Contracting States of the mark for the specific goods to which said interfering mark is applied, prior to adoption and use thereof or prior to the filing of the application or deposit of the mark which is sought to be cancelled; or

      (c)  That the owner of the mark who seeks cancellation based on a prior right to the ownership and use of such mark, has traded or trades with or in the country in which cancellation is sought; and that goods designated by his mark have circulated and circulate in said country from a date prior to the filing of the application for registration or deposit for the mark, the cancellation of which is claimed, or prior to the adoption and use of the same.

46 Stat. 2907.

## B. Petitioner's arguments regarding Article 8 claim

Petitioner seeks to register the mark COHIBA in the United States, a "contracting state" other than that of origin of Petitioner's mark, i.e., Cuba. The record demonstrates that the USPTO refused to register Petitioner's COHIBA mark based on Respondent's subject registrations. Here, Respondent's subject registrations constitute "interfering" marks pursuant to the plain meaning of Article 8. *Cf. Diaz v. Servicio de Franquicia Pardo's S.A.C.*, 83 USPQ2d 1320 (TTAB 2007) (finding that the registered mark at issue was an "interfering" mark within Article 7 on the ground that it was identical and for the same goods as the mark of the party invoking the

Cancellation No. 92025859

Convention, and that the registered mark was cited by the USPTO against that party's application for registration or relied upon in opposition to the application). Therefore, the record establishes that the preamble of Article 8 is satisfied.

With regard to subsection (a) of Article 8, the application filing date of Respondent's first standard character U.S. COHIBA registration was March 13, 1978. The application filing date for Respondent's U.S. stylized COHIBA mark was December 30, 1992. The record shows that Petitioner enjoyed legal protection in Cuba for the mark COHIBA prior to these dates. Petitioner applied to register the mark in Cuba in 1969 and the registration issued in 1972.[49] The record also demonstrates that COHIBA-branded cigars were being produced in Cuba in significant and increasing numbers between 1970 and 1980,[50] and, from 1970 through March 13, 1978, were sold (a) at two retail outlets in Havana; (b) at Havana's main hotels; (c) at Havana's upscale restaurants; (d) to the Council of State (which includes the office of the Cuban President); and (e) to other Cuban state enterprises, which in turn sold the cigars to government institutions.[51] Cuba's then-President Fidel Castro, gifted COHIBA cigars

---

[49] Declaration of Adargelio Garrido de la Grana, a Cuban citizen and lawyer responsible for the registration and maintenance of trademarks owned by Petitioner, ¶¶ 2-3, (190 TTABVUE 233-235).

[50] *See* Deposition transcript of Mercedes Gonzalez Vasquez, Petitioner's Director of Businesses, pp. 32:24, 33:1-20 (343 TTABVUE 647-649). In an abundance of caution, we refer to Petitioner's unit sales in general terms because while the deposition transcript of Mr. Vasquez itself was marked as confidential, Petitioner nonetheless filed the transcript with the Board in an unredacted format and not under seal as confidential.

[51] At retail outlets: 198 TTABVUE 147-159, 343 TTABVUE 626, 652-653 and 346 TTABVUE 547, 558-563, 607-608. At hotels: 343 TTABVUE 626, 653-655, 685 and 346 TTABVUE 547, 558-560, 564, 573, 610. At restaurants: 198 TTABVUE 147-159, 343 TTABVUE 282, 299. To the Council of State and Cuban enterprises: 198 TTABVUE 147-159, 343 TTABVUE 626, 656-657, 662-663 and 344 TTABVUE 1071, 1079-1093). Numerous U.S. travelers observed

Cancellation No. 92025859

purchased by the Council of State throughout the 1970s[52] to U.S. persons.[53] Cuban government bodies[54] gifted COHIBA cigars to U.S. persons,[55] and the Cuban diplomatic missions in New York and Washington, D.C. gifted COHIBA cigars to U.S. persons at receptions.[56] Because Respondent filed its applications after Petitioner had registered and began use of its COHIBA mark in Cuba, subsection (a) of Article 8 is satisfied.

