**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

---

GENERAL CIGAR COMPANY, INC.,

        Plaintiff,

v.

EMPRESA CUBANA DEL TABACO, D.B.A.
CUBATABACO.

        Defendant.

CASE NO: 23-cv-00227-LMB-WEF

**ANSWER**

---

Defendant Empresa Cubana del Tabaco, d.b.a. Cubatabaco ("Cubatabaco" or "Defendant"), for its Answer to the Complaint of Plaintiff General Cigar Company, Inc. ("General Cigar" or "Plaintiff"), responds to Plaintiff's allegations as follows:

## NATURE OF ACTION

1.      Admitted, except that the allegation that this action is "de novo" contains legal conclusions for which no answer is required.

2.      Sentences one through three contain legal conclusions for which no answer is required. Defendant denies the fourth sentence, except that it admits that this action lies under the Lanham Act, 15 U.S.C. § 1071(b)(1). The fifth sentence is denied to the extent that it alleges or implies that the Complaint identifies all of Cubatabaco's grounds for cancellation. Footnote 2 contains legal conclusions for which an answer is not required; to the extent an answer is required, Defendant admits that it is a Cuban corporation and does not contest venue.

3.      As plead in Defendant's First Affirmative Defense herein, Plaintiff is barred from asserting issue or claim preclusion by virtue of the decision, judgment and mandate of the United

1

States Court of Appeals for the Federal Circuit on appeal from a prior order of the TTAB dismissing Cubatabaco's Amended Petition for Cancellation. *Empresa Cubana del Tabaco (dba Cubatabaco) v. General Cigar Co., Inc*., United States Court of Appeals for the Federal Circuit, No. 2013-1465 (June 4, 2014), 753 F.3d 1270 (Fed. Cir. 2014) (attached hereto as Appendix A, together with the Judgment and Mandate, collectively hereafter sometimes "Federal Circuit Decision"). The Federal Circuit held that neither issue nor claim preclusion arising from an earlier proceeding in the Southern District of New York, *Empresa Cubana del Tabaco d.b.a. Cubatabaco v. Culbro Corp., et al*, 97-cv-8399 (the "Federal Action"), applied to Cubatabaco's claims and asserted grounds for cancellation in the TTAB proceeding, and remanded to the TTAB for "further proceedings consistent with [its] opinion." Its decision is binding here under 15 U.S.C. § 1071(a) (4) ("mandate and opinion" of the Federal Circuit "shall govern the further proceedings in the case") and, additionally or alternatively, the law of the case doctrine or issue preclusion.

The first sentence of paragraph 3 contains legal conclusions for which an answer is not required, and, to the extent an answer is required, it is denied. The second sentence is denied, except that Defendant admits that it asserted three grounds for cancellation of each of the Registrations. The third sentence is denied, except that Defendant admits that the TTAB ruled for Cubatabaco on the basis of its claim under Article 8 of the IAC pursuant to 15 U.S.C. § 1067 and that the TTAB did not reach other grounds for cancellation of the Registrations.

The fourth sentence is admitted. As to the fifth sentence, it is admitted that the TTAB concluded that the requirements of Article 8 had been satisfied on the basis of its factfinding, and it is averred that the TTAB additionally held that General Cigar had not contested that Article 8's requirements had been satisfied. The fifth sentence's allegation that the TTAB concluded "that

under U.S. law, a U.S. trademark registration may be cancelled on the basis of [] a violation [of Article 8]" is denied as inaccurate and overbroad, inasmuch as the TTAB's ruling was expressly limited to and based on its authority under 15 U.S.C. § 1067 to apply Article 8 of the IAC. The sixth sentence is admitted.

4.      The first sentence is denied. The second sentence is admitted, except that Defendant avers that it filed the Federal Action on November 12, 1997, not "shortly after" Cubatabaco filed its TTAB cancellation petition.

As to the third and four sentences, Defendant admits that Cubatabaco sought an injunction against General Cigar's sales and cancellation of the Registrations; admits that certain allegations and grounds for relief were overlapping with those in its petition for cancellation before the TTAB; and denies that the Federal Action "repeated the claims" Cubatabaco asserted in the TTAB proceeding.

The fifth, sixth and seventh sentences contain legal conclusions for which no answer is required and, to the extent an answer is required, they are denied. Footnote 3 is admitted. References in this Answer to "Plaintiff" or "General Cigar" include Culbo Corporation unless indicated otherwise.

5.      Denied, except that Defendant admits that the referenced motion was filed and included the quoted statement, and avers that, on January 28, 1998, the TTAB issued the following order, 15 TTABVUE 1:

> Petitioner's motion to suspend proceedings pending final disposition of [the Federal Action] is hereby granted. Respondent consents to petitioner's motion to suspend. Moreover, the Board is of the view that the civil action may have bearing on the instant proceeding. *See* TBMP § 510.02(a).

6.      The first sentence is denied, except that it is admitted and averred that Cubatabaco alleged for its Third Claim for Relief, and maintained in the action, that it was entitled to

cancellation pursuant to 15 U.S.C. § 1126(b) and (h), which it maintained incorporated Article 8 of the IAC.

The second sentence is denied. As to the balance of paragraph 6, no answer is required as to its allegations concerning the referenced decisions in the Federal Action as they contain legal conclusions and, to the extent an answer is required as to same, and otherwise as to the balance of paragraph 6, Defendant denies same, except it admits or avers that:

(a)     Cubatabaco sought cancellation at summary judgment in the Federal Action pursuant to the Lanham Act, sections 44(b) and (h), 15 U.S.C. §§ 1126(b) and (h), which Cubatabaco asserted incorporate Articles 7 and 8 of the IAC (hereafter sometimes "Sections 44(b) and (h)/IAC Claim"); the United States District Court for the Southern District of New York denied that Cubatabaco was so entitled on the ground that 15 U.S.C. §§ 1126(b) and (h) do not incorporate the IAC's Articles 7 and 8; the Court of Appeals for the Second Circuit affirmed the District Court's ruling on the same ground; and neither the District Court nor the Court of Appeals determined whether the TTAB has the authority to cancel a registration on the basis of the IAC's Article 8 pursuant to 15 U.S.C. § 1067 (hereafter sometimes "Section 1067/IAC Claim").

(b)     the Court of Appeals for the Second Circuit "rejected Cubatabaco's other arguments for cancellation of the Registrations," exclusively on account of the prohibitions of the Cuban Assets Control Regulations, 31 C.F.R. Part 515 ("CACR"); and

(c)     the allegations of the tenth and eleventh sentences.

7.     The Federal Circuit Decision bars General Cigar from asserting issue preclusion, as more fully set out in the answer to paragraph 3 and the First Affirmative Defense, which are repeated and realleged as if fully set out here; and

Paragraph 7 contains legal conclusions for which an answer is not required and, to the extent an answer is required, Defendant denies the allegations, including without limitation that Cubatabaco's claim in the Federal Action was an "Article 8 claim," and avers that it was the Sections 44 (b) and (h)/IAC Claim, and that Cubatabaco argued *this* claim, which was denied, and unsuccessfully appealed its denial, and that the judgment rejecting *this* claim, upon denial of certiorari, became final.

8.      The Federal Circuit Decision bars General Cigar from asserting issue preclusion in this action, as set out in the answer to paragraph 3 and the First Affirmative Defense, which are repeated and realleged as if fully set out here; and

Paragraph 8 contains legal conclusions for which an answer is not required and, to the extent an answer is required, it is denied.

9.      Denied, except that it is admitted that the Complaint seeks a determination that the grounds for cancellation identified in Counts I-V of the Complaint do not entitle Defendant to cancellation.

10.     Cubatabaco denies that its successful ground for cancellation at the TTAB was "IAC Article 8," and avers that it was its Section 1067/IAC Claim; denies that General Cigar argued that the requirements of Article 8 were not satisfied; and admits the balance of paragraph 10.

11.     Paragraph 11 contains legal conclusions for which an answer is not required, and, to the extent that an answer is required, it is denied, except that it is admitted that under 15 U.S.C. § 1071(b)(1), the court may adjudicate certain additional matters.

12.     The first and second sentences are denied, except Defendant admits that the Complaint herein seeks a declaration that Cubatabaco cannot prevail on any of the cancellation

grounds identified in the Complaint, that Cubatabaco has pursued legal remedies, and that litigation between the parties has consumed much judicial time and expense.

The third sentence is admitted, except for the characterization "unfortunately," for which no response is required. As to the fourth sentence, it is denied that a "second trial" before the TTAB would be required. The balance of the fourth sentence contains speculation to which an answer is not required, and, to the extent an answer is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of its allegations, and therefore denies same. No response is required to footnote 4. Any remaining allegations of Paragraph 12 are denied.

13.     The first, second and third sentences contain legal conclusions and subjective characterizations as to which an answer is not required. To the extent an answer is required, Defendant denies same, except admits that in this action, the court has the discretion under 15 U.S.C. §1071 to determine the challenges made by General Cigar in Counts II-V to the grounds for cancellation specified therein.

The fourth sentence is denied, except that it is admitted that Plaintiff seeks a declaratory judgment on the alleged basis with respect to the grounds for cancellation identified in Counts II-V of the Complaint. Paragraph 13's fifth sentence contains legal conclusions as to which an answer is not required, and, to the extent an answer is required, it is denied to the extent it alleges that the demanded relief is available under the Declaratory Judgments Act. With respect to the sixth sentence, it is admitted that Counts II-V specify the bases Plaintiff asserts for grant of the demanded relief, and denied that they warrant the demanded relief.

## PARTIES

14.    Admitted.

15.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of paragraph 15's allegations, and therefore denies same, except that Defendant admits that General Cigar and affiliated companies manufacture premium, hand-made cigars and that General Cigar markets them in the United States, and that General Cigar is a leading marketer of premium, hand-made cigars for the U.S. market. Defendant denies, to the extent it is implied, that General Cigar or affiliated companies do not also manufacture, and General Cigar does not market mass market, machine made cigars, including under the COHIBA trademark.

