**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

GENERAL CIGAR COMPANY, INC.,

               Plaintiff,

v.

EMPRESA CUBANA DEL TABACO, D.B.A.
CUBATABACO.

               Defendant.

CASE NO: 23-cv-00227-LMB-WEF

**GENERAL CIGAR COMPANY, INC.'S OPPOSITION TO**
**DEFENDANT EMPRESA CUBANA DEL TABACO D.B.A.**
**CUBATABACO'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

RELEVANT PROCEDURAL HISTORY ............................................................... 2

FACTS TAKEN AS TRUE FOR PURPOSES OF THIS MOTION ...................... 5

ARGUMENT ............................................................................................................. 7

   I.    STANDARD OF REVIEW FOR A MOTION UNDER FED. R. CIV. P. 12(c) ......... 7

   II.   CT IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS DISMISSING COUNT I OF THE COMPLAINT BECAUSE THERE ARE NUMEROUS DISPUTED ISSUES OF FACT ON WHETHER CT CAN SATISFY THE ELEMENTS OF AN ARTICLE 8 CLAIM .................................................................... 8

   III.  GC IS NOT FORECLOSED FROM RAISING THE CACR AS A BAR TO CT'S CLAIMS FOR CANCELLATION ............................................................... 10

   IV.  THE FEDERAL ACTION JUDGMENT PRECLUDES CT FROM REASSERTING AN ARTICLE 8 CLAIM FOR CANCELLATION UNDER ARTICLE 8 OF THE IAC ............................................................................... 12

     A.  The Federal Circuit Decision Does Not Foreclose This Court From Deciding that the Federal Action Judgment is Preclusive. ................................................. 12

       1. The "Shall Govern" Language of 15 U.S.C. § 1071(a)(4) Does Not Apply in a de novo Action Filed Under 15 U.S.C. § 1071(b)(1). ............................................... 13

       2. Snyder's-Lance Is Not Binding Authority on the Question of Whether the Federal Circuit Decision is Preclusive. ................................................................. 16

     B.  The Federal Circuit Decision is not Preclusive Under Ordinary Law of the Case Principles ............................................................................................................ 18

       1.   This de novo Action is Not the "Same Case" as the Cancellation Proceeding .......... 18

       2.   The Federal Circuit's Failure to Remand the Preclusion Issue to the TTAB for Decision Violated the "Remand Rule" and was Therefore Clearly Erroneous .......... 19

       3.   The Federal Circuit Decision is Undermined by the Supreme Court's Later Preclusion Ruling in *B&B* Hardware and is thus not Law of the Case. ....................................... 22

     C.  Claim Preclusion Also Bars CT's Reassertion of an Article 8 Claim ...................... 25

CONCLUSION ......................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
    525 F.3d 8 (D.C. Cir. 2008) ..................................................................................10

*Apple, Inc. v. Cao*,
    Civ. A. No. 1:21-cv-1003, 2022 WL 18781189 (E.D. Va. Jan. 14, 2022) .......................10, 18

*Austin v. Jackson*,
    353 F.2d 910 (4th Cir. 1965) ..................................................................................20

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015) ............................................................................... *passim*

*Belezos v. Board of Selectmen of Hingham, Mass.*,
    Civ. A. No. 17-12570-MBB, 2019 WL 6340990 (D. Mass. Nov. 27, 2019) .........................21

*Belmora LLC v. Bayer Consumer Care AG*,
    987 F.3d 284 (4th Cir. 2021) ..................................................................................19

*British-American Tobacco, Co., Ltd. v. Philip Morris Co.*,
    55 U.S.P.Q.2d 1585 (T.T.A.B. 2000) ..............................................................24, 25

*Burbach Broad. Co. v. Elkins Radio Corp.*,
    278 F.3d 401 (4th Cir. 2002) ....................................................................................7

*CAE, Inc. v. Clean Air Eng'g, Inc.*,
    267 F.3d 660 (7th Cir. 2001) ..................................................................................10

*Calcutt v. FDIC*,
    143 S. Ct. 1317 (2023) ..........................................................................................20

*Carolina Clipper, Inc. v. Axe*,
    902 F. Supp. 680 (E.D. Va. 1995) ..........................................................................16

*Durox Co. v. Duron Paint Mfg. Co.*,
    320 F.2d 882 (4th Cir. 1963) ..................................................................................28

*Empresa Cubana del Tabaco v. Culbro Corp.*,
    97 Civ. 8399 ....................................................................................... *passim*

*Empresa Cubana del Tabaco v. General Cigar, Co., Inc.*,
    213 F. Supp. 2d 247 (S.D.N.Y. 2002) ................................................................3, 25, 27

*Empresa II*:
    No. 97 Civ. 8399, 2002 WL 31251005 (S.D.N.Y. Oct. 8, 2002) ..............................................3

*Empresa III*:
    No. 97 Civ. 8399, 70 U.S.P.Q.2d 1650, 2004 WL 602295 (S.D.N.Y. Mar. 26, 2004) ........................................................................................................................3, 19

*Empresa IV*:
    No. 97 Civ. 8399, 2004 WL 925647 (S.D.N.Y. Apr. 30, 2004) ..............................................3

*Empresa V*:
    399 F.3d 462 (2d Cir. 2005) ........................................................................... *passim*

*Empresa VI*:
    547 U.S. 1205 (2006) ............................................................................................................3

*Empresa VII*:
    Cancellation No. 9202585, 2013 WL 3168090 (T.T.A.B. Mar. 14. 2013) ....................3, 4, 19

*Empresa VIII*:
    753 F.3d 1270 (Fed. Cir. 2014) ...................................................................... *passim*

*Empresa IX*:
    Cancellation No. 9202585, 2022 WL 17844056 (T.T.A.B. Dec. 20, 2022) .................... *passim*

*Farina v. Nokia, Inc.*,
    625 F.3d 97 (3d Cir. 2010) ..................................................................................................18

*Gillette Co. v. "42" Products, Ltd.*,
    435 F.2d 1114 (9th Cir. 1970) .............................................................................................17

*Gonzalez v. Thomas*,
    547 U.S. 183 (2006) ............................................................................................................20

*Great Am. Ins. Co. v. GRM Mgmt.*,
    LLC, No. 3:14-cv-295, 2014 WL 6673902 (E.D. Va. Nov. 24, 2014) .....................................8

*Hagans v. Lavine*,
    415 U.S. 528 (1974) ............................................................................................................28

*Havana Club Holding, S.A. v. Galleon, S.A.*,
    203 F.3d 116 (2d Cir. 2000) ................................................................................24, 25, 30

*Hoover Co. v. Coe*,
    325 U.S. 79, 65 S. Ct. 955, 89 L.Ed. 1488 (1945) .....................................................14, 15, 16

*I.N.S. v. Orlando Ventura*,
    537 U.S. 12 (2002) ..............................................................................................................20

*Los Angeles County v. Humphries*,
562 U.S. 29 (2010) ..................................................................................22

*Negron-Almeda v. Santiago*,
579 F.3d 45 (1st Cir. 2009) ......................................................................21

*O'Ryan v. Dehler Mfg. Co.*,
99 F. Supp. 2d 714 (E.D. Va. 2000) ..........................................................7

*Orca Yachts, L.L.C. v. Mollicam, Inc.*,
287 F.3d 316 (4th Cir. 2002) ...................................................................27

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021) ...................................................................16

*Pittston Co. v. U.S.*,
199 F.3d 694 (4th Cir. 1999) ...................................................................17

*Pueschel v. U.S.*,
369 F.3d 345 (4th Cir. 2004) ...................................................................27

*Russello v. U.S.*,
464 U.S. 16 (1983) ...................................................................................13

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) ...................................................................................20

*Shakespeare Co. v. Silstar Corp. of Am., Inc.*,
9 F.3d 1091 (4th Cir. 1993) .....................................................................28

*Shoup v. Bell & Howell Co.*,
872 F.2d 1178 (4th Cir. 1989) .................................................................26

*Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp.*,
257 F.2d 485 (3d Cir. 1958) ....................................................................28

*Smith v. Berryhill*,
139 S. Ct. 1765 (2019) .............................................................................20

*Snyder's-Lance, Inc. v. Frito-Lay North America, Inc.*,
991 F.3d 512 (4th Cir. 2021) ........................................................14, 16, 17

*Stallard v. U.S. Patent and Trademark Off.*,
No. 1:22-cv-1236, 2023 WL 2298749 (E.D. Va. Mar. 8, 2023).........14, 15