We now turn to Article 8 subsection (b)'s requirement that "the claimant of the interfering mark … had knowledge of the use, employment, registration or deposit in any of the Contracting States of the mark for the specific goods … prior to adoption and use thereof or prior to the filing of the application or deposit of the mark which is sought to be cancelled." The record includes evidence that Respondent had knowledge of Petitioner's use of the mark COHIBA as a cigar brand in Cuba since at

---

COHIBA cigars on sale at hotels and retail outlets during these years. 343 TTABVUE 998, 1022, 1024 1033; 343 TTABVUE 282-300; 346 TTABVUE 98, 107, 131-132; and 346 TTABVUE 631, 639-642.

[52] 343 TTABVUE 626, 656-661, 673 (heads of state); 319 TTABVUE 400-411 (heads of state); 343 TTABVUE 626, 673 (when traveling abroad); 345 TTABVUE 253, 296-297 (at Conference of Non-Aligned in Havana).

[53] *See e.g.*, 339 TTABVUE 188-198 (gifts to numerous U.S. journalists and political personalities); 343 TTABVUE 998, 1024-1027 (gifts to Saul Landau and Dan Rather of CBS); 346 TTABVUE 98, 114-119 (gifts to leader of Minnesota Chamber of Commerce delegation for Vice President Mondale and Senator Humphrey).

[54] 339 TTABVUE 188, 195 (wide range of institutions); 345 TTABVUE 253, 271-275 (sports federation); 343 TTABVUE 998, 1028 (Foreign Ministry).

[55] 339 TTABVUE 188, 195.

[56] 343 TTABVUE 998, 1028-1029, 1037, 1071-1074, 1079-1080 (routinely distributed at receptions and as gifts).

Cancellation No. 92025859

least as early as December 12, 1977.[57] Specifically, the record includes two of Respondent's internal memoranda, both dated December 12, 1977, which are maintained by Respondent in its internal files by a person responsible for Respondent's trademark registration applications and maintenance.[58] Portions of these memoranda contained notations which state that COHIBA (1) is sold in Cuba, (2) is a "brand in Cuba," (3) is "presently used in Cuba," and (4) is "Castro's brand cigar."[59]

The record also includes additional evidence that Respondent likely knew of Petitioner's use of COHIBA as a cigar trademark in Cuba even before the creation of the internal memoranda discussed above. A month prior to the creation of the December 12, 1977 memoranda, i.e., on November 15, 1977, Forbes Magazine published an article titled "Help From Havana? The U.S. Cigar Industry is in Bad Odor. Can Cuban Tobacco Help it Relight?," reporting that Cuban COHIBA was one of the "brands" that "CubaTabaco . . . is now developing" for export.[60] Edgar Cullman, Sr., Respondent's Chair and President, received Forbes Magazines and admitted that he "must have read" the article.[61] His son, Edgar Cullman, Jr., Respondent's Executive Vice-President and later President,[62] testified that the article would have

---

[57] 198 TTABVUE 142-145, 194 TTABVUE 134-137 (confidential).

[58] 346 TTABVUE 161, 171-175, 479-486; 319 TTABVUE 289-291.

[59] 198 TTABVUE 142-145.

[60] 192 TTABVUE 62-66.

[61] 342 TTABVUE 1460, 1467-1468, 1499, 1500.

[62] 341 TTABVUE 2 and 4.

Cancellation No. 92025859

come to management's attention.[63] It was the "type of article that would have been circulated to the industry" by the Cigar Association of America.[64] This evidence persuades us that Respondent, at a minimum, had constructive or imputed knowledge of Petitioner's use of its COHIBA mark in Cuba prior to filing its underlying applications for its subject registered marks. *See e.g.*, *Helton v. AT&T*, 709 F.3d 343 (4th Cir. 2013) (corporate entities have constructive knowledge of the contents of their records); *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007 (E.D. Va. 2018) (same).