16.    Admitted, except that Defendant denies, to the extent it is implied, that U.S. Reg. No. 1,898,273 includes goods in addition to cigars; and the allegation that U.S. Reg. No. 1,147,309 is "incontestable" is a legal conclusion for which an answer is not required and, to the extent required, it is denied.

17.    With respect to the first sentence, Defendant admits that Plaintiff has "used and enforced the Registrations" as alleged; denies, to the extent it is implied, that Defendant and third parties have not used the COHIBA mark in the United States; denies, to the extent implied, that Defendant has not taken action to prevent third parties as well as Plaintiff from using the COHIBA mark in the United States; denies that Plaintiff's use and enforcement has been since February 1978; and denies that there was a "hiatus" in shipments, but admits and avers that there were no shipments between May 1986 and November 1992.

The second sentence is admitted, except that Defendant lacks knowledge or information sufficient to form a belief as to the alleged number of wholesalers and retailers, and therefore denies same.

With respect to the third sentence, it is denied that General Cigar "converted" the COHIBA to a super-premium cigar brand in 1997 or at any other time, except Defendant admits that, since September 1997, General Cigar has sold a cigar under the COHIBA brand positioned as a "super-premium" cigar, and avers that General Cigar has also sold cigars under the COHIBA brand not positioned as a "super-premium" cigar, including mass market, machine-made cigars.

With respect to the third and fourth sentence, Defendant admits that Plaintiff has sold cigars and spent sums in the alleged promotion and advertisement, but lacks knowledge or information sufficient to form a belief as to the truth of the alleged amount of sales, revenues, and expenditures, and therefore denies same.

The fifth sentence is denied, except that it is admitted that General Cigar sued third parties whose products used the word "Cohiba" in conjunction with the Cuban COHIBA trade dress for infringement, and took other actions predicated on infringement or counterfeiting, including with U.S. Customs authorities, against additional third parties whose product used the word "Cohiba" in conjunction with the Cuban COHIBA trade dress, including third-party products that indicated Cuba as the product's origin.

18.    Admitted.

19.    The first sentence is denied, except that Defendant admits and avers that it is an "agency or instrumentality" of the Republic of Cuba within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.*

The second sentence is admitted, except that it is denied to the extent it alleges or implies that Cubatabaco and/or Habanos, S.A. have not sold COHIBA-branded cigars "in commerce which may lawfully be regulated by Congress," Lanham Act, 15 U.S.C. § 1127.

With respect to the third sentence, Defendant denies that Cubatabaco is legally barred from advertising Cuban-origin cigars in the United States; and denies, to the extent alleged or implied, that Cubatabaco is legally barred from selling Cuban-origin cigars "in commerce which may lawfully be regulated by Congress," 15 U.S.C. § 1127; but admits that Cubatabaco is legally barred by the CACR from selling cigars in the United States. Defendant denies that the LIBERAD Act "codified" the CACR, except admits that, under the LIBERTAD Act, 22 U.S.C. 6033, the "restrictions" of the CACR in effect on March 1, 1996 shall "remain in effect" except as transactions subject to the CACR as of that date may subsequently be authorized by amendments to the CACR, the issuance of specific licenses by the Office of Foreign Assets Control ("OFAC"), or legislation, or as they may be authorized under the LIBERTAD Act's section 204, 22 U.S.C. § 6064 (Termination of the Economic Embargo of Cuba).

The fourth sentence is admitted, except that it is denied to the extent it alleges or implies that neither Cubatabaco nor Habanos, S.A. has ever sold a COHIBA-branded cigar "in commerce which may lawfully be regulated by Congress," 15 U.S.C. § 1127. The fifth sentence is denied.

## JURISDICTION AND VENUE

20. Denied, except that it is admitted that this action arises under 15 U.S.C. § 1071(b).

21. Paragraph 21 contains legal conclusions for which an answer is not required, and, to the extent an answer is required, Defendant denies its allegations, except that it admits that this court has subject matter jurisdiction under the FSIA, 28 U.S.C. § 1605(a)(1), with respect to the action in that, and insofar as, the action lies under 15 U.S.C. § 1071(b).

22.     Admitted, including that the court has personal jurisdiction over Defendant, except that it is denied that the court has personal jurisdiction over Cubatabaco other than under the FSIA, 28 U.S.C. § 1330(b), with respect to the action in that, and insofar as, it is an action under 15 U.S.C. § 1071(b).

23.     Admitted, except that it is denied that venue is proper other than the FSIA, 28 U.S.C. §§ 1391(b)(3), in that, and insofar as, this is an action under 15 U.S.C. § 1071(b).

**FACTS COMMON TO ALL CLAIMS**

**A.     The Cuban Embargo**

24.     Paragraph 24 is denied with respect to advertising; denied with respect to sales to the extent it alleges or implies that Cubatabaco may not sell Cuban-origin cigars in "commerce which may lawfully be regulated by Congress," 15 U.S.C. § 1127; otherwise admitted as to sales insofar as it alleges prohibition by regulation, but denied insofar as it alleges prohibition by statute; and admitted as to Cubatabaco sales outside the United States.

25.     The first sentence is admitted. The second and third sentences are denied, except that Defendant admits that the CACR prohibit the identified transactions unless authorized by General License in the CACR, Specific License issued by OFAC, License Exceptions in the Export Administration Regulations, licenses issued by the Bureau of Industry and Security, or legislation.

With respect to the fourth sentence, its allegations as to sales in the United States are admitted, except that it is denied to the extent it alleges or implies that it has been illegal for such cigars to be sold within "commerce which may lawfully be regulated by Congress," 15 U.S.C. § 1127.

With respect to the fourth sentence, its allegations as to imports into the United States are denied, except that it is admitted that importation for the purpose of sales in the U.S., and importation of cigars purchased by persons who are present in the U.S. at time of purchasing, has been prohibited. The sentence is denied to the extent it alleges that it was: (a) illegal for persons to import such cigars from and/or purchased in Cuba as accompanying baggage for their personal use, including to give as gifts, during the periods May 18, 1977 to June 16, 2004 and January 16, 2015 to September 24, 2020; (b) illegal during the period from at least 1969 to November 16, 1992, and from January 16, 2015 to September 24, 2020, for persons traveling to the United States who were not United States citizens or residents to import such goods as accompanying baggage, including cigars they had purchased, provided that they were not in commercial quantities and not imported for resale; (c) illegal, from October 17, 2011 to September 24, 2020, for persons subject to the jurisdiction of the United States to purchase such cigars in third-countries and import them into the United States as accompanying baggage for personal use, including to give as gifts; or (d) illegal at any time to import such cigars into the United States for use by the diplomatic missions of Cuba to the United Nations and the United States, including to give as gifts at receptions and otherwise.

26.     Defendant incorporates the portion of its answer to paragraph 19 concerning "codification," which is repeated and realleged as if set out here.

**B.      Parallel Brands in the U.S. Cigar Industry**

27.     Denied, except that it is admitted that the Republic of Cuba expropriated existing cigar businesses in 1960 and ousted their owners, and that other persons or companies took possession of those businesses under Cuban law.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted, except the allegation as to "Cuban state tobacco monopoly" is denied.

32.     The first three sentences are admitted, with the clarification that parallel brands are "affiliated with Cuba" with respect to their history; except that it is denied that the product sold in the United States and those sold outside of the United States under the same name are the same "brand" of cigar.

With respect to the fourth sentence, it is admitted in that and to the extent it alleges that the COHIBA-branded cigar sold in the United States by General Cigar is incorrectly regarded as being made by a family or business that once made a COHIBA-branded cigar in Cuba, left Cuba when their businesses were expropriated, reestablished their cigar businesses outside of Cuba, and resumed manufacturing and selling COHIBA-branded cigars in the U.S. using non-Cuban tobacco, or by a successor to such family or business, and it is denied to the extent that it alleges or implies that General Cigar's COHIBA-branded cigar is universally so regarded.

**C.      The Premium Cigar Industry**

33.     Admitted, except denied to the extent it alleges or implies that premium cigars do not include "minis" or small cigars, or that there are only two cigar segments.

34.     Admitted, except denied to the extent it alleges or implies that premium cigars do not include "minis" or small cigars.

35.     The first sentence is denied, except that it is admitted that some premium cigars are "prized among U.S. cigar consumers," and that premium cigars are normally sold at a higher price point than mass-market cigars of comparable size. The second sentence is denied, and it is averred that General Cigar's COHIBA "mini" premium cigars are often sold at around $1.00 to

$1.70 per cigar, and its COHIBA "small" premium cigars are often sold at around $1.80 to $2.99 per cigar. The third sentence is admitted.

36.     With respect to the first and second sentence, Defendant denies same, except that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations that there had been a drastic and sustained decline between the mid-1960's and 1978, and therefore denies same; and avers that the number of premium cigars sold for the fourteen years preceding 1993 was relatively flat, in the range of 90-102 million cigars per year. As to the paragraph's third sentence, Defendant lacks knowledge or information sufficient to form a belief as to its truth, and therefore denies same.

37.     Admitted, with the clarification that the "cigar boom" was also known as the "*Cigar Aficionado* boom."

**D.     General Cigar's Adoption, Use, and Prosecution of the COHIBA Marks**

38.     Admitted.

39.     With respect to paragraph 39's first sentence, Defendant denies that in February 1978, Plaintiff "decided to adopt 'COHIBA' as a brand for a new cigar," except Defendant admits that in February 1978, Plaintiff decided to add COHIBA to its self-described "trademark maintenance program" for 32 other marks.