*Sulik v. Taney County, Mo.*,
393 F.3d 765 (8th Cir. 2005) ...................................................................21

iv

*Swatch AG v. Beehive Wholesale AG*,
   739 F.3d 150 (4th Cir. 2014) ......................................................................18

*U.S. v. Aramony*,
   166 F.3d 655 (4th Cir. 1999) ..................................................................19, 21

*U.S. v. Cannady*,
   63 F.4th 259 (4th Cir. 2023) ......................................................................22

*U.S. v. Holloway*,
   630 F.3d 252 (1st Cir. 2010) ......................................................................22

*United States v. Castillo*,
   No. 8:19-cv-3459, 2021 WL 825974 (D. Md. Mar. 4, 2021) ......................7

*In re Varat Enters., Inc.*,
   81 F.3d 1310 (4th Cir. 1996) ......................................................................26

**Statutes**

15 U.S.C. § 1067(a) ............................................................................21, 23, 28

15 U.S.C. § 1071(a)(4).........................................................................13, 15, 16

15 U.S.C. § 1071(b)(1) .................................................................... *passim*

15 U.S.C. § 1071(b)(3) ........................................................................14, 18

15 U.S.C. § 1119.........................................................................21, 23, 28, 29

LIBERTAD Act, 22 U.S.C. §§ 6021 *et seq.* .................................................5, 6

46 Stat. 2907 ......................................................................................................1

**Other Authorities**

31 C.F.R. § 515.201(b) ....................................................................................11

31 C.F.R. § 515.527(a)(1)...........................................................................10, 11

Fed. R. App. 11(b)..........................................................................................14

Fed. R. Civ. P. 12(c) .............................................................................. *passim*

Fed. R. Civ. P. 41(b) ......................................................................................27

18B Federal Practice and Procedure (Wright & Miller) (3d ed.) § 4478 ...........................18

# INTRODUCTION

Plaintiff General Cigar Company, Inc. ("GC") respectfully opposes the Motion for Judgment on the Pleadings of Defendant Empresa Cubana del Tabaco, d.b.a. Cubatabaco ("CT"). The Motion is directed at Count I of the First Amended Complaint ("FAC") (Dkt. No. 27), which seeks review of the December 20, 2022 decision of the Trademark Trial and Appeal Board ("TTAB" or the "Board") and vacatur of the cancellation order issued by the Board. The TTAB ruled that: (1) CT stated a claim for cancellation of two U.S. trademark registrations owed by GC for the mark COHIBA for cigars (the "Registrations"), based on Article 8 of the General Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907 ("IAC"); (2) CT had proven the elements of a claim under Article 8; and (3) a final judgment of the U.S. District Court for the Southern District of New York ("Southern District"), which dismissed CT's claim for cancellation of GC's marks under Article 8 of the IAC, did not preclude CT from asserting an Article 8 claim before the Board. The TTAB viewed itself as bound by the Federal Circuit's earlier decision that concluded that the federal judgment did not preclude CT's new Article 8 claim.

The Court should deny the Motion entirely for one or both of two independent reasons.

First, there are disputed questions of material fact on whether CT has satisfied the elements of an Article 8 claim, and these factual disputes cannot be resolved on a motion for judgment on the pleadings. For example, the pleadings raise material factual disputes about whether CT can show that (1) it enjoyed legal protection for the COHIBA mark in Cuba before GC filed to register the mark in the US; (2) it "used" or "employed" the mark within the meaning of Article 8; and (3) GC knew about the purported "use" or "employment" before applying to register and before using the COHIBA mark in the U.S. Contrary to CT's meritless waiver argument, all of these issues are ripe for litigation in this *de novo* action under 15 U.S.C. § 1071(b)(1).

Second, the Southern District's final judgment did in fact preclude CT from relitigating its Article 8 claim. The Federal Circuit decision rejecting preclusion is not law of the case in this *de novo* action. Accepted principles of statutory interpretation applied to the Lanham Act and persuasive Supreme Court precedent indicate that Congress did not intend interim Federal Circuit decisions to have binding effect in a *de novo* action for review of a TTAB decision. Ordinary law of the case principles also lead to this conclusion: this *de novo* action is not the same case as the cancellation proceeding in the TTAB; the Federal Circuit clearly erred in deciding the preclusion issue instead of remanding it to the TTAB for initial consideration; and the reasoning underlying the Federal Circuit decision has been completely undermined by a later Supreme Court decision which makes such final federal judgments preclusive in later TTAB proceedings. Claim preclusion principles lead to the same conclusion: CT was not permitted to relitigate any new claim based on the factual nucleus of its federal Article 8 claim.

## RELEVANT PROCEDURAL HISTORY

The following procedural history is limited to those events in the controversy that have a direct bearing on the issues of CT's Motion.

On January 15, 1997, CT filed an application to register the COHIBA word mark in the U.S., and simultaneously commenced a cancellation proceeding (the "Proceeding") in the TTAB to cancel GC's Registrations, (FAC ¶¶ 78-79; A00001 at 9-12), in which CT asserted claims for cancellation under, *inter alia*, Article 8 of the IAC. (*Id.* at 10-11.) After GC moved to dismiss the Proceeding, CT changed forums, filing a complaint in the Southern District which included a claim based on Articles 7 and 8 of the IAC. *Empresa Cubana del Tabaco v. Culbro Corp.*, 97 Civ. 8399 (the "Federal Action"); (FAC ¶ 80). CT also filed a motion with the TTAB to suspend the Proceeding, representing that "[t]he determination of this pending action will <u>be dispositive of all</u>

of the issues raised in the instant Cancellation Proceeding, including the issue of entitlement to registration." (FAC ¶¶ 80-81) (emphasis added.) The TTAB granted CT's motion to suspend. (*Id.* ¶ 81.)

In 2002, CT moved in the Federal Action for partial summary judgment on its claim under Articles 7 and 8 of the IAC. (FAC ¶ 82.) The district court granted partial summary judgment to GC, holding that U.S. law did not recognize claims for cancellation of trademark registrations under Article 8 of the IAC. *Empresa Cubana del Tabaco v. General Cigar, Co., Inc.* ("*Empresa I*"), 213 F. Supp. 2d 247, 279-83 (S.D.N.Y. 2002)[1]. The district court dismissed the Article 8 claim with prejudice in its final judgment (the "Federal Action Judgment"). (*Empresa IV*, 2004 WL 925647, at *3.) CT cross-appealed from this portion of the Federal Action Judgment, but on February 24, 2005, the Second Circuit affirmed it, holding that "the District Court properly dismissed" the IAC claims. *Empresa V*, 399 F.3d at 479-83. The U.S. Supreme Court denied CT's petition for a writ of certiorari seeking review of, *inter alia*, the dismissal of the IAC claims. *Empresa VI*, 547 U.S. at 1205.

---

[1] To assist the Court in distinguishing among the various *Empresa Cubana* decisions, this brief and GC's subsequent filings will use the following short references:
*Empresa I*: 213 F. Supp. 2d 247 (S.D.N.Y. 2002) (dismissal of Article 8 claim).
*Empresa II*: No. 97 Civ. 8399, 2002 WL 31251005 (S.D.N.Y. Oct. 8, 2002). (denying CT motion for reconsideration of dismissal).
*Empresa III*: No. 97 Civ. 8399, 70 U.S.P.Q.2d 1650, 2004 WL 602295 (S.D.N.Y. Mar. 26, 2004). (post-trial findings of fact and conclusions of law).
*Empresa IV*: No. 97 Civ. 8399, 2004 WL 925647 (S.D.N.Y. Apr. 30, 2004) (final judgment).
*Empresa V*: 399 F.3d 462 (2d Cir. 2005) (affirming dismissal of Article 8 claim and reversing other relief granted to CT by district court).
*Empresa VI*: 547 U.S. 1205 (2006) (denying CT petition for cert.).
*Empresa VII*: Cancellation No. 9202585, 2013 WL 3168090 (non-precedential) (T.T.A.B. Mar. 14. 2013) (granting summary judgment dismissing CT Amended Petition on standing grounds)
*Empresa VIII*: 753 F.3d 1270 (Fed. Cir. 2014) (the "Federal Circuit Decision") (reversing TTAB, reinstating Amended Petition, ruling on preclusion).
*Empresa IX*: Cancellation No. 9202585, 2022 WL 17844056 (precedential), at *1 (T.T.A.B. Dec. 20, 2022) ("TTAB Decision") (sustaining CT Article 8 claim and cancelling Registrations).