Additionally, the record demonstrates that Respondent had knowledge of Petitioner's COHIBA mark before making any use of its COHIBA mark in the United States. Although Petitioner contends that the nominal shipments Respondent made to retailers in mid-February of 1978 do not qualify as use in commerce sufficient to confer trademark rights,[65] even if we were to deem them sufficient, the elements of Article 8, subsection (b) are satisfied. With regard to both of its COHIBA registrations, Respondent's knowledge that Petitioner's COHIBA mark was a brand, and being developed for export, necessarily establishes its knowledge that COHIBA was being "used" or "employed" in Cuba prior to any use of the COHIBA mark by Respondent in the United States.

Simply put, Petitioner has proven, by a preponderance of the evidence, its pleaded

---

[63] 342 TTABVUE 976, 1104-1105.

[64] 343 TTABVUE 896, 967-969 (Kowalsky, CAA's president at the time).

[65] 366 TTABVUE 16-18; *see also* 291 TTABVUE 220.

Cancellation No. 92025859

claim under Article 8 of the Pan American Convention.

## Respondent's Arguments in Support of its Issue Preclusion Affirmative Defense

Instead of arguing the merits of the Article 8 claim and commenting on the evidence Petitioner proffers in support this claim, Respondent only contends that Petitioner's Article 8 claim is barred by the doctrine of issue preclusion and heavily relies on the U.S. Supreme Court's decision in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 113 USPQ2d 2045 (2015) ("*B&B Hardware*"). Respondent relies on the following four requirements for issue preclusion, as stated in Section 27 of the Restatement (Second) of Judgments: (1) an issue of fact or law must have been presented in both the prior and current actions; (2) that issue must have been actually litigated in the prior action and determined adversely to the precluded party in a valid and final judgment; (3) determination of that issue must have been necessary and essential to the prior judgment; and (4) the parties are the same, or the precluded party's position in the prior action was fully represented by another party.[66]

Respondent contends that all of the required elements for issue preclusion are demonstrated on the record of this proceeding.[67] As to the first element, although the Second Circuit's interpretation of Article 8 differs from the Federal Circuit and the Board, Respondent argues the Pan American Convention issue in this cancellation proceeding nonetheless is the same issue that the district court ruled on for preclusion

---

[66] Petitioner's Trial Brief, p. 20 (368 TTABVUE 22).

[67] *Id.* (368 TTABVUE 21).

31

Cancellation No. 92025859

purposes.[68] Respondent also notes that, as stated in *B&B Hardware*, "federal law provides a single standard here"– the Pan American Convention and the Lanham Act, to the extent relevant, are the same whether interpreted by a federal court or the Board.[69] While the Board may "apply that standard differently" than the federal courts do, Respondent contends that *B&B Hardware* makes clear that Petitioner "cannot escape preclusion" because of that difference in interpretation.[70] Respondent concludes that allowing Petitioner to engage in repetitious litigation of the same issue because the Board reads the same treaty provision differently than the Second Circuit does would, in the Supreme Court's words, "encourage the very evils that issue preclusion helps to prevent."[71]

As to the other elements of issue preclusion, Respondent contends that (1) the Pan American Convention issue was fully and finally determined in the federal action, with the district court dismissing Petitioner's claim for cancellation under Articles 7 and 8 of the Pan American Convention with prejudice and making the dismissal part of its final judgment, (2) determination of the Pan American Convention issue was necessary to the district court's final judgment, and (3) the parties in both proceedings are the same.[72] Thus, Respondent requests that the Board dismiss Petitioner's claim under Article 8 of the Pan American Convention in this proceeding with prejudice

---

[68] *Id.* at p. 22 (368 TTABVUE 24).

[69] *Id.* (368 TTABVUE 24).

[70] *Id.* (368 TTABVUE 24).

[71] *Id.* at p. 23 (citing *B&B Hardware*, 113 USPQ2d at 2054) (368 TTABVUE 25).

[72] *Id.* (368 TTABVUE 25).

Cancellation No. 92025859

because the doctrine of issue preclusion bars Petitioner's claim.