With respect to the second sentence, Defendant admits its allegation, except denies that the information General Cigar obtained was "second hand." With respect to the third sentence, it is denied, including without limitation for the reasons found by the TTAB in its Decision, attached to the Complaint, at 28-31, which are repeated and realleged as if set out here.

40.     The first sentence is denied, except that it is admitted and averred that, on February 13, 1978 and in June 1978, for each of 33 trademarks in its self-described "trademark

maintenance program," including COHIBA, Plaintiff pasted a stick-on label bearing the trademark on two cardboard boxes of 50 machine-made "seconds" (that is, cigars that, because of defects, Plaintiff did not wish to sell under their normally associated trademark) and shipped a carton with all 66 boxes randomly placed in the carton to two retailers who, by prearrangement, were given a full credit back on the nominal payment they made to Plaintiff. The carton was placed on the retailer's floor as received; if the two boxes with the COHIBA label were not at the top of the carton, they would not have been visible to the consumer. Plaintiff made no effort to place the two boxes with the COHIBA label on the top of the carton. The retailers did not request these shipments, and they were not made to replenish the supply of the retailers on account of purchases (if any) by consumers from the prior shipments. Neither Plaintiff nor any retailer engaged in any advertising, promotion, point-of-sale promotion or any other effort to sell the boxes with the COHIBA label, or to establish any goodwill in the COHIBA mark. It is not known whether any the COHIBA-labelled boxes were purchased by consumers.

Further with respect to the first sentence, it is denied that the foregoing was "[c]onsistent with common practices of trademark owners in 1978," and, to the extent it is implied, that such practice was consistent with legal advice received by General Cigar or a good faith belief that this would satisfy the use requirements for registration.

The balance of paragraph 40 is admitted.

41. The first sentence is denied, except that it is admitted that Plaintiff made sporadic and irregular shipments of "seconds" in boxes labeled COHIBA to two retailers pursuant to its above-described "trademark maintenance program" in the following amounts: 1978-650; 1979-600; 1980-1,000; 1981-700; 1982-200 in a single shipment on April 15, 1982.

The second sentence is denied, except that it is admitted that beginning in November 1982 and ending in May 1986, Plaintiff sold its pre-existing Canario D'Ono cigar under the COHIBA mark in a clear plastic canister with a price between that of a high-end premium cigar and a "bundled" cigar. The third sentence is denied.

42.     The first sentence is admitted, except that it is denied there were any shipments in 1986 after May or any shipments in 1987. Each of the allegations of the second sentence is denied.

43.     Admitted.

44.     Denied, including without limitation denial that there were any sales of a COHIBA-branded cigar to retailers in the 21 months from February 1981 until November 1982, one-third of the five-year period of continuous use in interstate commerce to which Plaintiff attested in its Declaration; that the shipments under General Cigar's "trademark maintenance program" during this period satisfied the "use in commerce" requirement under Section 15; that the activity of retailers satisfied the "use in commerce" requirement under Section 15; that there were any shipments between mid-December 1981 and November 1982 except for one shipment of 200 cigars on April 15, 1982; and that there were any sales or shipments to retailers after May 1986 for more than six years, including when the Declaration was made on June 23, 1986 and filed on July 16, 1986.

The second and third sentences are denied.

45.     With respect to the first sentence, Defendant admits that there were no sales from 1987 until November 20, 1992; admits that "by 1987" General Cigar made the decision to end sales, except that it avers that General Cigar made the decision in 1986; denies that the decision was to "temporarily" discontinue sales; denies that the premium cigar market declined from 1982

to 1987; denies that General Cigar ended sales because of any change in market conditions; denies that market conditions prevented Plaintiff from continuing or resuming sales of, or launching, a COHIBA-branded cigar; denies that during this period Plaintiff intended to launch or relaunch "the COHIBA" or any COHIBA-branded cigars, and denies that there was any relaunch in 1992 of the COHIBA-branded cigar that General Cigar had sold prior to 1987, as opposed to adoption of the COHIBA name for a new and unrelated product.

The second sentence is denied, and it is averred that: (a) in September 1992, General Cigar decided to adopt the COHIBA name for a pre-existing product, which was unrelated to its prior COHIBA-branded product that retained no goodwill; (b) General Cigar decided to do so in order to exploit and capitalize on the promotion of the renown and reputation of the Cuban COHIBA in *Cigar Aficionado*'s premier issue, published on September 1, 1992; (c) General Cigar began shipments of this COHIBA-branded product on November 20, 1992; and (d) this was at the start of what is known as the "*Cigar Aficonado* boom" as well as the "cigar boom."

46.     Denied, including without limitation denial that the "evidence presented by General Cigar to the TTAB showed that General Cigar never intended to abandon the mark during the 1987-1992 period," that intent "to abandon" is necessary for abandonment, that the evidence enumerated in paragraph 46 is accurately or fairly described, and that that evidence demonstrates an intent to resume use or is sufficient to overcome the statutory presumption of abandonment that arises due to each of General Cigar's multiple periods of non-use and the more than five years of non-use in total.

To the extent, if any, paragraph 46 alleges or implies that any of the enumerated activities (i) through (iv) took place during the initial two-year period of non-use, it is denied.  To the extent, if any, paragraph 46 alleges or implies that any of the enumerated activities took place

during the period from July 1989 to December 1991 (itself also more than two years of non-use), it is denied, except for Plaintiff sending a single cease and desist letter dated November 9, 1990.

Paragraph 46(i) is denied, except that it is admitted and averred that Plaintiff introduced in the TTAB the testimony of General Cigar executives in the Federal Action that there were discussions about possible "eventual use" of Cohiba, "general discussions," a "topic" of discussion, "not a specific about whether we would finally end up with it, but it was a topic of conversation," and that such discussions began in April 1989 (after more than two years of non-use), and it is denied that this testimony is credible, and, even if credited, that it establishes an intent to resume use or is sufficient to overcome the statutory presumption of abandonment.

With respect to paragraph 46(ii)'s allegation that the TTAB evidence showed "discussions with outside counsel starting in April 1989 (and lasting until 1992) whether General Cigar could relaunch a COHIBA-branded cigar using the Cuban COHIBA trade dress," it is denied to the extent it alleges or implies that there were discussions with counsel other than discrete discussions in April 1989 and December 1991, and it is denied that these discussions establish an intent to resume use or overcome the statutory presumption of abandonment from non-use, including because counsel advised that the trade dress could not be used for legal reasons and General Cigar did not consider, or develop plans for, using COHIBA without the Cuban trade dress.

With respect to paragraph 46(iii)'s allegation that the TTAB evidence shows a "decision not to include COHIBA in a list of over 30 cigar trademark registrations that would not be renewed," Defendant denies the allegation, including because the list was of trademarks owned by Culbro Corporation, which had already assigned the COHIBA registration to General Cigar.

With respect to paragraph's 46(iv) allegation that the TTAB evidence showed "continued enforcement of the registered COHIBA mark against third-party infringers" during the period of non-use, it is denied, except that it is admitted that on November 9, 1990 (after more than two years of non-use), Plaintiff sent a single cease and desist letter.

47.     Admitted, except that it is denied to the extent that paragraph 47 alleges or implies that Plaintiff "resumed" sales of the same product it had previously offered under the COHIBA brand or that any goodwill appurtenant to its prior product remained, or that it decided in 1992 to sell a COHIBA-branded product because of the "cigar boom" or for any reason other than to exploit and capitalize upon the reputation and renown of the Cuban COHIBA promoted by *Cigar Aficionado*'s premier issue, published on September 1, 1992.

48.     Admitted.

49.     Admitted.

50.     The first sentence is admitted. With respect to the second sentence, it is admitted that Plaintiff announced the launch of a COHIBA-branded product at the RTDA convention.

With respect to the second and third sentences, it is denied that Plaintiff's marketing plan was formulated or decided upon in 1997 and it is averred that it was formulated and decided in 1992, when, after publication of *Cigar Aficionado*'s premier issue on September 1, 1992, Plaintiff decided upon a plan to exploit and capitalize upon the renown and reputation of the Cuban COHIBA in the United States by choosing the name "Cohiba" for a cigar product, which plan General Cigar adhered to and implemented by adopting COHIBA as the name of the product it sold in the 1992-1997 period and then choosing COHIBA as the name for the super-premium product it launched in 1997.

With respect to the third sentence, it is further denied that "General Cigar did not plan to market its new COHIBA cigar as having a Cuban connection," including without limitation denial that choosing the same name as the Cuban COHIBA for the super-premium product was not a plan to market the product as having "a Cuban connection." Defendant further avers that General Cigar's plan included reinforcing this "Cuban connection" by pitching the product to a large swath of retailers on the market due to the appeal it would have because the product had the same name as the Cuban COHIBA, anticipating that all or almost all of its major retailers would market the product by linking it to the Cuban COHIBA, and taking no corrective action when they did.

With respect to the third sentence's allegation that Plaintiff's marketing plan "focused on evoking a sophisticated '1950's-style' lifestyle mood," Defendant denies that such was the "focus" of Plaintiff's plan, which, Defendant avers, was first and foremost to choose the same name as the Cuban cigar for a product it would launch and, secondarily, to reinforce the "Cuban connection" established this way through additional means, including those averred above.

Further with respect to the third sentence's allegation that the marketing plan included "evoking a sophisticated '1950's-style' lifestyle mood," it is denied, and it is averred that, as Plaintiff's own documents stated, what General Cigar attempted to evoke was the "romance of pre-Castro Cuba" as a "tactic" to further "exploit" the renown of the Cuban COHIBA.

51.     With respect to the first sentence, it is admitted that the trade dress included a red dot and other elements not in the Cuban COHIBA trade dress; denied that the red dot and other elements made the trade dress readily distinguishable from or "distinctive" in relation to the trade dress of the Cuban COHIBA; denied to the extent it alleges or implies that the trade dress was not, as General Cigar's own documents state, "in keeping" with the "look of Cuban Cohiba

presentation" and did not "reflect[s] the spirit of this famous brand." The second and third sentences are admitted.