In 2011, the Proceeding resumed, and CT filed an Amended Petition for cancellation, including a claim under Article 8 of the IAC. (FAC ¶¶ 92-93.) GC then moved for summary judgment of dismissal on the basis that the Second Circuit ruling and Federal Action Judgment deprived CT of standing. In the alternative, GC argued that the IAC claims were barred by issue and claim preclusion. (*Id*. ¶ 94.) The TTAB granted GC's motion solely on the basis of lack of standing and did not reach the preclusion issue. *Empresa VII*, 2013 WL 3168090, at *7.

CT appealed the TTAB decision to the Federal Circuit, which issued a decision holding that the TTAB's ruling on standing was error and reinstated CT's Amended Petition. *Empresa VIII*, 753 F.3d at 1274-76. But, instead of remanding the preclusion issue for decision by the TTAB, that court reached the issue not considered by the TTAB and stated in dicta that the Federal Action Judgment did not preclude CT from asserting an Article 8 IAC claim in the Proceeding. (FAC ¶ 95.) The Federal Circuit concluded that unlike the federal court, the TTAB could cancel registrations "directly" under Article 8, without the need for implementation of Article 8 through the Lanham Act. *Empresa VIII*, 753 F.3d at 1278.

After remand, CT submitted its trial brief asking for cancellation of the Registrations, and it raised Article 8 as one of six cancellation grounds. (FAC ¶ 96.) GC asked the Board to dismiss the Article 8 claim as precluded by the Federal Action Judgment. *Id*. On December 20, 2022, the TTAB issued *Empresa IX* and ordered cancellation of the Registrations. It ruled on only one of CT's grounds: Article 8. It found that CT had established the elements of such a claim and that the TTAB had the power under Article 8 to cancel the Registrations. The TTAB rejected CT's preclusion arguments, stating that the mandate rule required it to follow the Federal Circuit's statements rejecting preclusion in *Empresa VIII*.

GC filed this *de novo* action under 15 U.S.C. § 1071(b)(1), seeking review and reversal of the TTAB and additional declaratory relief needed to clear all CT objections to GC's Registrations. (Dkt. No. 1.) CT filed an answer and "Additional Grounds for Denial," which included five grounds asserted in its Amended Petition before the TTAB, but it chose not to assert before the Board. (Dkt. No. 18 at 38-42.) GC subsequently filed a First Amended Complaint, which is the operative pleading for purposes of the Motion. (Dkt. No. 27.) CT filed an answer to the FAC (Dkt. No. 33).

## FACTS TAKEN AS TRUE FOR PURPOSES OF THIS MOTION

The following facts, alleged in the FAC, must be taken as true for purposes of the Motion.

GC is a U.S. cigar manufacturer and owner of two U.S. trademark registrations for the mark COHIBA for cigars: U.S. Reg. Nos. 1,147,309 for COHIBA (word mark) and 1,898,273 for COHIBA (stylized) (the "Registrations"). (FAC ¶ 20.) The first of the two Registrations is incontestable and states that GC's first use in commerce of the COHIBA mark is February 13, 1978. (*Id.* ¶ 44.) GC first used the COHIBA mark in commerce on February 13, 1978 and first applied to register the mark with the United States Patent and Trademark Office ("USPTO") on March 13, 1978. (*Id.*)

Defendant CT is the Cuban government's tobacco monopoly. (FAC ¶ 23.) CT has sold "Cohiba"-branded cigars, made with Cuban tobacco, in countries outside of the U.S. (*Id.* ¶¶ 35-36.) CT is legally barred from selling or advertising any Cuban-origin cigar in the U.S., including its "Cohiba"-branded cigar, under the Cuban Asset Control Regulations ("CACR") and the LIBERTAD Act, 22 U.S.C. §§ 6021 *et seq.* (*Id.* ¶¶ 28-30.)

On or about September 29, 1969, CT applied to the Cuban Oficina Cubana de la Propriedad Industrial ("OCPI") (the Cuban equivalent of the USPTO) to register a stylized design mark of an

Indian head dress made of tobacco leaves, which the letters "COHIBA" appeared in small and indistinct print at the bottom of the design. (FAC ¶ 59) (reproducing the mark)). The application identified the goods to be designated by this mark as (in translation) "raw tobacco, tobacco processed for smoking, chewing or sniffing, and cigarettes." Cigars were not included in the goods list. (FAC ¶ 64.) The OCPI issued a Cuban registration for this design mark on May 31, 1972 (the "Cuban Design Registration"). (FAC ¶ 60.)

In Cuba, rights in trademarks are acquired only through registration, not through use prior to registration. (*Id*. ¶ 9.) The Cuban Design Registration did not create legal protection in Cuba for the word mark COHIBA, used separately from the design. (*Id*. ¶ 64.) GC expects to present testimony of a Cuban law expert to support this fact. Further, there is evidence in the Federal Action record which GC will present at summary judgment, and which will show that CT stopped using the Cuban Design Mark well before 1978 and that GC cannot have knowledge of a mark CT had stopped using when GC began using the COHIBA word mark on February 13, 1978 and applied for registration of the COHIBA word mark on March 13, 1978. CT did not obtain legal protection for the COHIBA word mark until the OCPI issued a registration for that mark on or about June 30, 1980. (*Id.* ¶ 64.)

CT did not engage in "use" or "employment" of the COHIBA word mark in Cuban commerce prior to March 13, 1978, within the meaning of those terms as used in the IAC. (*Id*. ¶¶ 61-62.) CT claims that Cuba's leader, Fidel Castro, and other Cuban government officials made gifts of "Cohiba cigars" to diplomatic visitors. (FAC ¶ 63.) Similarly, CT claims that such cigars were sold to non-Cubans in Cuba in stores that only accepted payment in dollars. (*Id*.) However, CT has produced no documentary evidence showing that these cigars bore any COHIBA mark,

and such gifts and sales outside the ordinary course of Cuban commerce, even if they did occur, do not qualify as "use" or "employment" of the mark under the IAC.

The only admissible evidence produced by CT to show that GC had "knowledge" of "use" or "employment" of the COHIBA mark in Cuba before GC's U.S. application date was that (1) a GC executive had heard second-hand of a diplomatic gift of a cigar called "Cohiba" to a State Department official, and (2) the chairman of GC had read a November 1977 Forbes Magazine article discussing the possibility that CT might begin exporting cigars to the U.S. in the future.[2] The Forbes article states only that CT is "developing" brands for export, one of which is "Fidel's favorite brand, Cohiba…." (FAC ¶ 63; A22518-22.) These facts do not establish that GC had "knowledge" that the COHIBA word mark was being "used" or "employed" in Cuba, within the meaning of the IAC, prior to March 13, 1978. (FAC ¶ 43.)

## ARGUMENT

### I.  STANDARD OF REVIEW FOR A MOTION UNDER FED. R. CIV. P. 12(c).

CT's Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 405–06 (4th Cir. 2002). Thus, "judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief[.]" *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

Conversely, a Rule 12(c) motion "should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief." *United States v. Castillo*, No. 8:19-cv-3459, 2021 WL 825974, at *3 (D. Md. Mar. 4, 2021)

---

[2] Undated handwritten notes by an unknown author found in GC's files, which are referenced in the TTAB Decision, *Empresa IX* at *14, should be excluded from admission at trial in this action.

(citation omitted); *Great Am. Ins. Co. v. GRM Mgmt.*, LLC, No. 3:14-cv-295, 2014 WL 6673902, at *2 (E.D. Va. Nov. 24, 2014). As shown below, CT's Motion fails to meet this exacting standard.

## II.    CT IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS DISMISSING COUNT I OF THE COMPLAINT BECAUSE THERE ARE NUMEROUS DISPUTED ISSUES OF FACT ON WHETHER CT CAN SATISFY THE ELEMENTS OF AN ARTICLE 8 CLAIM.

The first independent reason why GC has stated a valid claim for relief in Count I of the Amended Complaint is that CT cannot meet its burden of proving the elements of Article 8 on the merits. Contrary to CT's waiver contention, this issue is properly subject to litigation in this *de novo* § 1071(b)(1) action regardless of what arguments were presented to the TTAB.

Count I of the FAC alleges, *inter alia*, that CT lacks the evidence required to prove the elements of a claim for cancellation of the Registrations under Article 8 of the IAC. (FAC ¶¶ 114-116.) CT's attempt to argue the merits of its Article 8 claim, as it was pleaded at the TTAB, is inappropriate on a Rule 12(c) motion, where the complaint's factual allegations are accepted as true. Even if the Federal Circuit Decision were found to bar GC's preclusion arguments (as discussed later in this brief, it does not), there are numerous disputed factual issues on the merits of the Article 8 claim which preclude entry of judgment on the pleadings against that claim.