Respondent also argues that the Federal Circuit's *Empresa* decision holding that principles of issue and claim preclusion do not bar Petitioner's claim is not law of the case preventing the Board from applying issue preclusion as required by *B&B Hardware*.[73] Respondent maintains that the law of the case is a discretionary doctrine "even respecting a prior appellate decision in the case," unlike issue preclusion which is mandatory, and rests on considerations of judicial economy.[74] Respondent nonetheless acknowledges that one long recognized exception to law of the case is an intervening change in applicable authority.[75] Respondent argues that departure from a prior ruling is only justified where, since the date of the ruling, there has been a significant change in the legal atmosphere – whether in the form of new legislation, a new court decision, or even a new administrative ruling.[76] Respondent contends that the Federal Circuit's *Empresa* decision was issued before the Supreme Court's ruling in *B&B Hardware* and that the grounds on which the Federal Circuit's "cursory" Pan American Convention preclusion analysis rested are no longer valid in light of the changed "legal atmosphere" created by *B&B Hardware*.[77]

Respondent acknowledges the Federal Circuit's holding that issue preclusion does

---

[73] *Id.* at p. 24 (368 TTABVUE 26).

[74] *Id.* (citing *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582, 31 USPQ2d 1001, 1007 (Fed. Cir. 1994) (368 TTABVUE 26).

[75] *Id.* (368 TTABVUE 26).

[76] *Id.* (368 TTABVUE 26).

[77] *Id.* (368 TTABVUE 26).

Cancellation No. 92025859

not bar Petitioner's Article 8 claim in this cancellation proceeding because: (1) "unlike the federal courts, the Board can cancel registrations directly under Article 8 of the IAC, pursuant to the Board's jurisdiction under 15 U.S.C. § 1067(a), and (2) unlike in the district court, the Board need not consider the interplay with Lanham Act Section 44(h)."[78] Respondent contends, however, that under *B&B Hardware*, this difference no longer provides a basis to deny preclusive effect to the federal judgment, because, "if federal law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently."[79] Respondent claims that is precisely what Petitioner is impermissibly attempting to do here – relitigate its loss on the Pan American Convention claim in the federal action because it is now in a forum which interprets that law differently, one of the "very evils that issue preclusion helps to prevent."[80] Thus, Respondent concludes that *B&B Hardware* created a clearly changed legal atmosphere which undermined the rationale of the Federal Circuit's *Empresa* decision and, therefore, the Federal Circuit's decision cannot be considered law of the case.[81]

### Resolution of Issue Preclusion Affirmative Defense

As found above, Petitioner has satisfied, by a preponderance of the evidence, all of the required elements of its claim under Article 8 of the Pan American Convention.

---

[78] *Id*. (citing the Federal Circuit's *Empresa* decision, 111 USPQ2d at 1064) (368 TTABVUE 26).

[79] *Id*. at pp. 25-26 (citing *B&B Hardware*, 113 USPQ2d at 2054) (368 TTABVUE 27-28).

[80] *Id*. at p. 26 (citing *B&B Hardware*, 113 USPQ2d at 2054) (368 TTABVUE 28).

[81] *Id*. (368 TTABVUE 28).

Cancellation No. 92025859

We also find that, contrary to Respondent's position, issue preclusion does not bar Petitioner's Article 8 claim for the reasons explained below.

As previously noted, Respondent did not contest that Petitioner has satisfied the requirements for cancellation under Article 8 as to both of Respondent's subject registrations and that, under Board precedent, Article 8 claims can be asserted under Section 17(a) of the Lanham Act. Rather, Respondent only argues that issue preclusion bars this ground for cancellation, notwithstanding that the Federal Circuit expressly held that neither issue nor claim preclusion bars this claim and that its mandate is "for further proceedings consistent with this opinion." *Empresa*, 111 USPQ2d at 1064. Respondent urges the Board to disregard the Federal Circuit's mandate exclusively on the ground that *B&B Hardware* changed the governing law, even though *B&B Hardware* did not concern Section 17 of the Lanham Act, the Pan American Convention or treaty claims at all and endorsed the authority the Federal Circuit relied upon in its issue preclusion analysis.