52. Defendant lacks knowledge or information sufficient to form a belief as to the truth of paragraph 52's allegations, and therefore denies same, but admits that that General Cigar has sold and marketed COHIBA-branded cigars positioned as super-premium cigars and denies, to the extent alleged or implied, that General Cigar has principally or exclusively sold and marketed COHIBA-branded cigars positioned as super-premium cigars or premium cigars.

53. With respect to paragraph 53, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the alleged sum of legal fees, and therefore denies same, but admits that General Cigar incurred legal fees; admits that General Cigar has brought lawsuits and taken other action against alleged "infringers and counterfeiters; avers that these were third parties that counterfeited the Cuban COHIBA and/or sold COHIBA-branded cigars by suggesting an association with the Cuban COHIBA; and denies that General Cigar worked with CBP as alleged, except admits that it has worked with CBP to seize counterfeits of the Cuban COHIBA and the Cuban COHIBA.

**E. Cubatabaco's Alleged Use, Adoption, and Registration of a Cohiba Mark**

54. Denied, and averred that on September 29 (not September 28), 1969, Defendant filed an application with Cuba's predecessor trademark authority that matured into Registration No. 110,044.

55. Denied, and averred that on May 31 (not May 30), 1972, Cuba's trademark authority issued Registration No. 110,044, which legally protected the word mark COHIBA and

the design , in connection with cigars, for a term of fifteen years.

56.     With respect to the first sentence, it is denied that Cubatabaco never made

commercial use of the logo in connection with its Cuban cigars; and admitted that Cubatabaco

did not renew Registration No. 110,044 and, by not renewing same, allowed it to lapse as of May

31, 1987.

With respect to the second sentence, Defendant denies that General Cigar was never

aware that Cubatabaco made commercial use of the word mark COHIBA during the period that

Cuban Registration No. 110,044 was in the effect, including for the reasons found by the TTAB,

Exhibit A to the Complaint, at 28-31, which are repeated and realleged as if set out here; and

lacks knowledge or information sufficient to form a belief as to the truth of the allegation that

Plaintiff was never aware of the commercial use of the design, and therefore denies same.

Without limitation, the aforesaid denial includes denial that General Cigar was not aware of

Cubatabaco's commercial use of the word mark COHIBA prior to February 13, 1978, the date of

General Cigar's claimed first use of the mark in commerce; March 13, 1978, the date of General

Cigar's application to register COHIBA; and November 1982, the date of General Cigar's first

use of the mark in commerce, and it is averred that General Cigar was aware of Cubatabaco's

commercial use of the word mark COHIBA prior to each of those dates.

57.     The first and second sentences are denied, except that it is admitted and averred

that Registration No. 111,059 (not 1,111,059) was issued on July 1, 1980 (not June 30, 1980),

and the application was filed with and the registration issued by the predecessor trademark

authority.

With respect to the third sentence, the part preceding "but" contains legal conclusions for

which no answer is required, and, to the extent an answer is required, its allegation or implication

that filing an application under Section 44(d) is the only way for Cubatabaco to have obtained

priority is denied, its allegation or implication that Cubatabaco did not obtain priority by other means is denied, and it is admitted that Cubatabaco could have obtained priority under Section 44(d) by filing an application for registration in the United States. The balance of the third sentence is denied, except that it is admitted that Cubatabaco did not file an application for registration in the United States within six months of its application for registration in Cuba.

58. Denied, except that it is admitted and averred that Cubatabaco filed a timely application for renewal on December 26, 1995 and, on February 5, 1996, the Cuban trademark authority "grant[ed] renewal of the registration for a ten-year period as of July 1, 1995."

59. Admitted, except it is averred that the alleged discussion took place in June 1983.

60. With respect to the first sentence: (a) Plaintiff is barred and estopped from asserting laches for the reasons alleged in Cubatabaco's Second Affirmative Defense (Waiver) and Third Affirmative Defense (Estoppel), which are repeated and realleged as if fully set out here; (b) its allegation that Cubatabaco's conduct "demonstrates laches" contains legal conclusions as to which an answer is not required, and, to the extent an answer is required, is denied; and (c) its allegation that "Cubatabaco's conduct for the next twelve years indicated that it knew it had no right to register a Cohiba mark in the U.S." is denied.

The second and third sentences are admitted.

61. Denied, except that it is admitted that, in 1987, Cubatabaco's counsel searched the USPTO registry to determine whether General Cigar had filed a Declaration and, upon being advised by counsel that it had, Cubatabaco did not take any action against General Cigar's registration.

62. Plaintiff is estopped and barred from asserting laches, acquiescence, waiver or estoppel on the basis of the allegations in paragraphs 62-66 or otherwise, including for the

reasons alleged in Cubatabaco's Second Affirmative Defense (Waiver) and Third Affirmative Defense (Estoppel), which are repeated and realleged as if fully set out in response to each of paragraphs 62-66. Paragraph 62 is denied, except it is admitted that the parties had certain, limited interactions.

63. The first, second and third sentences are denied.

The fourth sentence is denied, except that it is admitted that, in its Spring 1994 issue, *Cigar Aficionado* published an edited translation not reviewed by Cubatabaco of an interview of Cubatabaco's Director that was conducted in December 1993, in which the Director is reported to have been asked "have you thought how you would introduce your brands to the American market" and the Director is reported to have responded as follows:

> First, there is going to be a fight. We have not been able to have the brand name in the United States because of the embargo. It was forced by you [the United States]. It was not decided by our side. Your side decided on this. So, maybe there is going to be a fight. But we are not going to fight in order to get our cigars into the United States. As we always say, a Habano [ cigar] is a Habano [cigar]. With a name of Marvin or Padron or Meyer or whatever goes on the cigar, it is a Habano. So, we are going to let everybody know that we are here, and this is a Habano. We are not going to fight with somebody else because he owns the brand name of Cohiba or Montecristo in America. We have been living without that for a long time.

To the extent that the "examples" alleged in paragraph 63 are meant to establish or support a claim by Plaintiff of laches or acquiescence, any such assertion contains legal conclusions as to which an answer is not required, and to the extent an answer is required, such assertion is denied, including without limitation on the ground that, as alleged in Defendant's Third Affirmative Defense, ¶¶ 32-35, General Cigar did not make disclosures that would reasonably have led Cubatabaco to question any claimed right by General Cigar to the COHIBA mark and to consider cancellation proceedings.

64.     With respect to paragraph 64, it is denied that "[i]n 1993, Cubatabaco received samples of General Cigar's COHIBA cigars," except that it is admitted and averred that in January 1994, Cubatabaco received from its Canadian distributor a COHIBA-branded box with a note from the Canadian distributor that "This Box of Cohiba is produced by General Cigar for trademark registration purposes in the U.S.A. only. This is not to be sold as a regular item," and that sometime thereafter Cubatabaco informed an in-house lawyer of same.

With respect to paragraph 64's allegation that Cubatabaco did not file an opposition when the Second Registration was published for opposition, it is admitted, but it is denied to the extent alleged or implied that Cubatabaco learned of the Second Registration's publication for opposition before the deadline for filing an opposition had passed.

With respect to paragraph 64's allegation that Cubatabaco did not "then seek to cancel the First Registration," it is denied, except that it is admitted and averred that, after receiving the box and note alleged above in 1994, Cubatabaco began consultations with United States counsel, and that Cubatabaco filed a petition to cancel the Registrations on January 15, 1997.

65.     With respect to the first sentence, it is denied, including, without limitation, to the extent that it alleges or implies that Cubatabaco had, prior to 1994, reason to doubt that General Cigar had continuously used the mark in commerce from February 13, 1978 and been truthful in its declarations to the USPTO in its March 13, 1978 application for registration of COHIBA and its Section 8 and 15 Declarations. The second, third and fourth sentences are admitted.

66.     It is denied that the Cuban COHIBA mark has never been used in commerce within the meaning of the Lanham Act, 15 U.S.C. § 1127, by Cubatabaco or its affiliated company, Habanos, S.A., including because, during the periods specified in Cubatabaco's response to paragraph 25: (a) they sold Cuban COHIBA cigars in Cuba to persons subject to the

jurisdiction of the United States for their consumption there and for their importation into the United States as accompanying baggage for their personal use, including to give as gifts; (b) they have sold Cuban COHIBA cigars to third-country nationals in Cuba and elsewhere for importation into United States as accompanying baggage in non-commercial amounts and not for resale; and (c) they have sold Cuban COHIBA cigars to the Cuban Ministry of Foreign Affairs for shipment to the United States for use by the Cuban diplomatic missions to the United Nations and the United States, including to give as gifts at receptions and otherwise. Paragraph 66 is admitted to the extent it alleges that Cubatabaco has never sold COHIBA-branded cigars in the United States.

## COUNT I (concerning the First and Second Registrations):

**REVIEW AND REVERSAL OF THE TTAB DECISION AND VACATUR OF THE TTAB'S CANCELLATION ORDER (15 U.S.C § 1071(b)(1) AND 37 C.F.R. § 2.145)**

67.     The first sentence is admitted. As to the second sentence, Defendant repeats and realleges its answers to the Complaints' paragraphs 3-8 and 38-66 as though fully set forth here.

68.     As set out in Cubatabaco's answer to paragraph 3, and Cubatabaco's First Affirmative Defense, Plaintiff is barred from asserting that the judgment in the Federal Action has preclusive effect here by reason of the Federal Circuit's Decision, Judgment and Mandate. Cubatabaco so asserts in response to each and every allegation in paragraphs 69-101, as if set out therein, without repeating and realleging this response.

In further response to paragraph 68, it is admitted that the TTAB did not give the judgment in the Federal Action preclusive effect and denied that this was erroneous.