The first issue is whether the COHIBA word mark had legal protection in Cuba as of March 13, 1978, the date of GC's U.S. registration application. This will require fact finding and consideration of the testimony of Cuban trademark law experts on, among other things, (a) whether the 1972 Cuban Design Registration, on which the TTAB relied in its decision, see *Empresa IX*, 2022 WL 17844056, at *13, extended legal protection in Cuba to the very different COHIBA word mark which is the subject of CT's Article 8 claim, (b) whether the mark shown in the Cuban Design Registration was actually used on cigars sold by CT in Cuba (there was testimony in the Federal Action that it was not), and (c) whether Cubatabaco ceased using and thus lacked legal protection

that may have flowed from the registration. This raises both questions of fact (there was testimony from multiple witnesses in the Federal Action that Cubatabaco ceased using the mark shown in the 1972 registration well before 1978) and law (whether such disuse constitutes abandonment under Cuban law) that cannot be resolved on a Rule 12(c) motion.

The second issue is whether CT made "use" or "employment" of the COHIBA word mark in Cuba before GC began to use that mark in commerce (an issue on which GC has sought discovery in this Action given the lack of documentary evidence produced by CT in any prior proceeding). As noted in the factual discussion, *supra*, there are unresolved questions of fact and law as to whether the use of COHIBA outside of the ordinary course of trade in Cuba (such as for diplomatic gifts by Castro and other Cuban officials) constitute "use" or "employment" of a <u>mark</u> as those terms are used in the IAC.

The third issue is whether GC had "knowledge" of CT's "use" or "employment" of the COHIBA word mark before March 13, 1978. The Court will have to determine *de novo* whether (a) the purported evidence provided by CT on this issue is even admissible, *see supra* at 6-7 & n.2, and (b) whether a hearsay report about a Cuban COHIBA cigar being given as a diplomatic gift, and reading an article discussing COHIBA as a brand that CT was considering exporting, satisfies the "knowledge" requirement of the IAC. *See supra* at 6-7.

CT ignores the *de novo* nature of a § 1071(b) action in wrongly arguing that GC has "waived" its claim for declaratory relief on the merits of CT's Article 8 claim (FAC, Count I), and its claim that CT is barred from obtaining cancellation of the Registrations due to CT's own laches, estoppel, waiver, or acquiescence. (CT Br. 16.) In ordinary appeals of federal agency judgments, there is a waiver rule under which only the issues presented to the agency may be considered and the appellate court is confined to the factual record developed below. However, this limitation

does not exist in a § 1071(b)(1) action reviewing a TTAB decision. *See Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 13, 15 (D.C. Cir. 2008) (Congress may modify the waiver rule by statute, and it has done so by directing courts in § 1071(b)(1) actions to "consider all the relevant issues brought by either party, regardless of whether those issues were before the TTAB"). Accordingly, this Court "may consider both new issues and new evidence that were not before the TTAB." *Id.* at 13; *see also Apple, Inc. v. Cao*, Civ. A. No. 1:21-cv-1003, 2022 WL 18781189, at *3 (E.D. Va. Jan. 14, 2022) ("In a § 1071(b)(1) action, the district court resolves the issue of registration *de novo* and may consider evidence not previously submitted to the TTAB"); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001) (considering additional evidence and claims). GC thus has not waived Count I, its claim for declaratory relief on the Article 8 claim, nor the affirmative defenses it pled in its TTAB answer.

## III.  GC IS NOT FORECLOSED FROM RAISING THE CACR AS A BAR TO CT'S CLAIMS FOR CANCELLATION.

Count X of the Amended Complaint also states a valid claim for relief. As shown below, the Federal Circuit Decision is neither statutory nor common-law law of the case in this *de novo* proceeding, and therefore does not foreclose any of GC's claims for relief. Moreover, Count X states a valid claim for declaratory relief on which GC is entitled to prevail.

CT's assertion that Count X fails on the merits is based on a 1996 letter of the Director of the Office of Foreign Assets Control ("OFAC"), which administers the CACR and can issue interpretations of those regulations as well as specific licenses exempting Cuban entities from some of the CACR's provisions. (CT Br. 14-15.) But the OFAC letter stated only that the general license contained in 31 C.F.R. § 515.527(a)(1) "may be relied upon . . . to <u>petition to cancel</u> a prior registration of a trademark where those actions relate to a trademark in which. . . a Cuban national

has an interest." (169 TTABVUE 170, A05166 at 335) (emphasis added). Contrary to CT's assertion, OFAC did not say that CT had the right to be awarded cancellation of a U.S. trademark.

Later events in the COHIBA controversy made this important distinction clear. In 1997, at CT's request, OFAC issued a similar specific license authorizing CT to "initiate legal proceedings in the U.S. courts and to otherwise pursue their judicial remedies with respect to claims to the COHIBA trademark." The Second Circuit found that the license "allows Cubatabaco to seek relief in U.S. courts, but it does not authorize transfers of property barred by the Regulations." *Empresa V*, 399 F.3d at 476. The government, in an amicus brief, agreed, writing that the license "allows Cubatabaco to seek remedies but does not alter the substantive law for a court to apply in determining what, if any, remedies are appropriate." *Id.* The government's interpretation in the Second Circuit – that CT can sue for relief but that substantive law (including the CACR) controls whether it can get relief – also applies to the 1996 OFAC letter, which similarly states only that CT is entitled to petition for cancellation relief. *See also Empresa V*, 399 F.3d at 475-76 (holding that the "related to" language of 31 C.F.R. § 515.527(a)(1) which was interpreted in the 1996 OFAC letter "should be interpreted narrowly as it creates an exemption to the broad prohibitions of the embargo" and observing that the regulatory prohibitions on property transfers to Cuban entities were clear).

Further, CT admits it is seeking to cancel GC's Registrations so that it can register the COHIBA mark in the U.S. in CT's name. But the Second Circuit stated that (1) absent a general or specific license, 31 C.F.R. § 515.201(b) of the CACR broadly "prohibits a transfer of property rights, including trademark rights, to a Cuban entity by a person subject to the jurisdiction of the United States," including transfers by operation of law. *Empresa V*, 399 F.3d at 473-74. Transfers of property include court orders to the benefit of a Cuban entity that prohibit a U.S. mark holder

from exercising any of its trademark rights in the U.S. *Id.* at 476 (holding that "as matters stand, General Cigar has the full panel of property rights in the COHIBA mark," and "*does have* a valid registration on the COHIBA mark in the United States," *id.* at 479, and that the district court's order enjoining GC from using its mark in the U.S. "would effect a transfer of property rights in violation of the embargo." *Id.* at 476). Hence, any order, that cancels the Registrations to the benefit of CT, would be a prohibited transfer of property to a Cuban entity: it would strip GC of the valuable property rights that accompany trademark registrations, *see B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015) ("*B&B*"), and remove an obstacle to CT's acquisition of the U.S. COHIBA trademark. *Empresa Cubana*, 399 F.3d at 479. The CACR prohibits CT from obtaining cancellation of the Registrations in this Action under <u>any</u> theory. Count X thus states a valid claim.

## IV. THE FEDERAL ACTION JUDGMENT PRECLUDES CT FROM REASSERTING AN ARTICLE 8 CLAIM FOR CANCELLATION UNDER ARTICLE 8 OF THE IAC.

As another independent ground for denying the Motion, CT is precluded from relitigating its Article 8 claim. CT's arguments that GC is precluded from arguing preclusion also lack merit.

### A. The Federal Circuit Decision Does Not Foreclose This Court From Deciding that the Federal Action Judgment is Preclusive.

Count I of the FAC alleges that the Federal Action Judgment, which dismissed a claim for cancellation by CT based on Article 8 of the IAC, also barred CT from asserting an Article 8 claim at the TTAB under principles of issue and claim preclusion. (FAC ¶¶ 99-113.) As Article 8 was the only legal basis cited by the TTAB Decision for the order cancelling GC's Registrations, preclusion requires vacatur of the order. Contrary to CT's argument, *Empresa VIII*, the Federal Circuit decision, which refused to give the Federal Action Judgment preclusive effect, is not binding under either the Lanham Act or law of the case principles.