The Federal Circuit in its *Empresa* decision held that the issue decided in the federal action—whether § 44(h) of the Act incorporated Article 8 claims—is not the same as the Article 8 issue before the Board. It ruled that "[i]ssue preclusion does not apply" because Petitioner "asserts" that "the Board can cancel registrations directly under Article 8 of the IAC [Pan American Convention], pursuant to the Board's jurisdiction under 15 U.S.C. § 1067(a) [Section 17(a) of the Lanham Act]," and therefore:

> Unlike in the district court, the Board need not consider the interplay with [Lanham Act] Section 44(h). And in any event, the Second Circuit

Cancellation No. 92025859

> certainly did not address whether Cubatabaco could request that the Board cancel the registrations directly under those same IAC provisions [pursuant to the Board's Section 17(a) jurisdiction]. Accordingly, issue preclusion does not bar Grounds 5 and 7 for cancellation of the Registrations. [82]

*Empresa*, 111 USPQ2d at 1064.

As the Federal Circuit's holding that there is no issue preclusion is within the scope of its mandate, the parties are precluded from asserting issue preclusion before the Board. *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379; 49 USPQ2d 1618, 1621 (Fed. Cir. 1999) ("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.") (citations omitted). Controlling authority forecloses Respondent's position that adherence to the mandate is merely "discretionary." *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 853 F.2d 888, 7 USPQ2d 1628, 1630 (Fed. Cir. 1988) (Board "has no option but to comply with th[is court's] mandate"). A lower tribunal "has no power or authority to deviate from the mandate." *Id.* at 892 n.3.[83]

Respondent places extensive reliance on *B&B Hardware* in invoking the exception

---

[82] Ground 5 (against Respondent's Reg. No. 1147309) and Ground 7 (against Respondent's Reg. No. 1898273) both consist solely of the claim pleaded under Articles 7 and 8 of the Pan American Convention. *See* Petitioner's Amended Complaint, ¶¶ 110-111 and ¶¶ 114-115 (61 TTABVUE 30-31).

[83] Respondent's reliance on *Mendenhall v. Barber-Greene,* 26 F.3d 1573, 31 USPQ2d 1001 (Fed. Cir. 1994), a decision involving an appellate court's reconsideration of its own prior decision, is misplaced and confuses "law of the case" with the mandate rule, which permits none of the flexibility that "law of the case" affords an appellate court revisiting its own prior decision. *Sacramento Mun. Util. Dist. v. United States*, 566 F. App'x 985, 995 (Fed. Cir. 2014) ("[A]n issue . . . decided by an appellate court . . . may not be reconsidered at any subsequent stage . . ., save on appeal").

Cancellation No. 92025859

to the law of the case for when "controlling authority has since made a contrary and applicable decision of law." *Banks v. U.S.*, 741 F.3d 1268 (Fed. Cir. 2014). Under this exception, "[t]hree conditions must be satisfied." *Dow Chem.Co. v. Nova Chem. Corp.*, 803 F.3d 620, 629, 115 USPQ2d 2024, 2030 (Fed. Cir. 2015). "First, the governing law must have been altered. … Second, the decision sought to be reopened must have applied the old law. … Third, the change in law must compel a different result[.]" *Id.* These requirements are strictly construed. *Sacramento Mun*, 566 F. App'x at 996 (citations omitted).

Respondent has failed to persuade us that the decision in *B&B Hardware* changed "governing law" as it pertains to Petitioner's Article 8 claim. The Federal Circuit applied the rule Respondent says *B&B Hardware* established, namely, that district court rulings have preclusive effect before the Board if ordinary issue preclusion standards are met. *Empresa*, 111 USPQ2d at 1063. Indeed, the rule *B&B Hardware* purportedly established has been settled in the Federal Circuit for quite some time. *See, e.g.*, *Mother's Rest, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 221 USPQ2d 394 (Fed. Cir. 1983) (holding that the TTAB properly gave preclusive effect to the Texas court's findings of fact). However, the *B&B Hardware* decision, contrary to Respondent's reading of the case, addressed an entirely different issue: "whether the District Court in this case should have applied issue preclusion to the [Board's] decision," 113 USPQ2d at 2048, not vice versa.