Defendant denies that the procedural history alleged in paragraphs 69-97 is accurate or complete, and, in addition to its answers to their specific allegations, refers to and incorporates

by reference the procedural history as stated by the Federal Circuit and the TTAB in their decisions.

69.     Admitted, except with clarification that the registration number of the Cuban registration is Reg. No. 111,059, and the USPTO's refusal is not final.

70.     As to the first sentence, it is admitted that Cubatabaco filed a petition on January 15, 1997 to cancel the Registrations, and denied that Cubatabaco did anything more than pursue legal remedies.

As to the second sentence, it is denied, except that it is admitted and averred that in its Petition, Cubatabaco asserted that General Cigar knew of Cubatabaco's use, employment and registration of the mark in Cuba prior to General Cigar filing the applications that matured into the Registrations, and asserted that those facts established the Section 1067/IAC Claim that entitled Cubatabaco to cancellation of the Registrations.

71.     The first three sentences are admitted. The fourth and fifth sentences are denied, except that it is admitted and averred that the Third Claim for Relief in the Federal Action asserted the Sections 44(b) and (h)/IAC Claim that Cubatabaco argued entitled it to cancellation of the Registrations. Footnote 5 is admitted.

The sixth sentence is denied, including without limitation denial that Cubatabaco made allegations as to how "treaty rights under Article 8 of the IAC were enforceable in the U.S.," except that it is admitted that Cubatabaco made allegations as to the authority of the federal courts to grant relief, including the prayer for cancellation of the Registrations.

72.     With respect to the first and second sentences, Defendant repeats and realleges its response to paragraph 5, above, as though set out here. The third sentence is denied.

73.     Paragraph 73, it is denied, except that it is admitted that: (i) Cubatabaco moved for partial summary judgment in 2001; (ii) as correctly stated by the Federal Circuit, "in the district court litigation, Cubatabaco claimed relief under Articles 7 [for injunctive relief] and 8 [for cancellation] pursuant to Sections 44(b) and (h) of the Lanham Act," 753 F.3d at 1270; and (iii) General Cigar argued that sections 44(b) and (h) of the Lanham Act, 15 U.S.C. §§ 1126 (b) and (h), did not incorporate Articles 7 and 8 of the IAC, and that relief could not be granted under the Sections 44(b) and (h)/IAC Claim

74.     Denied, except that it is admitted and averred that the District Court denied relief to Cubatabaco on the ground that Sections 44(b) and (h) of the Lanham Act, 15 U.S.C. §§ 1126 (b) and (h), do not incorporate Articles 7 and 8 of the IAC.

75.     Admitted.

76.     Admitted.

77.     The first sentence is admitted. The second sentence is denied, except that it is admitted that Cubatabaco cross-appealed from the District Court's dismissal of its claim for injunctive relief and cancellation under Articles 7 and 8 of the IAC pursuant to Sections 44(b) and (h), Lanham Act (its Sections 44(b) and (h)/IAC Claim).

78.     The first, fourth, and fifth sentences are admitted. To the extent paragraph 78 alleges or implies otherwise, the Federal Circuit was correct in holding, 753 F.3d at 1270, that the Second Circuit did not decide or address whether, "unlike the federal courts, the Board can cancel registration" under Article 8 of the IAC "pursuant to the Board's jurisdiction under 15 U.S.C. 1067(a)." 753 F.3d at 1278.

The second sentence is denied, except that it is admitted that the Second Circuit, in footnote 9 (citation to which is the third sentence of this paragraph) of its Opinion stated that

"principally because we hold that the Regulations [the Cuban Assets Control Regulations] prohibit transfer of any property right in the COHIBA mark to Cubatabaco - we hold today that General Cigar, not Cubatabaco, owns the COHIBA trademark in the United States." To the extent the second sentence alleges or implies that the aforesaid statement addresses whether the TTAB may cancel the Registrations, it is denied.

79.     Admitted.

80.     Admitted.

81.     Admitted.

82.     Admitted.

83.     The first sentence is admitted; the second sentence is denied.

84.     The first sentence is admitted. The second sentence is denied, except that it is admitted and averred that, as correctly stated by the Federal Circuit, General Cigar "moved for summary judgment on grounds that Cubatabaco lacked standing, and, moreover, that principles of issue and claim preclusion barred the Amended Petition." 753 F.3d at 1273.

85.     Admitted.

86.     The first sentence is denied, except that it is admitted that Cubatabaco appealed the TTAB's dismissal of its Amended Petition for cancellation.

With respect to the balance of paragraph 86, it is denied, except that it is admitted and averred that the Federal Circuit addressed and adjudicated issue and claim preclusion as well as standing, held that the "principles of issue and claim preclusion do not bar the Amended Petition," including Cubatabaco's Section 1064/IAC claim, and "vacate[d] the Board's decision and remand[ed] for further proceedings consistent with [its] opinion," 753 F. 3d at 1278, stating, *id.* at 1276:

Although the Board declined to address preclusion in its judgment, this court finds that neither issue nor claim preclusion bars the Amended Petition. This court has recognized its authority to resolve questions of law not addressed below as long as such rulings would not be clearly unfair to the appellee. [Citations omitted]. Here, it would not be clearly unfair to General Cigar to decide the questions of law concerning issue and claim preclusion in the first instance because the parties have fully briefed this issue, and because the Board and the federal court proceedings assembled an extensive record on the matter.

Defendant repeats and realleges its responses to paragraphs 92-94 as if fully set out here, and also refers to the Federal Circuit's decision for its content.

87.     Paragraph 87 contains legal arguments and conclusions for which no answer is required, and, to the extent an answer is required, it is denied.

88.     Paragraph 88 contains legal arguments and conclusions for which no answer is required, and, to the extent an answer is required, it is denied.

89.     The first sentence is admitted, and it is averred that the TTAB trial also included evidence that was not obtained through discovery, and evidence from discovery in the Federal Action that was not introduced at the trial of the Federal Action.  The second sentence is admitted. With respect to the third sentence, it is admitted that the TTAB found in favor of Cubatabaco on its Section 1067/IAC Claim for cancellation of both Registrations, and that the TTAB rejected General Cigar's affirmative defense of issue or claim preclusion.  The fourth sentence is admitted.

90.     It is denied, except that it is admitted and averred that the TTAB ruled in favor of Cubatabaco on its Section 1067/IAC Claim, and the balance of paragraph 90 is admitted.

91.     Paragraph 91 contains legal arguments and conclusions for which no answer is required, and, to the extent an answer is required, it is denied, including denial to the extent it differs from the Federal Circuit's articulation of the conditions for issue and claim preclusion.

92.     The first sentence contains legal arguments and conclusions, as to which no answer is required, and, to the extent an answer is required, it is denied.

The balance of paragraph 92 is denied, and it is averred that, as the Federal Circuit expressly found, "[i]n the district court litigation, Cubatabaco claimed relief under Articles 7 and 8 pursuant to Sections 44(b) and 44(h) of the Lanham Act … [T]he Second Circuit rejected that argument, holding that Cubatabaco's IAC claims were not 'related to the repression of unfair competition' and therefore did not fall 'within the ambit of Section 44(h)' [citation omitted]… Here, however Cubatabaco asserts, unlike the federal courts, the Board can cancel registrations directly under Article 8 of the IAC, pursuant to the Board's jurisdiction under 15 U.S.C. § 1067(a)." 753 at 1277-78.

93.     Paragraph 93 contains legal argumentation and conclusion, as to which no answer is required, and, to the extent an answer is required, it is denied, including denial that the "legal issue" in the Federal Action was the same as the legal issue before the TTAB, which the Federal Circuit correctly held it was not.

94.     Paragraph 94 contains legal arguments and conclusions for which no answer is required, and, to the extent an answer is required, it is denied, including denial that the "legal issue" in the Federal Action was the same as the legal issue before the TTAB, which the Federal Circuit correctly held it was not.

95.     Admitted.

96.     Paragraph 96 contains legal arguments and conclusions for which an answer is not required, and, to the extent required, it is denied, including for the reasons found by the TTAB in its Decision, at 34-41.

97.     Paragraph 97 contains legal arguments and conclusions for which no answer is required, and, to the extent an answer is required, it is denied for, *inter alia*, the reasons that the Federal Circuit held to the contrary, including that Cubatabaco's Section 1067/IAC Claim in the TTAB is not the same as its Sections 44(b) and (h)/IAC Claim in the Federal Action.

98.     Defendant denies that it asserts or asserted an "IAC Article 8 claim" and avers that it asserted and asserts the Section 1067/IAC Claim. Plaintiff may not allege or assert that Cubatabaco's claim (whether an "IAC Article 8 claim" or the Section 1067/IAC Claim) "would fail on the merits," for the reasons alleged in Cubatabaco's Second Affirmative Defense (Waiver), which are repeated and realleged as if fully set out here. Cubatabaco's response to this paragraph 98 is repeated and realleged in response to each of paragraphs 99-101 as if fully set out therein.

Paragraph 98 contains legal conclusions, as to which an answer is not required, and, to the extent an answer is required, it is denied.

99.     The first sentence is admitted. The balance of paragraph 99 is denied.

100.    Paragraph 100 contains legal conclusions for which an answer is not required, and, to the extent an answer is required, it is denied.

With respect to the first sentence, it is denied that Article 8 requires proof that the U.S. registrant had the specified knowledge before filing its application, except it is admitted and averred that Article 8 requires such knowledge *either* "prior to adoption and use" *or* "prior to the filing of the application or deposit of the mark which is sought to be cancelled."

The balance of paragraph 100 is denied, including denial that Cubatabaco did not "use" or "employ" the COHIBA mark in Cuba within the meaning of Article 8 prior to March 13,

1978; and that General Cigar did not have knowledge of "any qualifying use or employment" prior to March 13, 1978.