1. <u>The "Shall Govern" Language of 15 U.S.C. § 1071(a)(4) Does Not Apply in a de novo Action Filed Under 15 U.S.C. § 1071(b)(1).</u>

CT's preclusion argument relies on language in § 1071(a)(4) providing that, when an appeal is taken to the Federal Circuit under § 1071(a)(1), the Federal Circuit's decision "<u>shall govern the further proceedings in the case</u>" (the "Shall Govern" language). (CT Br. 4.) But GC filed this *de novo* review action in federal court under § 1071(b)(1), rather than pursuing the different and alternative remedy of appeal to the Federal Circuit under § 1071(a)(1). Under § 1071(b)(1), "[t]he court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear." The Shall Govern language does not appear in § 1071(b), and thus does not constrain the very different remedy of a *de novo* action in federal court.

CT's argument violates the negative-implication rule of federal statutory construction (a/k/a *expressio unius est exclusio alterius*). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464 U.S. 16, 23 (1983) (internal citation omitted). Congress must therefore be assumed to have acted "intentionally and purposely" by choosing not to include § 1071(a)'s Shall Govern language in § 1071(b). CT's attempt to improperly import that language into a neighboring subsection should be rejected.

Moreover, the words that Congress *did* use in § 1071(b)(1) show that a *de novo* action filed under that provision is not governed by any Federal Circuit decisions preceding the TTAB decision under review: "The [district] court may adjudge that . . . a registration should be canceled . . . or such other matter as the issues in the proceeding require, as the facts of the case may appear." 15

U.S.C. § 1071(b)(1). The words "proceeding" and "case" in subsection (b)(1) refer only to the *de novo* action, not the earlier cancellation proceeding before the TTAB. In a *de novo* action. any party is free to raise new legal issues and arguments not presented to the TTAB (see *infra* at 18). Thus, "issues in the proceeding" plainly refer to the legal issues framed by the complaint and argued by the parties in the *de novo* action, not the legal issues that either party raised in the TTAB.

Similarly, the word "case" in § 1071(b)'s phrase "as the facts in the case may appear" refers to the new case created upon filing the *de novo* action, not the different case previously pending in the TTAB. This is because (a) a party may introduce new facts and evidence to be considered in the *de novo* action, and those facts by definition were not part of the previous "case" in the TTAB, and (b) the factual record of the TTAB does not automatically become part of the case in the *de novo* action and may only be admitted in the *de novo* action upon motion of a party. § 1071(b)(3). Had the TTAB cancellation proceeding and the *de novo* action been the same "case," there would have been no reason for Congress to specify that a motion is needed before the district court can consider the TTAB record.[3]

The legislative history of § 1071 and case law reinforce the conclusion that Congress did not intend the Shall Govern language to apply to *de novo* actions under § 1071(b)(1). As this Court explained in *Stallard v. U.S. Patent and Trademark Off.*, No. 1:22-cv-1236, 2023 WL 2298749, at *7 (E.D. Va. Mar. 8, 2023), the legislative history of § 1071 is to be understood by looking at the history of the "parallel patent provisions" as discussed by the Supreme Court in *Hoover Co. v. Coe*, 325 U.S. 79 (1945):

> Originally, under the Patent Act, 'a party who lost a patent appeal in one of the Federal Circuit's predecessor courts could seek a remedy for the same decision in district court.' *See Snyder's-Lance*, *Inc. v. Frito-Lay North America, Inc.*,

---

[3] In comparison, FED. R. APP. 11(b) <u>requires</u> the clerk of a district court to transmit the record of an appealed case to the Court of Appeals.

991 F.3d 512, 522-23 (4th Cir. 2021).   In 1927, Congress created the modern structure for appellate review of patents and decided to 'allow an applicant to have the decision of the Patent Office reviewed either by the court of appeals or by filing a bill in equity, but not both.'  *Id.* at 523 (quoting *Hoover*, 325 U.S. at 87).  With that amendment, "the number of possible appeals was to be reduced, while saving to litigants the option of producing new evidence in a court, by retaining the equity procedure" in district court.  *Hoover*, 325 U.S. at 87.

*Stallard*, 2023 WL 2298749, at \*7.  *Hoover* explained that the parallel patent procedures:

> provide "alternate rights of review [to an] applicant – one by appeal to the United States Court of Customs and Patent Appeals, the other by bill in equity filed in one of the district courts . . . [in which] a formal trial is afforded on proof which may include evidence not presented to the Patent Office . . . .  Every party adversely affected by a [PTO] ruling on the merits may, if he so elect, proceed by bill rather than appeal.   In the one case the adjudication in equity authorizes issue of a patent on the applicant's 'otherwise complying with the requirements of law.'  <u>In the other the decision 'shall govern the further proceedings in the case' in the Patent Office.</u>"

*Hoover,* 325 U.S. at 83 (emphasis added).

*Hoover* thus authoritatively reinforces the *expressio unius* conclusion that the Shall Govern language of § 1071(a)(4) refers only to proceedings in the TTAB.  The Supreme Court stated that *only* where a party losing in the Patent Office elects the remedy of an appeal to the CCPA (the Federal Circuit's predecessor court) does that court's decision "govern the further proceedings in the case."  The Supreme Court, moreover, determined that "the case" whose proceedings are thereafter governed is only the case "in the Patent Office," not the distinctly separate case where a party chooses to pursue the bill of equity remedy in district court.  *Id.*  In contrast, where the party elects to proceed with the bill in equity in district court, the only consideration of the court was whether the party has "otherwise compl[ied] with the law"—*i.e.*, the district court independently determined compliance with the law and was not bound by any prior CCPA ruling.

Similarly, because GC has elected to file a *de novo* action (the equivalent of the patent bill in equity procedure under § 1071(b)(1), the Federal Circuit Decision's statements about preclusion do not "govern" here.  Section 1071(a)(4)'s Shall Govern language makes Federal

Circuit decisions binding only in later proceedings in the TTAB, just as *Hoover* explained that the equivalent language in the Patent Act made CCPA decisions binding only on the Patent Office. Section 1071(b)(1)'s provision that the district court shall decide matters "as the issues in the proceeding require, as the facts in the case may appear," indicates that this Court is free to make its own determinations of law without regard to what the Federal Circuit decided, just as the language in the Patent Act, "otherwise complying with the law," meant that in a bill of equity proceeding, the district court was free to decide the applicant's legal right to a patent.

2.     *Snyder's-Lance* Is Not Binding Authority on the Question of Whether the Federal Circuit Decision is Preclusive.

CT's reliance on dictum in *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 522 & n.8 (4th Cir. 2021), is misplaced. (CT Br. 8.) *See Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021) ("[D]ictum is not binding"). The court in *Snyder's-Lance* itself stated that it was <u>not deciding</u> the statutory interpretation question presented on this Motion:

> Plaintiffs suggest that this provision [§ 1071(a)(4)] may apply solely to bind the Trademark Board, not other federal courts. *See* Opening Br. at 37; Oral Arg. at 18:29–57; *cf. Hoover Co. v. Coe*, 325 U.S. 79, 83, 65 S. Ct. 955, 89 L.Ed. 1488 (1945) (appearing to endorse this interpretation in the patent context). <u>We need not decide this question for purposes of this appeal</u>.

*Snyder's-Lance*, 991 F.3d at 517 n.2 (emphasis added). Indeed, the Fourth Circuit preceded the discussion quoted by CT with the words "[w]e think the better interpretation of § 1071(a)(4), <u>to the extent it is relevant at all</u> . . . " *id.* at 522 (emphasis added), and referred back to footnote 2 of the opinion, quoted in full above. Because *Snyder's-Lance* expressly declined to decide whether § 1071(a)(4) binds the TTAB and not federal courts, it does not control this Motion, which presents that exact question for this Court's decision. *Carolina Clipper, Inc. v. Axe*, 902 F. Supp. 680, 683 n.4 (E.D. Va. 1995). The language quoted by CT is also dictum because it is not part of the holding

of the Fourth Circuit's decision nor necessary to the holding's analysis. The question actually addressed and decided in *Snyder's-Lance* was the following:

> This case presents a narrow question of statutory interpretation: whether a party to a trademark dispute who appeals a decision of the [TTAB] . . . to the Federal Circuit may, after vacatur and remand by the Federal Circuit and the issuance of a new decision by the [TTAB], seek review of that second decision in federal district court. . . .

> In this matter of first impression for our Circuit, we join our sister circuits that have considered this question and <u>hold that a district court may review a subsequent decision of the [TTAB] in such circumstances</u>. . . . We <u>hold that the district court erred in dismissing the case for lack of jurisdiction.</u>

*Snyder's-Lance*, 991 F.3d at 513-14 (emphasis added).