We also find that *B&B Hardware* did not change the standards for issue preclusion, as made clear by Respondent itself describing the Supreme Court's

Cancellation No. 92025859

holding as "rooted . . . in the Restatement (Second) of Judgments." *See* Respondent's Trial Brief, p. 20. (368 TTABVUE 22) (citing Restatement Section 27).[84] The Federal Circuit, as well as the Board, have long relied on and applied Restatement Section 27's standards; indeed, the Federal Circuit relied on Section 27 of the Restatement's four factors and cited its own precedents expressly applying Section 27 in its *Empresa* decision. *Empresa*, 111 USPQ2d at 1063.

Because *B&B Hardware* reaffirmed, as reflected in the Restatement, that the "ordinary elements" or factors of issue preclusion apply, *see* 113 USPQ2d at 2048, 2053, and because the Federal Circuit applied the same ordinary elements (derived from the same source), the law governing issue preclusion did not change.

Respondent also fails to show that *B&B Hardware* changed "governing law" regarding whether Section 17(a) of the Lanham Act permits the Board to consider Article 8 claims that the federal action held were not incorporated by § 44(h) of the Lanham Act. Respondent's argument that *B&B Hardware* somehow invalidated the "grounds on which the Federal Circuit's . . . preclusion analysis rested" by "eliminat[ing] the distinction between Board registration proceedings and court infringement proceedings" lacks plausibility: *B&B Hardware* did not concern or address the scope of the Board's jurisdiction under Section 17(a) of the Lanham Act, Article 8 or any other treaty-based claims, or § 44 of the Lanham Act.

---

[84] Section 27 of the Restatement (Second) on Judgments provides as follows: When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Cancellation No. 92025859

Rather, *B&B Hardware* resolved a different issue: whether a section of the Lanham Act applicable to the Board and another applicable to district courts set the same standard for likelihood of confusion, allowing the Board's finding of likelihood of confusion to have preclusive effect on likelihood of confusion in the district court. Because it found the "operative language" "essentially the same," *B&B Hardware* held the two sections set the same standard and, therefore, issue preclusion was applicable. 113 USPQ2d at 2055.[85]

To the extent the *B&B Hardware* decision addressed the situation presented in this cancellation proceeding, that is, the Board must give preclusive effect to a determination of a particular issue in a civil action, it was only to favorably cite the Board's existing practice of giving preclusive effect to district court decisions in appropriate cases. *B&B Hardware*, 113 USPQ2d at 2053. Respondent suggests that *B&B Hardware* established a new test of identity between issues, under which the court must take a "broad view of what an 'issue' is."[86] But *B&B Hardware* referred to the "ordinary elements" of issue preclusion numerous times, *see, e.g.*, *B&B Hardware*, 113 USPQ2d at 2056 (remanding to apply "ordinary elements of issue preclusion"), and the Board has held that *B&B Hardware* embraced, rather than changed, these "ordinary elements." *In re FCA US LLC*, 126 USPQ2d 1214, 1218

---

[85] *Compare* 15 U.S.C. § 1052(d) (registration may be refused if mark "so resembles" registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion") *with* 15 U.S.C. § 1114(a)(1) (liability for infringement if party "use[s] in commerce . . . a registered mark in connection with . . . goods or services" where "such use is likely to cause confusion").

[86] Respondent's Trial Brief, pp. 21-23 (368 TTABVUE 21-23).

Cancellation No. 92025859

(TTAB 2018) ("B&B. . . specifically conditions its holding on 'the ordinary elements of issue preclusion' being met."). *B&B Hardware's* reliance on the ordinary elements of issue preclusion—as reflected in Section 27 of the Restatement and as applied by the Federal Circuit—forecloses Respondent's argument that *B&B Hardware* created a new identity of issues test. Indeed, such an argument lacks persuasiveness since the *B&B Hardware* decision did not concern or address the scope of the Board's jurisdiction under §§ 17(a) and 44 of the Lanham Act, Article 8 of the Pan American Convention or any other treaty-based claims.