101.     Paragraph 101 contains legal conclusions for which an answer is not required, and, to the extent an answer is required, it is denied.

### COUNT II (concerning the First Registration):

**DECLARATORY JUDGMENT OF NON-ABANDONMENT OF GENERAL CIGAR'S THE FIRST REGISTRATION BETWEEN 1987-1992 (28 U.S.C. § 2201)**

102.     With respect to the first sentence, Cubatabaco repeats and realleges its response to paragraphs 9-13 and 36-53, above, as if fully set forth here.

With respect to the second sentence, Cubatabaco admits that Cubatabaco asserted and asserts abandonment as a ground for cancellation of the First Registration; avers that Cubatabaco alleged and alleges non-use from May 1986 to November 22, 1992, and abandonment during that period; admits that Plaintiff seeks the relief stated in paragraph 102; and denies that Plaintiff's First Registration became incontestable in 1986.

103.     Paragraph 103 consists of legal arguments and conclusions for which no answer is required.

104.     Each of paragraph 104's allegations is denied. With respect to the paragraph's incorporation of prior allegations of the Complaint, Cubatabaco repeats and realleges its answer to such allegations as if they were fully set forth here.

105.     Paragraph 105 contains conclusions of law for which no answer is required, and, to the extent an answer is required, it is denied.

106.     Paragraph 106 contains conclusions of law for which no answer is required, and, to the extent an answer is required, it is denied.

## COUNT III (concerning the First Registration):

## DECLARATORY JUDGMENT THAT GENERAL CIGAR'S SECTION 8 AND 15 DECLARATIONS FOR THE FIRST REGISTRATION DID NOT CONSTITUTE FRAUD ON THE USPTO
### (15 U.S.C. §1064; 28 U.S.C. § 2201)

107.    With respect to the first sentence, Cubatabaco repeats and realleges its responses to the Complaint's paragraphs 9-13 and 36-53, above, as if set forth here.  The second sentence is admitted.

108.    Paragraph 108 contains legal conclusions for which no answer is required, and, to the extent an answer is required, it is denied.

109.    With respect to the first sentence, Defendant denies that the "gist of Cubatabaco's argument" is as to the "volume" of sales, and avers that its argument is as stated in its responses to paragraphs 40-41 and 44, which are repeated and realleged as if fully set forth here.  It is admitted that the Declaration swore as stated in paragraph 109 and it is averred that that this statement, and the accompanying statement that the mark was in use on the date of the Declaration, were false, including for the reasons alleged in Cubatabaco's responses to paragraphs 40-41 and 44, and were knowingly false.

With respect to the second sentence, it is denied that there were General Cigar "sales" prior to November 1982. The second sentence otherwise contains legal conclusions for which an answer is not required, and, to the extent an answer is required, it is denied.

110.    The first sentence is denied.

With respect to the second sentence, Defendant denies that "General Cigar's trademark manager" executed the Declaration, and avers that, rather, Henry D. Whitehall, Culbro Corporation's Senior Vice President, was the declarant, and that Mr. Whitehall did not testify in the Federal Action or the TTAB Proceedings. With respect to the second sentence's allegation

that the trademark manager "testified that he believed the sales met the continuous use requirement," it is: (a) denied that there were "sales" prior to November 1982, and (b) denied that the "trademark manager" testified that he believed "General Cigar's sales" of COHIBA-branded cigars or any other activity concerning COHIBA-branded cigars satisfied the continuous use requirement or, if his testimony is so construed, that it is credible, in that, without limitation, it is unsupported by any documentary evidence and would be contrary to the advice of trademark counsel, as recorded in a memorandum prepared by the "trademark manager" on February 18, 1982 and sent by him to Plaintiff's President and in-house counsel, noting that he had "confirmed" that "our token use of the COHIBA trademark since it was filed 1978 and issued in 1981 would not present a strong case for our objection [to a third-party's application to register COHIBA for cigar]; that "our token use leaves our registration open to cancellation" and that "we have … as yet no commercial use of [Cohiba] product."

With respect to the second sentence's allegation that "that belief, as alleged above, is supported by legal authority," it contains legal conclusions as to which an answer is not required, and, to the extent an answer is required, it is denied.

111. Paragraph 111 contains legal conclusions for which an answer is not required and, to the extent an answer is required, it is denied.

112. Paragraph 112 contains legal conclusions for which an answer is not required, and, to the extent an answer is required, it is denied.

113. Paragraph 113 contains legal conclusions for which an answer is not required, and, to the extent an answer is required, it is denied.

## COUNT IV (concerning the Second Registration):

## DECLARATORY JUDGMENT THAT GENERAL CIGAR DID NOT DELIBERATELY MISREPRESENT THE SOURCE OF ITS CIGARS AS ORIGINATING IN CUBA AND THAT THE SECOND REGISTRATION MAY NOT BE CANCELLED UNDER SECTION 14(e) OF THE LANHAM ACT
## (15 U.S.C. §1064(3); 28 U.S.C. § 2201)

114.    With respect to paragraph 114's first sentence, Cubatabaco repeats and realleges its answers to the allegations of Paragraphs 9-13 and 24-53 as if set forth here.

With respect to the second sentence, it is denied that it accurately or fully states the basis for Cubatabaco's claim for cancellation of Reg. No. 1,898,273 under Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), which claim includes, without limitation, in summary form that:

(a)    General Cigar selected COHIBA in 1992 for a new product because it was the name of the Cuban COHIBA cigar and in order to exploit and capitalize on the reputation and renown of the Cuban COHIBA; and it again adopted COHIBA in 1997 for a new product it positioned as a "super-premium" product for the same reasons; and, by adopting the name of the Cuban COHIBA, it exploited and capitalized on the reputation and renown of the Cuban COHIBA;

(b)    General Cigar's adoption of the same name for these products as the name of the Cuban COHIBA misrepresented the source of General Cigar's products and permitted its retailers, including its affiliated retailer, to misrepresent the source of General Cigar's products, and General Cigar adopted and used the name of the Cuban COHIBA so knowing and intending;

(c)    General Cigar has propagated a false common history with the Cuban COHIBA, and has permitted its retailers to do the same, including its affiliated retailer;

(d)     General Cigar has linked its own marketing to these retailers and their false histories of General Cigar's COHIBA;

(e)     by adopting the same name as the Cuban COHIBA, General Cigar has led consumers to falsely believe that its COHIBA is a "parallel brand," in the sense that it is made by a family or business that made the Cuban COHIBA in Cuba before leaving Cuba, or the successor to that family or business, which misperception General Cigar acknowledges and seeks to use to its benefit (*see* allegations of paragraph 32, above, and Cubatabaco's response thereto);

(f)     General Cigar has permitted its retailers, including its affiliated retailer, to lead consumers to believe that General Cigar's COHIBA is a "parallel brand" in the above sense;

(g)     General Cigar has linked, and has permitted its retailers, including its affiliated retailer, to link its COHIBA-branded cigar with the Cuban COHIBA in additional ways that misrepresent the source of the goods; and

(h)     General Cigar began use of, and has continued to use, the same name as the Cuban COHIBA knowing that there would be and has been a likelihood and inevitability of confusion, actual confusion, and a mistaken belief as to the source of its products.

115.    Paragraph 115 contains conclusions of law for which an answer is not required.

116.    The first sentence contains legal conclusions for which an answer is not required, and, to the extent it requires an answer, it is denied.  The second and third sentences are denied, except that its allegations as to "Cuban seed" are admitted.

117.    Defendant admits that the containers identify the country of origin, as is required by law; denies paragraph 117 to the extent it alleges or implies that General Cigar requires its retailers to identify or display the country of origin in their marketing or display of General Cigar's COHIBA-branded products; denies that General Cigar's retailers consistently do so;

denies that General Cigar has consistently identified or displayed the country of origin of its COHIBA-branded products in its marketing or display of those products, and admits that it sometimes has done so.

118. Paragraph 118 contains legal conclusions for which no answer is required, and, to the extent an answer is required, it is denied.

**COUNT V (concerning the Second Registration):**

**DECLARATORY JUDGMENT THAT THE SECOND REGISTRATION SHOULD NOT BE CANCELLED UNDER SECTION 2(d) OF THE LANHAM ACT.**
**(15 U.S.C. §1052(d); 28 U.S.C. § 2201)**

119. With respect to the first sentence, Cubatabaco repeats and realleges its responses to paragraphs 9-13 and 24-66 as if fully set forth here. The second sentence is admitted.

120. Paragraph 120 contains legal conclusions as to which an answer is not required, and, to the extent an answer is required, it is denied that paragraph 120 correctly states sections (2)(d) and 14 of the Lanham Act.

121. Paragraph 121 contains legal conclusions for which an answer is not required, and, to the extent an answer is required, it is denied.

The second sentence is denied, including without limitation: (a) denial that section 2(d) requires use in commerce, (b) denial that Cubatabaco did not use COHIBA in the United States other than "in commerce" in ways sufficient for section 2(d) to be applicable, including prior to the filing date of General Cigar's Second Registration; (c) denial that Cubatabaco never used the COHIBA mark in commerce within the meaning of the Lanham Act, including prior to said filing date.

Defendant denies the third sentence, including without limitation denial that Cubatabaco did not make "substantial 'analogous use" in the United States; avers that it did so prior to

November 20 and December 30, 1992; denies that it did not follow such analogous use with "actual use of the mark" (including "use in the United States" within the meaning of section 2(d) and use in commerce within the meaning of the Lanham Act); and, to the extent, if any, "actual use of the mark" following analogous use is required and not otherwise satisfied by Cubatabaco, it is averred that it is satisfied by Cubatabaco's intention to sell COHIBA-branded cigars in the United States when permitted by United States law and its being prohibited from doing so by the United States trade embargo of Cuba on the sale of Cuban-origin cigars in the United States.