The effect of a prior Federal Circuit decision on a subsequent *de novo* action—much less one that, as here, is brought by the party who *did not appeal* the first TTAB decision—is not part of this holding or its underlying reasoning. The portion of *Snyder's-Lance* on which CT relies is thus a textbook example of dictum. *See Pittston Co. v. U.S.*, 199 F.3d 694, 703 (4th Cir. 1999) ("Dictum is a 'statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.'") (citation omitted.)[4]

---

[4] The law of the case statement in *Gillette Co. v. "42" Products, Ltd.*, 435 F.2d 1114, 1117 (9th Cir. 1970), is both non-binding in this Circuit and dictum under *Pittston*. *Gillette* involved the same jurisdictional question addressed in *Snyder's-Lance*. The district court found that it had jurisdiction under § 1071(b)(1) and certified an immediate appeal of the jurisdictional point to the Ninth Circuit. The Ninth Circuit affirmed, stating: "We hold that in these circumstances, § 1071 permits a civil action in a federal district court and . . . the district court was correct in denying appellant's motion to dismiss for lack of subject matter jurisdiction over the first cause of action." 435 F.2d at 1118. The Ninth Circuit's stray remark about the effect of the CCPA's decision on <u>future</u> district court rulings was part of neither the holding nor its reasoning. *See Pittston*, 199 F.3d at 703.

**B.      The Federal Circuit Decision is not Preclusive Under Ordinary Law of the Case Principles.**

1.      <u>This de novo Action is Not the "Same Case" as the Cancellation Proceeding.</u>

CT also wrongly argues that "ordinary law of the case principles independently lead to the same result" of making the Federal Circuit Decision binding here.  (CT Br. 9.)  First, "[t]he [law of the case] doctrine only applies within the same case – an identical issue decided in a separate action does not qualify as law of the case."  *Farina v. Nokia, Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010); *see also* 18B FEDERAL PRACTICE AND PROCEDURE (Wright & Miller) (3d ed.) § 4478.  Here, the TTAB Cancellation Proceeding (including the Federal Circuit Decision rendered therein) was not the same case as this *de novo* action.  The Federal Circuit Decision therefore does not satisfy the threshold "same case" requirement for law of the case.

In § 1071(b)(1), Congress authorized a district court to independently determine whether "a registration involved should be cancelled," and to decide new claims not within the jurisdiction of the TTAB – indeed to decide any "other matter as the issues in the proceeding require, as the facts in the case may appear."   All legal determinations in a § 1071(b) action are *de novo*. Moreover, so are all the factual determinations under most circumstances.  "In a § 1071(b) action, the district court reviews the record de novo and acts as the finder of fact.  The district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition claims."  *Swatch AG v. Beehive Wholesale AG*, 739 F.3d 150, 155 (4th Cir. 2014).  The district court does not act as an appellate body over the TTAB. *Id.*  In fact, the TTAB record does not even come before the *de novo* court unless a party moves for its admission.  15 U.S.C. § 1071(b)(3); *see Apple, Inc. v. Cao*, Civ. A. No. 1:21-cv-1003, 2022 WL 18781189, at *4 (E.D. Va. Jan. 14, 2022).  When a party introduces any new evidence on a

disputed fact question, "the district court must conduct a *de novo* review of the entire record, including the evidence before the TTAB and any evidence submitted by a party." *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 298 (4th Cir. 2021).[5]  A *de novo* action thus bears all the hallmarks of a separate and independent case.

2.    The Federal Circuit's Failure to Remand the Preclusion Issue to the TTAB for Decision Violated the "Remand Rule" and was Therefore Clearly Erroneous.

The second reason for rejecting CT's law of the case argument is that the Federal Circuit's choice to decide the preclusion issue rather than remand it to the TTAB for determination violated the well-settled "remand rule," which as the Supreme Court has held on multiple occasions, is clear error.  Clearly erroneous decisions do not qualify as law of the case.  *U.S. v. Aramony*, 166 F.3d 655, 665 (4th Cir. 1999).

The earlier TTAB decision dismissing CT's Amended Petition rested entirely on a determination that CT lacked standing.  *Empresa VII*, 2013 WL 3168090, at *5-7.  The TTAB stated that it "need not reach the merits of [GC's] second ground for summary judgment, i.e., [CT's] claims are precluded by the doctrines of *res judicata* and collateral estoppel."  *Id.* at *7.

The Federal Circuit reversed the TTAB decision, holding that the TTAB's no-standing finding was erroneous.  *Empresa VIII,* 753 F.3d at 1275-76.  However, the Federal Circuit did not stop there: while noting that the "Board declined to address preclusion in its judgment, this Court finds that neither issue nor claim preclusion bars the Amended Petition."  *Id.* at 1276.  The Federal Circuit then undertook its own preclusion analysis and concluded that none of the claims in CT's Amended Petition were precluded by the Federal Action Judgment.  *Id.* at 1276-78.

---

[5] GC intends to introduce new evidence on Count I, the claim relating to Article 8 of the IAC, and the Court will therefore be required to undertake *de novo* review of the entire factual record relating to the Article 8 issue.

By deciding preclusion, instead of remanding to the TTAB so that the agency could consider the issue in the first instance, the Federal Circuit's Decision violated the Supreme Court's remand rule. "Fundamental principles of administrative law . . . teach that a federal court generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question." *Smith v. Berryhill*, 139 S. Ct. 1765, 1779 (2019); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943); *Calcutt v. FDIC*, 143 S. Ct. 1317, 1321 (2023) ("The Sixth Circuit should have followed the ordinary remand rule here. That court concluded that the FDIC Board had made two legal errors in its opinion. The proper course for the Sixth Circuit after finding that the Board had erred was to remand the matter back to the FDIC for further consideration of petitioner's case."); *see also Austin v. Jackson*, 353 F.2d 910, 912 (4th Cir. 1965).

The Supreme Court has deemed an appellate court's failure to comply with the remand rule so obvious a mistake that it meets the "clearly erroneous" standard and warrants summary reversal. *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (summarily reversing Ninth Circuit decision because it had "committed clear error" by "seriously disregarding the agency's legally mandated role . . . and independently creat[ing] potentially far-reaching legal precedent . . . without giving the agency the opportunity to address the matter in the first instance in light of its own expertise"); *Gonzalez v. Thomas*, 547 U.S. 183, 185 (2006) (agreeing with Solicitor General's argument that in "ignoring the "ordinary remand rule. . .the Ninth Circuit's error is so obvious . . . that summary reversal would be appropriate"); *Calcutt*, 143 S. Ct. at 1317 (summarily reversing Sixth Circuit).

The Federal Circuit likewise committed clear error in deciding preclusion issues that the TTAB should have decided first under its "legally mandated role." *See Orlando Ventura*, 537 U.S. at 17. Federal statutes commit the question of whether a registration should be cancelled and the

respective rights of registration in the first instance to the TTAB. 15 U.S.C. § 1067(a).[6] The Federal Circuit failed to allow the TTAB to first decide the questions of claim and issue preclusion – in fact it did not even consider whether the remand rule should apply. The cases it relied on for justifying its immediate ruling on preclusion involved review of federal district court judgments, not agency decisions. *Empresa VIII*, 753 F.3d at 1276.

To disregard a decision as law of the case for clear error, some decisions also require a finding that adhering to the decision would work a "manifest injustice." *Aramony*, 166 F.3d at 661. "Manifest injustice" in the civil context may include failure to properly apply principles of claim preclusion which would force defendants to relitigate claims they had previously won on in court. *Belezos v. Board of Selectmen of Hingham, Mass.*, Civ. A. No. 17-12570-MBB, 2019 WL 6340990, at *7 (D. Mass. Nov. 27, 2019); *see also Negron-Almeda v. Santiago*, 579 F.3d 45, 52 (1st Cir. 2009); *Sulik v. Taney County, Mo.*, 393 F.3d 765, 767 (8th Cir. 2005) (manifest injustice arose from dismissal of plaintiff's claims).

GC has already suffered manifest injustice from the Federal Circuit's clearly erroneous decision by having to expend legal fees in the Proceeding to relitigate issues on which it already won in Federal Court. Were this Court to adhere to that erroneous decision and cancel the Registrations, GC would lose its highly valuable statutory trademark rights, which confer benefits far beyond the common law protection of trademarks and trade names. *See B&B*, 575 U.S. at 142. This consequence would be manifestly unjust. The Federal Circuit Decision, which clearly erred by violating the remand rule, therefore should not be treated as law of the case here.[7]

---

[6] However, under 15 U.S.C. § 1119, the federal district courts have concurrent and co-equal power to decide cancellation and rights of registration where a registered mark is involved in infringement or unfair competition litigation. *See* discussion *infra* at 28.