Respondent cannot convert this holding into a broader ruling "eliminat[ing] the distinction," and establishing complete parity of authority, between the Board and federal district courts. *B&B Hardware* says nothing resembling this, and no issue even remotely so broad was before the Supreme Court. In other words, *B&B Hardware* provides no warrant for the Board to disregard the Federal Circuit's decision in contravention of established practice regarding mandates emanating from that Court.

Moreover, *B&B Hardware* is irrelevant to the Federal Circuit's holding in *Empresa*. On appeal, the Second Circuit held that Petitioner "cannot assert claims under Articles 7 and 8 pursuant to Section 44(h) . . . because Articles 7 and 8 do not relate to the repression of unfair competition" and thus did not fit within § 44(h)'s text (that a treaty national "shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair

40

Cancellation No. 92025859

competition."). 73 USPQ2d at 1952. By contrast, Section 17(a) of the Lanham Act does not even reference "unfair competition" and empowers the Board to "determine and decide the respective rights of registration" without any such limitation. Thus, the Federal Circuit held, "[u]nlike in the district court, the Board need not consider the interplay with [Lanham Act] Section 44(h)." 111 USPQ2d at 1064. Therefore, unlike in *B&B Hardware*, the "operative language" of the Pan American Convention claim asserted in the federal action (a claim under the Pan American Convention pursuant to Section 44 of the Lanham Act, which concerns protection of foreign nationals from unfair competition and makes available remedies for infringement in civil actions) is not "essentially the same" as the claim asserted by Petitioner in this cancellation proceeding (a claim under the Pan American Convention to cancel the registration that exists independent of the Lanham Act and is decided in accordance with the Board's jurisdiction in Section 17 of the Lanham Act to determine rights to registration). It is entirely different.

Moreover, the Second Circuit held that to the extent its decision has any preclusive effect on this Board proceeding, Respondent could simply raise "its estoppel claim before the [US]PTO and **let the agency decide**, subject to review by the Federal Circuit, what preclusive effect should be given to our decision." *Empresa*, 88 USPQ2d at 1128. (emphasis added). We find, based on the foregoing and the Federal Circuit's mandate on the issue, that issue preclusion does not bar Petitioner's claim under Article 8 of the Pan American Convention in this cancellation proceeding.

Cancellation No. 92025859

## Conclusion

We conclude that Petitioner has proven its claim to cancel Respondent's registrations under Article 8 of the Pan American Convention by a preponderance of the evidence and Respondent has failed to prove its affirmative defense that the claim is barred by the doctrine of issue preclusion. Consequently, we need not reach the merits of Petitioner's remaining claims.[87] *See Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1478 (TTAB 2017) (Board has "discretion to decide only those claims necessary to enter judgment and dispose of the case" as its "determination of registrability does not require, in every instance, decision on every pleaded claim."); *Multisorb Tech., Inc. v. Pactive Corp.*, 109 USPQ2d 1170, 1171-72 (TTAB 2013) (citing *Am. Paging Inc. v. Am. Mobilphone Inc.*, 13 USPQ2d 2036, 2039-40 (TTAB 1989)), *aff'd*, 923 F.2d 869, 17 USPQ2d 1726 (Fed. Cir. 1990) (non-precedential)). Also, Respondent has waived its remaining affirmative defenses.

**Decision**: The amended petition to cancel Respondent's registrations for the typeset mark COHIBA and the mark **COHIBA** is granted under Article 8 of the Pan American Convention. The registrations will be canceled in due course.

---

[87] Because we do not reach Petitioner's remaining claims, including the claim of likelihood of confusion, Respondent's motion to strike the rebuttal testimony declarations and accompanying exhibits of Petitioner's witnesses Dean J. Gluth, Charles Linehan, and Susan Bailey, all of which concern Petitioner's claim of likelihood of confusion, *see* 333 TTABVUE, is deemed moot and will be given no further consideration.