The fourth sentence is denied, including without limitation denial that Cubatabaco cannot prove that General Cigar's use of the COHIBA mark was and is likely to confuse an appreciable number of consumers into believing that those cigars originated with Cubatabaco or in Cuba; that the relevant consumers are limited to "premium cigar consumers;" that likelihood of confusion under Section 2(d) is limited to belief that Plaintiff's cigars "originated with Cubatabaco or in Cuba;" and that Section 2(d) is limited to likelihood of confusion.

Each of the allegations of the fifth sentence are denied.

122. Paragraph 122 contains legal conclusions for which an answer is not required, and, to the extent an answer is required, it is denied.

### Defendant's First Additional Ground for Denial of Plaintiff's Demand for Reversal of the TTAB's Order of Cancellation and Other Relief (General Cigar's Fraud on the USPTO In its Application for the First Registration)

1. To the extent, if any, not encompassed within the above answers to the Complaint, Cubatabaco alleges as an additional ground for denial of Plaintiff's demand for reversal of the TTAB's order of cancellation and other relief, General Cigar's fraud on the USPTO in its application for the First Registration.

2       Cubatabaco reasserts and realleges its responses to paragraphs 40 and 41, above, as if fully set out here.

3.      In placing COHIBA in its "trademark maintenance program" on February 13, 1978, and maintaining COHIBA in this program until November 1982, Plaintiff did not engage in "use in commerce" of the COHIBA trademark within the meaning of the Lanham Act, and had no intention or plan to begin such use within a reasonable period of time or otherwise.

4.      In its application to register COHIBA, filed on March 13, 1978, Plaintiff stated that the mark was first used in commerce on February 13, 1978, and that it was used in commerce as of the date of the application. These statements were false, and known by Plaintiff to be false.

5.      In response to a Non-Final Office Action on Plaintiff's application, Plaintiff falsely responded that "to best of applicant's knowledge," the term "Cohiba" does not have "any meaning or significance in the relevant trade or industry," despite knowing that COHIBA was the name of a Cuban cigar, and thereby knowingly made a material misrepresentation of fact and material omission of fact, with the intent to obtain the applied for registration through false and fraudulent pretenses.

6.      The USPTO issued the First Registration on February 17, 1981 in reliance on Plaintiff's aforesaid statements.  Plaintiff obtained its First Registration fraudulently, on the basis of material misrepresentations of fact and omissions of fact.

7.      Cancellation of Plaintiff's First Registration is required pursuant to 15 U.S.C. § 1064.

**Defendant's Second Additional Ground for Denial of Plaintiff's Demand
for Reversal of the TTAB's Order of Cancellation and Other Relief
(Impermissible Purposes in Applying for the First Registration)**

1. To the extent, if any, not encompassed within the above answers to the Complaint, Cubatabaco alleges as an additional ground for denial of General Cigar's demand for reversal of the TTAB's order of cancellation and other relief that General Cigar applied for the First Registration fraudulently and for impermissible purposes.

2. Plaintiff applied to register COHIBA on March 13, 1978 for the purpose of blocking Cubatabaco from entering the United States market with its Cuban COHIBA when the embargo on Cuban-origin cigars ended and coercing Cubatabaco into granting it distribution rights for the Cuban COHIBA in the United States once the U.S. embargo on Cuban-origin cigars ended.

3. Plaintiff applied to register COHIBA on March 13, 1978 without any intention to market a COHIBA-branded cigar in the United States, and without any plan to do so, and only to warehouse the mark for any possible future utility.

4. Cancellation of the First Registration pursuant to Section 14 of the Lanham Act, 15 U.S.C. 15 U.S.C. § 1064, is required.

**Defendant's Third and Fourth Additional Grounds for Denial of Plaintiff's Demand
for Reversal of the TTAB's Order of Cancellation and Other Relief
(Article 6*bis*, Paris Convention and Well-Known Marks Doctrine)**

1. To the extent, if any, not encompassed within the above answers to the Complaint, Cubatabaco alleges as additional grounds for denial General Cigar's demand for reversal of the TTAB's order of cancellation and other relief, that Defendant is entitled to cancellation of the Second Registration on the basis of Article 6*bis* of the Paris Convention for

Protection of Industrial Property, 21 U.S.T. 1629 and also on the basis of the "well-known marks" doctrine.

2.      On and prior to November 20, 1992, when General Cigar first shipped COHIBA-branded cigars after more than five years of non-use, and on and prior to December 30, 1992, when General Cigar applied for the Second Registration, the Cuban COHIBA was well-known among the consumers of premium cigars in the United States; and the primary and only significance of COHIBA in the United States was to identify the source of the Cuban COHIBA.

3.      The COHIBA mark comprising the Second Registration is a mark that constitutes a reproduction or an imitation liable to create confusion with a mark that, by November 20 and December 30, 1992, was well known in the United States as being the mark of Cubatabaco, a person entitled to the benefits of the Paris Convention, and used for identical or similar goods.

4.      The COHIBA mark comprising the Second Registration so resembles the Cuban COHIBA mark when used on or in connection with the goods of General Cigar, to cause confusion, or to cause mistake, or to deceive.

5.      Cancellation of the Second Registration is required under Article 6*bis* of the Paris Convention and 15 U.S.C. § 1067, and under the "well-known marks" doctrine and 15 U.S.C. § 1067.

### Defendant's Fifth Additional Ground for Denial of Plaintiff's Demand for Reversal of the TTAB's Order of Cancellation and Other Relief (Prior Use in Commerce)

1.      To the extent, if any, not encompassed within the above answers to the Complaint, Cubatabaco alleges prior use in commerce as an additional ground for denial of General Cigar's demands for reversal of the TTAB's order of cancellation and other relief.

2.     Prior to General Cigar's placement of COHIBA in its "trademark maintenance program" on February 13, 1978, its filing of the application on March 13, 1978 to register COHIBA, its first use of COHIBA in commerce in November 1982, its new use of COHIBA in November 20, 1992 after non-use from at least 1987, and its filing of the application to register COHIBA on December 30, 1992, Cubatabaco used COHIBA for cigars in commerce in the United States (that is, in "commerce which may lawfully be regulated by Congress," 15 U.S.C. § 1127). Cubatabaco so used COHIBA in commerce, as averred in Cubatabaco's response to paragraph 66, above, which is repeated and realleged as if fully set out here.

3.     Prior to November 20, 1992 and December 30, 1992, Cubatabaco promoted its COHIBA-branded cigars to persons in the United States through the United States press, *Wine Spectator* and *Cigar Aficionado.*

4.     The COHIBA mark comprising the Registrations so resembles the COHIBA mark used by Cubatabaco as alleged above, and whose registration by the USPTO Cubatabaco has made application for, as to be likely, when used on or in connection with the goods of General Cigar, to cause confusion, or to cause mistake, or to deceive.

5.     Cancellation of the Registrations is required pursuant to 15 U.S.C. §§ 1052 and 1064.

### Cubatabaco's First Affirmative Defense to the Instant Action
### (Issue Preclusion)

1.     Cubatabaco's response to paragraph 3, above, is repeated and realleged as if fully set out here. As stated there, the Court of Appeals for the Federal Circuit, on appeal from the TTAB's dismissal of the Amended Petition for Cancellation, held that neither issue nor claim preclusion arising from the Federal Action applied to or barred the claims and grounds for

cancellation of the Registrations asserted by Cubatabaco in the TTAB. The Federal Circuit's Judgment and Mandate was that further proceedings be conducted consistent with its holding.

2.　As a result, Plaintiff is barred from asserting in this action issue or claim preclusion arising from the Federal Action, and the decision of the Court of Appeals for the Federal Circuit is binding here, under 15 U.S.C. 1071(a)(4) (decision of the Federal Circuit on appeal from TTAB decision "shall govern the further proceedings in the case") and, additionally or alternatively, the law of the case doctrine or principles of issue preclusion.

### Cubatabaco's Second Affirmative Defense to the Instant Action
### (Waiver)

1.　Plaintiff is foreclosed from asserting laches, acquiescence, waiver and estoppel, and foreclosed from asserting that the requirements of Article 8 of the IAC have not been satisfied, due to waiver before the TTAB.

2.　In its Answer to the Amended Petition for Cancellation, General Cigar pleaded "laches, acquiescence, waiver and estoppel" as its Ninth Affirmative Defense.  At the TTAB trial, Cubatabaco introduced evidence on General Cigar's Ninth Affirmative Defense. In its Opening Trial Brief in the TTAB, Cubatabaco argued that General Cigar had not properly plead its Ninth Affirmative Defense, in that its allegations were conclusory, and stated that "if [General Cigar] makes fact allegations and advances evidence in its Opposition, [Cubatabaco] will address" the Ninth Affirmative Defense in its Reply. In its Trial Brief, General Cigar did *not* argue laches, acquiescence, waiver or estoppel. The TTAB correctly held that General Cigar had thereby "waived" the affirmative defenses of laches, acquiescence, waiver and estoppel. Decision, at 5-6, 42. Plaintiff may not assert laches, acquiescence, waiver or estoppel in this Action.

3.  In its Answer in the TTAB proceedings, General Cigar denied Cubatabaco's allegations that the requirements of Article 8 of the IAC were satisfied with respect to both Registrations. Cubatabaco introduced evidence at the TTAB trial in support of its allegations and argued in its Trial Brief that the requirements of Article 8 had been established. In its Trial Brief, General Cigar did *not* contest that the requirements of Article 8 of the IAC had been established. The TTAB correctly held that "Respondent did not contest that Petitioner has satisfied the requirements for cancellation under Article 8 as to both of Respondent's subject registrations." Decision, at 35. Plaintiff may not deny and contest in this action that the requirements of Article 8 of the IAC are satisfied.