[7] The TTAB viewed the Federal Circuit's statements rejecting issue and claim preclusion as part of the appellate mandate, which the Board was bound to follow. *Empresa IX*, 2022 WL 17844056,

3.     <u>The Federal Circuit Decision is Undermined by the Supreme Court's Later Preclusion Ruling in *B&B* Hardware and is thus not Law of the Case.</u>

A third well-established exception to the law of the case doctrine also applies here: where intervening legal authority from a higher court casts serious doubt on the correctness of the prior decision. The exception does not require that the higher court overrule precedent relied on by the prior decision. It requires only that the "intervening legal authority 'undermines,' or rejects 'the principal legal reasoning behind the'. . . prior decision." *U.S. v. Cannady*, 63 F.4th 259, 267 (4th Cir. 2023). *See also U.S. v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2010) ("A Supreme Court opinion need not be directly on point to undermine one of our opinions. 'A [Supreme Court] holding ... can extend through its logic beyond the specific facts of its case.'" (quoting *Los Angeles County v. Humphries,* 562 U.S. 29, 38 (2010)).

*B&B*, decided after the Federal Circuit Decision, completely undermines the Federal Circuit's finding that the Article 8 claim in the Second Circuit and those in the TTAB are not sufficiently identical to satisfy the requirements of issue preclusion. *B&B* interpreted the first of the four elements for issue preclusion: whether the same issue of fact of law is presented in both the prior and current actions. 575 U.S. at 148. *B&B* concluded that if a federal court and the TTAB both use the same substantive legal standards to determine a question of trademark law, then the legal issue is the same. *Id.* As a result, a final federal court judgment applying the standard and determining the issue (after the loser has had a fair opportunity to litigate the issue) is preclusive when that issue is later raised in TTAB proceedings involving the same parties. *Id.* at 152-53. Critically to this case, this rule applies even if the second forum applies that legal standard

---

at *17. To the extent that the Board reached its own legal conclusions about whether the Supreme Court's ruling in *B&B* should yield a different result on preclusion, *see id.* at *18-19, this Court reviews those issues *de novo*.

differently and would have reached a different result had the claim first been asserted in that forum: "[I]f federal law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently. A contrary rule would encourage the very evils that issue preclusion helps to prevent." *Id.* at 154.

The holding and logic of *B&B* completely undermine the Federal Circuit's preclusion analysis. What this case presents is not two <u>different</u> legal issues in two cases as the Federal Circuit thought, but what the Supreme Court addressed in *B&B*: a garden-variety conflict where a federal court (here the Second Circuit) applies the <u>same</u> substantive federal law legal standard (here section 8 of the IAC and the Lanham Act) differently from a federal agency (here the TTAB). The Federal Circuit denied preclusion to the Federal Action Judgment because "unlike the federal courts, the Board can cancel registrations directly under Article 8 of the IAC, pursuant to the Board's jurisdiction under 15 U.S.C. § 1067(a). Unlike in the district court, the Board need not consider the interplay with Section 44(h)." *Empresa VIII*, 753 F.3d at 278 (citations omitted). However, § 1067(a) is *not a substantive legal* standard as analyzed in *B&B*; it is merely the statutory provision that authorizes the TTAB to decide registration disputes. It does not provide any criterion to the TTAB for how to *decide* those disputes, as a substantive legal standard would. The federal courts have a similar enabling statute that gives them co-equal authority to decide such disputes under 15 U.S.C. § 1119, and which likewise contains no substantive legal standard.

Article 8, §§ 44(b) and (h) of the Lanham Act, and precedent regarding the consequences of a self-executing treaty set out the substantive legal standard for determining whether an Article 8 claim can be asserted in American courts. These provisions are the same laws whether considered by a federal court or the TTAB. The reason that the TTAB can cancel registrations directly under Article 8 is not because it has greater powers than the federal courts, as the Federal

Circuit thought, but because the TTAB considers the self-executing nature of the IAC treaty sufficient to dispense with the need for statutory implementation in the Lanham Act. *British-American Tobacco, Co., Ltd. v. Philip Morris Co.*, 55 U.S.P.Q.2d 1585 (T.T.A.B. 2000).

The Second Circuit interprets the same law differently. In *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116 (2d Cir. 2000), the Cuban plaintiff-appellant argued, as CT does now, that "it does not need sections 44(b) and 44(h) of the Lanham Act to assert its rights under the IAC because upon ratification, the IAC became law in the United States without the aid of additional legislation." *Id.* at 128. The Second Circuit disagreed. It noted that the text of section 44(b) as originally enacted "specifically incorporated the treaty rights of persons who are nationals of . . . any foreign country, which is a party to [the IAC or] . . . any other convention or treaty relating to trade-marks, trade names, or commercial names, or the repression of unfair competition," indicating Congress's understanding that notwithstanding the self-executing nature of the IAC, implementing legislation was required before any IAC rights could be asserted in U.S. courts. *Id.* (cleaned up). The court concluded that the Cuban entity must therefore "assert its rights under the IAC pursuant to section 44(b) of the Lanham Act." *Id.* at 129. Moreover, the Second Circuit found that § 44(b) is further limited by § 44(h), which provides any person designated in § 44(b) "effective protection against unfair competition." It concluded that the IAC allowed treaty beneficiaries the use of Lanham Act remedies in U.S. courts only to the extent as "they may be appropriate in repressing acts of unfair competition." *Id.* at 134-35. It rejected the Cuban entity's attempt to plead a claim under Article 23 of the IAC because the IAC does not treat rights under Article 23 as related to the repression of unfair competition. *Id.* at 135 n.19. The district court in the Federal Action applied *Havana Club*'s well-grounded reading of the history of the Lanham Act to CT's Article 8 claim. It concluded that Article 8, like IAC Article 23 in *Havana Club*, does

not relate to the repression of unfair competition, and therefore does not give CT a cause of action to cancel a U.S. trademark registration, *Empresa I*, 213 F. Supp. 2d at 282, and the Second Circuit agreed in affirming the dismissal of the Article 8 claim. *Empresa V*, 399 F.3d at 483.

In short, the differences between *British-American Tobacco* and *Havana Club* simply reflect differences in the two tribunals' application of the same federal legal standards to determine the same issue: whether Article 8 creates a U.S. cause of action for cancellation. Those differences were the only basis for the Federal Circuit's denial of preclusion, and that court's rejection of preclusion no longer stands in light of what the Supreme Court held in *B&B*, "if federal law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently." 575 U.S. at 154. Under *B&B,* allowing CT to relitigate its failed Article 8 claim simply because the TTAB interprets the same law differently than the judgment court does is not only incorrect: it also allows CT to engage in blatant forum-shopping, which is one of the "very evils that issue preclusion helps to prevent." *Id.*

Accordingly, the Federal Circuit Decision is not law of the case in this *de novo* action. Since all issue preclusion elements are satisfied here (CT has not seriously contested the second through fourth elements), the Court should deny CT's Rule 12(c) motion, and grant judgment to GC on Count I of the FAC.

### C.     Claim Preclusion Also Bars CT's Reassertion of an Article 8 Claim.

Even if, as it contends, (CT Br. 11-12), CT did not plead and argue a "direct" Article 8 claim in the Southern District of New York, it was barred by principles of claim preclusion from raising such a claim in the Proceeding. "Three requirements exist for the invocation of claim preclusion: 1) the parties must be the same or in privity with the original parties; 2) the claims in the subsequent litigation must be substantially the same as those in the prior litigation; and 3) the

earlier litigation must have resulted in a final judgment on the merits." *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir. 1989). CT disputes only the second and third requirements.

On the second requirement, "[r]ules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). This determination turns on whether the claims asserted in the second case "arise out of the same transaction or series of transactions or the same core of operative facts." *Id.* at 1316.