### Cubatabaco's Third Affirmative Defense
### (Estoppel)

1.  Plaintiff is estopped from asserting laches, acquiescence, waiver or estoppel due to its conduct, including as alleged hereafter. This conduct includes Plaintiff having adopted and used COHIBA in order to exploit and capitalize upon the reputation and renown of the Cuban COHIBA and for other impermissible reasons; having fraudulently obtained and maintained the First Registration; having used and permitting others to use its registered mark to misrepresent the source of the goods on or in connection with which mark is used; and adopting and using the COHIBA mark believing and knowing that it would be likely to cause confusion, or to cause mistake, or to deceive; and because such confusion, mistake and/or deception is inevitable, given that the same name is applied to the same goods.

2.  Additionally, laches, acquiescence, waiver and estoppel are not available as a matter of law against claims of abandonment, obtaining and maintaining a registration by fraud, and using a registered mark to misrepresent, or permit others to misrepresent, the source of goods.

3.      Plaintiff placed COHIBA in its "trademark maintenance program" on February 13, 1978, applied to register COHIBA on March 13, 1978, and began use of COHIBA in commerce in November 1982 knowing that the mark was used in Cuba for cigars, and it did so for that reason. Plaintiff believed, and reasonably expected, that the Cuban COHIBA would become widely known in the United States over time.

4.      Plaintiff placed COHIBA in its "trademark maintenance program" on February 13, 1978, applied to register the mark on March 13, 1978, and began its use in commerce in 1982, in order to obtain and maintain leverage to become Cubatabaco's distributor for Cuban COHIBA cigars in the United States when the U.S. embargo of Cuban-origin cigars ended.

5.      In its 1978 application to register COHIBA, Plaintiff falsely stated that the mark was first used in commerce on February 13, 1978, and that it was used in commerce as of the date of the application, and did so knowingly, as averred in Cubatabaco's First Additional Ground, above.

6.      From the time of its placing COHIBA in its "trademark maintenance program" in February 1978 until 1982, Plaintiff had no intention or plans to bring a COHIBA-branded cigar to market within a reasonable period of time or otherwise.

7.      To the extent, if any, that it had any such intention, Plaintiff intended to market the COHIBA-branded cigar as a "parallel brand" in the sense alleged in Cubatabaco's answer to paragraph 32, and with the hope and expectation that consumers would incorrectly so regard it, because it bore the same name as a Cuban cigar.

8.      Plaintiff adopted the same name as the Cuban COHIBA in 1978, and again in 1992, even though Plaintiff knew that there was no factual, historical or other basis for attaching the goodwill of the Cuban COHIBA or Cuban cigars to Plaintiff's product.

9.      Plaintiff adopted the same name as the Cuban COHIBA in 1978, and again in 1992, knowing and believing that, and with the hope and expectation that, because the same name was applied to the same goods, there would be confusion among an appreciable number of United States consumers who knew or would come to know of the Cuban COHIBA.

10.     As alleged in Cubatabaco's response to paragraphs 107-113, Plaintiff falsely declared five years of continuous use in commerce and use in commerce on the date of the Declaration in its Section 8 and 15 Declaration, filed on June 23, 1986, and did so knowingly.

11.     Cubatabaco pursued a program of registering COHIBA in countries outside of Cuba.  After applying for the registration of COHIBA in numerous countries in Europe and elsewhere where it could sell COHIBA, it took steps to register COHIBA in the United States in 1983. In August 1984, it learned from its then United States counsel that General Cigar had applied for and obtained registration of COHIBA. In 1987, Cubatabaco learned from its then United States counsel of Plaintiff's Section 8 and 15 Declaration, and of the USPTO's acceptance of same. Having no reason to doubt the truthfulness of General Cigar's 1978 application and its 1986 Declaration, Cubatabaco did not take any action with respect to COHIBA in the United States until 1994.

12.     In 1994, as alleged in its response to paragraph 64, Cubatabaco received a note from its Canadian distributor that General Cigar was selling a COHIBA-branded product for "trademark registration purposes" and not as a "regular item." Cubatabaco thereupon began consultations with United States counsel. Counsel determined that General Cigar's second application had been published for opposition but that the deadline for opposition had passed. After investigations and consultations, Cubatabaco filed a petition on January 15, 1997 to cancel

General Cigar's Second Registration, which had been issued on June 6, 1995, and its First Registration.

13. Immediately following publication of *Cigar Aficionado*'s premier issue on September 1, 1992, Plaintiff decided that it would introduce a cigar with the COHIBA name to exploit and capitalize on the renown and reputation of the Cuban COHIBA generated by *Cigar Aficionado*.

14. General Cigar sold the cigar it introduced for this purpose and marketed from November 20, 1992 to September 1997 as unbanded cigars in a wood box bearing the name COHIBA in exactly the same font as the Cuban COHIBA and replicating exactly the design of Cuban COHIBA box (except for an Indian Head). General Cigar helped write and approved the promotion of this COHIBA-branded product in the catalog of its principal retailer, Dunhill, which falsely promoted the General Cigar COHIBA-branded cigar as "the celebrated range of Cuban origin" and the "rightful heir to the Cuban legend."

15. In 1992 and thereafter, General Cigar recognized that there would be, and that there was, a likelihood of confusion, and actual confusion, of its COHIBA-branded cigars with the Cuban COHIBA. Plaintiff nonetheless adopted COHIBA for its products and continued to sell them under the COHIBA mark, and took no corrective action.

16. Between November 1992 and September 1997, the renown and reputation of the Cuban COHIBA in the United States grew even greater, including through constant attention and praise by *Cigar Aficionado* and other cigar publications, and constant, widespread attention and praise in general circulation newspapers and magazines, with over 500 articles in U.S. newspapers and magazines. General Cigar expressly recognized the "mystique of [the] Cuban name," and the "near 'cult' status of the Cuban Cohiba."

47

17.     In September 1997, General Cigar launched a new, super-premium product under the COHIBA name to further exploit and capitalize upon the renown and reputation of the Cuban COHIBA.

18.     From the launch of this new COHIBA-branded product, and continuously thereafter, Plaintiff's retailers, including all of its major retailers and its own affiliated retailer, have promoted the General Cigar product in ways that increase the likelihood of confusion and further misrepresent the source of the product, including by misrepresenting it as a "parallel brand" and /or as otherwise associating it with Cuba or the Cuban COHIBA.

19.     Plaintiff knew that this retailer practice was inevitable because of its use of the same name as the Cuban COHIBA, knew that this retailer practice would be and has been pervasive, has permitted the practice to be adopted and continued, and has adopted and amplified the effect of their practices by providing links to retailers that engage in these practices in its own on-line promotion of COHIBA.

20.     In addition to adopting and permitting this retailer practice, Plaintiff has itself misrepresented in its promotion that its product has a common history with the Cuban COHIBA, and that its product and the Cuban COHIBA are "parallel brands."

21.     It has been, and remains, the case that confusion between Plaintiff's product and the Cuban COHIBA is inevitable. General Cigar has recognized and understood this has been the case.

22.     In the encounters with Cubatabaco alleged by General Cigar to give rise to a defense of laches, acquiescence, waiver or estoppel, at the time of the *Cigar Aficionado* interview relied upon by General Cigar for these defenses, and during the periods in which Cubatabaco did not take action against it, General Cigar never informed Cubatabaco of any of

the periods of General Cigar's non-use of COHIBA, disclosure of which would reasonably have led Cubatabaco to question whether General Cigar's Registrations were subject to cancellation. General Cigar purposefully did not make these disclosures in order to avoid Cubatabaco or others questioning its claimed right to COHIBA and considering cancellation or other proceedings. The information that General Cigar did not disclose was not otherwise known by Cubatabaco until 1994 or thereafter.

## PRAYER FOR RELIEF

With respect to the Complaint's "Prayer for Relief," it contains legal conclusions as to which no response is required, and, to the extent a response is required, it is denied that Plaintiff is entitled to or should be granted any of the demanded relief.

### Plaintiff's Demand for Jury Trial

With respect to Plaintiff's demand for jury trial ("Jury Trial Demanded"), it contains the legal assertion or conclusion that Plaintiff is entitled to a jury trial of this action and, as such, does not require an answer. To the extent an answer is required, it is denied that Plaintiff is entitled to a jury trial, including, without limitation, because a jury trial is precluded by 28 U.S.C. § 1330, and, additionally, because this action is brought pursuant to 15 U.S.C. § 1071, and because of the nature of this action and the relief that is demanded. Cubatabaco objects to trial by jury.

Dated: May 1, 2023                    Respectfully submitted,

*/s/ John Marston*
John Marston (VA Bar No. 95106 )
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006
Tel: 202-232-1200
Fax. 202-785-6687
jmarston@foleyhoag.com

Natasha N. Reed (Admitted *Pro Hac Vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: 212-812-0400
Fax: 212-812-0399
nreed@foleyhoag.com

Nicole Kinsley (Admitted *Pro Hac Vice*)
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: 617-832-1000
Fax: 617-832-7000
nkinsley@foleyhoag.com

Michael Krinsky (Admitted *Pro Hac Vice*)
Lindsey Frank (Admitted *Pro Hac Vice*)
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.
320 West 85th Street
New York, NY 10024
Tel: 212-254-1111
Fax: 212-674-4614
mkrinsky@rbskl.com
lfrank@rbskl.com

*Attorneys for Empressa Cubana del Tabaco,*
*D.B.A. Cubatabaco*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May, 2023, a true and accurate copy of the

foregoing was electronically filed with the Clerk of the Court for the Eastern District of Virginia,

using the CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: May 1, 2023

/s/ John Marston
John Marston (VA Bar No. 95106 )
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006
Tel: 202-232-1200
Fax. 202-785-6687
jmarston@foleyhoag.com

*Attorney for Empressa Cubana del Tabaco,*
*D.B.A. Cubatabaco*