CT's Article 8 claim in the TTAB arose from the same core of transactions and operative facts as the Article 8 claim it lost in the Second Circuit. In the first case it moved for summary judgment on the Article 8 claim based on ostensible proof that (1) it enjoyed legal protection for the COHIBA mark in Cuba before GC filed to register the mark in the US; (2) it "used" or "employed" the mark by giving COHIBA-branded cigars to diplomats and sales to foreign tourists in Cuban dollar stores; and (3) GC knew about this "use" or "employment" before applying to register and before using the COHIBA mark in the U.S. (A91404 at 91449, 91456-59.) It asserted the identical transactions and ostensible proof in support of its Article 8 claim in its TTAB trial brief. *See* 365 TTABVUE at 13-20, 28; A91015 at 91029-36. The TTAB grounded its ruling on the Article 8 claim upon that same evidence. *Empresa IX*, 2022 WL 17844056, at *13-14. CT once again repeats the same asserted evidence on this Rule 12(c) motion. (CT Br. 19-22.)

Thus, it makes no difference that CT mentioned § 44(b) and 44(h) of the Lanham Act only in its federal Article 8 claim and § 17(a) only in its TTAB claim. Both versions of the claim manifestly arose from the same transactions and core of operative facts and are therefore the "same claim" for purposes of claim preclusion, notwithstanding CT's artful relabeling of its Article 8

claim in the TTAB. *See Pueschel v. U.S.*, 369 F.3d 345, 355 (4th Cir. 2004) ("Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'").

On the third requirement of claim preclusion, CT merely repeats the Federal Circuit's incorrect assertion that the Second Circuit "never issued a final judgment on the merits of Cubatabaco's cancellation claims." *Empresa VIII*, 753 F.3d at 1278; *see* CT Br. 12. Under FED. R. CIV. P. 41(b), an involuntary dismissal of a claim, except on grounds of lack of jurisdiction, improper venue or failure to join a party, operates as a decision on the merits "[u]nless the dismissal order states otherwise." *See Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319 (4th Cir. 2002). The Federal Action Judgment, which was a final judgment, expressly dismissed CT's Article 8 claim and all of CT's other cancellation claims with prejudice, consistently with the district court's earlier ruling granting summary judgment to GC on the Article 8 claim. *Empresa I,* 2004 WL 925647, at *3. The Second Circuit affirmed this dismissal, and its mandate directed the district court to dismiss all of CT's remaining claims. *Empresa V*, 399 F.3d at 486 ("[T]he judgment of the District Court is . . . remanded for entry of an order dismissing all remaining claims). The district court thereafter complied and issued an order dismissing all remaining claims. Thus, the dismissal of the Article 8 claim was incontestably on the merits. In addition, it is well established that dismissing a cause of action for failure to state a claim, as the district court did, decides the merits of the claim. *Hagans v. Lavine*, 415 U.S. 528, 542 (1974). Thus, as a matter of law, all three requirements for claim preclusion are satisfied here.

CT's argument that the powers of an Article I administrative agency to cancel a registration are greater than those of an Article III court (CT Br. 11, 13) is wrong. 15 U.S.C. § 1067(a) says nothing about treaties or, indeed, about any other legal grounds under which the TTAB may properly cancel a registration. It certainly does not give the TTAB greater powers. §1067(a) is simply the provision of the Lanham Act that enables the TTAB to hear and decide disputes over registrations. In a corresponding Lanham Act enabling provision, 15 U.S.C. § 1119, Congress gave the federal courts co-equal—not lesser—power to determine the right to cancellation when an infringement or unfair competition claim involving a registered mark is also raised.

It is well-established that federal courts' power to cancel registrations under § 1119 is "parallel" and "concurrent" with the Board's cancellation authority, not inferior to it. *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 9 F.3d 1091, 1092, (4th Cir. 1993); *Durox Co. v. Duron Paint Mfg. Co.*, 320 F.2d 882 (4th Cir. 1963). And when, as here, a federal court is the first to rule on the validity of a registration, that is the end of the story. The congressional intent underlying § 1119 prohibits a party which has lost a cancellation claim in federal court from relitigating the claim (or any other claim based on the same facts) in the TTAB. *Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp.*, 257 F.2d 485, 491 (3d Cir. 1958) ("Congress has provided [in § 1119] that all questions in respect to a registered trade-mark may be determined <u>in one proceeding</u>, thus preventing vexatious and harassing litigation as well as saving time, expense and inconvenience to the parties and to the courts and Patent Office tribunals.") (emphasis added). The TTAB, by allowing CT a second bite at the Article 8 apple, violated the congressional intent that there be only "one proceeding" to decide "all questions in respect to" GC's COHIBA registrations.

In addition, there is not one Article 8 of the IAC and Lanham Act for the Second Circuit and a different one for the TTAB. There is only a difference in interpretation of the same federal

law between the two tribunals, not a difference in the legal standards themselves. *See B&B*, 575 U.S. at 15; *supra* at 22-23. This does not allow CT to avoid claim preclusion, any more than an inter-Circuit split on an issue of federal law would allow a party losing a claim based on that law in Circuit A to relitigate the claim in Circuit B. This Court does not need to voice a preference between the TTAB's or Second Circuit's views of Article 8, as CT invites it to do. (*Cf.* CT Br. 23-26.) It matters only that the same substantive legal provisions and factual nucleus were involved in the Federal Action and the TTAB and that the Second Circuit was the first to interpret those provisions and the first to issue a final judgment. The final Federal Action Judgment bars reassertion of the Article 8 claim in any later proceeding.

CT's attempt to find an exception to claim preclusion falls well short. It relies on cases where claim preclusion was denied because the first court did not have subject matter jurisdiction over the claim asserted in the second action. (*Cf.* CT Br. 12-13.) The district court in the Federal Action, however, did have subject matter jurisdiction to determine CT's claims for cancellation, 15 U.S.C. § 1119. It exercised that jurisdiction in concluding that Article 8 did not give CT an enforceable right of action.

CT also incorrectly asserts that the Second Circuit affirmed dismissal of the Article 8 claim "because it found the CACR's prohibitions to impose a limitation on judicial authority that barred relief in the Federal Action," whereas OFAC issued a license allowing the TTAB to cancel GC's Registrations. (CT Br. 13-14.) While the Second Circuit affirmed the district court's dismissal of the Article 8 cancellation claim, *Empresa V*, 399 F.3d at 483, that determination had nothing to do with the court's separate ruling that the CACR barred CT from acquiring the U.S. COHIBA mark

through the "famous marks doctrine" or section 43(a) of the Lanham Act.[8]  *Id.*, 399 F.3d at 476-79.  The Second Circuit simply agreed with the district court that under *Havana Club*, claims under Articles 7 and 8 of the IAC are not enforceable in the U.S. because (1) Congress only authorized cancellation claims based on treaties where the claims relate to the repression of unfair competition, and (2) Articles 7 and 8 do not relate to the repression of unfair competition.  *Empresa V*, 399 F.3d at 483.  This reasoning has nothing to do with CT's Cuban nationality: it would equally require dismissal of an Article 8 claim brought in the U.S. by a Guatemalan mark owner.

As a matter of law, therefore, CT may not maintain a claim for cancellation of the Registrations under Article 8 of the IAC.  CT's Motion therefore should be denied for this independent reason too.

## CONCLUSION

CT's Rule 12(c) motion should be denied.

Dated: June 28, 2023                                 Respectfully submitted,

By:  */s/ J. Kevin Fee*
      J. Kevin Fee (VA Bar No. 88376)
      DLA PIPER LLP (US)
      500 Eighth Street
      Washington, DC 20004
      Tel. 202.799.4441
      kevin.fee@us.dlapiper.com

      Andrew L. Deutsch (*pro hac vice*)
      Law Offices of Andrew L. Deutsch
      6540 Olympic Place
      Los Angeles, CA 90035

---

[8]  GC's complaint does not contend that the CACR bars the TTAB from cancelling the Registrations to the benefit of a Cuban entity on any grounds, as CT asserts, (CT Br. 14), but that the Second Circuit's holding in *Empresa V* bars this Court from ordering cancellation, which would be a prohibited transfer of property to a Cuban entity.  *See* FAC ¶¶17, 161-71.  The Federal Circuit's Decision's speculation on the powers of the TTAB is irrelevant to this question: this is an entirely *de novo* action in federal court and this Court now has exclusive jurisdiction over all cancellation issues arising from the Registrations.

Tel: 917.861.3315
adeutsch221@gmail.com

Stanley J. Panikowski (*pro hac vice*)
DLA Piper LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel. 858.677.1400
stanley.panikowski@us.dlapiper.com

Joshua Schwartzman (*pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas, Fl. 27
New York, NY 10020
Tel. 212.336.4671
joshua.schwartzman@us.dlapiper.com

Oscar M. Orozco-Botello (*pro hac vice*)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
Tel. 310.595.3077
oscar.orozco-botello@us.dlapiper.com

*Attorneys for Plaintiff General Cigar Company, Inc.*