**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

GENERAL CIGAR COMPANY, INC.,

        Plaintiff,

v.

EMPRESA CUBANA DEL TABACO, D.B.A.
CUBATABACO.

        Defendant.

CASE NO: 23-cv-00227-LMB-WEF

**DEFENDANT EMPRESA CUBANA DEL TABACO d.b.a. CUBATABACO'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I. Fact Disputes Do Not Preclude Granting CT's Motion, Which Is Based Solely on Legal Grounds.................................................................................................... 2

II. The Federal Circuit Decision Is Binding and Therefore Disposes of GC's Two Threshold Objections to Judgment for CT: That CT Cannot Assert Article 8, Inter-American Convention, Because of the Second Circuit's Decision and the Prohibitions of the CACR ......................................................................................................... 3

    A. GC's Objection to Judgment on the Basis of the Second Circuit's Decision ......... 3

        1. The Federal Circuit Decision Is Binding Because of Judicial Estoppel ..... 3

        2. Contrary to GC's Unsupported Position, 15 U.S.C. §1071(a)(4) Is Applicable to §1071(b) Actions, Making the Federal Circuit Decision Binding................................................................................................... 3

        3. Contrary to GC's Unsupported Position, Law of the Case Is Applicable to §1071(b) Actions; Intervening Authority Does Not Justify Disregard of the Federal Circuit Decision Under that Doctrine ................................... 7

        4. GC's "Remand" Argument is Barred by Judicial Estoppel, and Is Misplaced ................................................................................................ 10

        5. Even if Not Disposed of by the Federal Circuit Decision, GC's Preclusion Arguments Fail .......................................................................11

    B. GC's CACR Argument Is Barred and Meritless ................................................. 13

III. GC Cannot Avoid Judgment Because of Its Waiver in the TTAB of Laches and Acquiescence as Defenses, and Its Waiver of Any Contention that Article 8's Requirements Are Not Met ................................................................................. 15

CONCLUSION..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
    525 F.3d 8 (D.C. Cir. 2008) ................................................................................16, 17

*Apple, Inc. v. Cao*,
    2022 U.S. Dist. LEXIS 24665 (E.D.Va Jan. 14, 2022) ........................................17

*Austin v. Jackson*,
    353 F.2d 910 (4th Cir. 1965) ................................................................................11

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015) .....................................................................................8, 9, 19

*CAE, Inc. v. Clean Air Eng'g, Inc.*,
    267 F.3d 660 (7th Cir. 2001) ................................................................................17

*Calcutt v. FDIC*,
    143 S. Ct. 1317 (2023)..........................................................................................11

*Criales v. Am. Airlines, Inc.*,
    105 F.3d 93 (2d Cir. 1997)...................................................................................13

*Empresa Cubana Del Tabaco v Culbro Corp.*,
    478 F. Supp. 2d 513 (S.D.N.Y. 2007)(*aff'd,* 541 F.3d 476 (2d Cir. 2008) ......................11, 12

*Empresa Cubana Del Tabaco v. General Cigar Co.*,
    753 F.3d 1270 (Fed. Cir. 2014) ..............................................8, 9, 10, 11, 12, 13

*Empresa Cubana Del Tabao v. Cubro Corp.*,
    399 F.3d 462 (2d Cir. 2005)......................................................................11, 14, 15

*Fusaro v. Howard*,
    19 F.4th 357 (4th Cir. 2021) ..................................................................................8

*Gillette Co. v. "42" Products, Ltd.*,
    435 F.2d 1114 (9th Cir. 1970) .............................................................................4, 5

*Gonzalez v. Thomas*,
    547 U.S. 183 (2006)..............................................................................................11

*Hoover Co. v. Coe*,
    325 U.S. 79 (1945).............................................................................................6, 7

*Hyatt v. Kappos*,
    625 F.3d 1320 (Fed. Cir. 2010)................................................................19

*I.N.S. v. Orlando Ventura*,
    537 U.S. 12 (2002)................................................................11

*Jet, Inc. v. Sewage Aeration Sys.*,
    223 F.3d 1360 (Fed. Cir. 2000)................................................................9

*Kappos v. Hyatt*,
    566 U.S. 431 (2012)................................................................19

*Lowery v. Stovall*,
    92 F.3d 219 (4th Cir. 1996) ................................................................3, 10

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013)................................................................6

*Med. Extrusion Techs., Inc. v. Apollo Med. Extrusion Techs., Inc.*,
    No. 17-cv-2150, 2020 WL 5709298 (S.D. Cal. Sept. 24, 2020)................................16

*Midland Co-ops., Inc. v. Midland Int'l Corp.*,
    421 F.2d 754, (C.C.P.A. 1970) ................................................................9

*Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*,
    770 F. Supp. 1093 (E.D. Va. 1991) ................................................................9

*In re Raynor*,
    922 F.2d 1146 (4th Cir. 1991) ................................................................9

*Samples v. Ballard*,
    860 F.3d 266 (4th Cir. 2017) ................................................................18

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943)................................................................10, 11

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001)................................................................13

*Skippy, Inc. v. Lipton Inv., Inc.*,
    345 F. Supp. 2d 585 (E.D. Va. 2002) ................................................................16

*Skippy, Inc. v. Lipton Inv., Inc.*,
    74 F. App'x 291 (4th Cir. 2003) ................................................................16

*Smith v. Berryhill*,
    139 S. Ct. 1765 (2019)................................................................11

*Snyder's-Lance v. Frito-Lay N. Am., Inc.*,
    991 F.3d 512 (4th Cir. 2021) ...................................................................4, 5, 6, 7

*Sprinklets Water Ctr., Inc. v. McKesson Corp.*,
    806 F. Supp. 656 (E.D. Mich. 1992).................................................................16

*Swatch AG v. Beehive Wholesale, Ltd. Liab. Co.*,
    739 F.3d 150 (4th Cir. 2014) ..........................................................................19

*TFWS, Inc. v. Franchot*,
    572 F.3d 186 (4th Cir. 2009) ..........................................................................10

*U.S. v. Cannady*,
    63 F.4th 259 (4th Cir. 2023) .............................................................................7

*United States v. Aramony*,
    166 F.3d 655 (4th Cir. 1999) ............................................................................7

*United States v. George*,
    971 F.2d 1113 (4th Cir. 1992) ........................................................................18

*United States v. Wayda*,
    966 F.3d 294 (4th Cir. 2020) ............................................................................5

*Winston v. Pearson*,
    683 F.3d 489 (4th Cir. 2012) ........................................................................7, 8

*Wood v. Milyard*,
    566 U.S. 463 (2012).......................................................................................17

*Zawod v. SIA "Baltmark Invest"*,
    No. 12-cv-515, 2013 WL 6189233 (E.D. Va. Nov. 26, 2013) (Cacheris, J.) ..................16, 17

**Federal Statutes**

15 U.S.C. § 1067.................................................................................................11

15 U.S.C. § 1071...................................................................................................6

15 U.S.C. § 1071(a)(1)...........................................................................................6

15 U.S.C. § 1071(a)(4).......................................................................1, 2, 3, 4, 5, 6, 7, 14

15 U.S.C. § 1071(b).......................................................1, 2, 3, 4, 5, 6, 7, 16, 17, 18, 19

15 U.S.C. § 1071(b)(1) ...............................................................................4, 5, 6

15 U.S.C. § 1119...........................................................................................11, 18

**Rules**

Federal Rules of Civil Procedure
    Rule 12(c)................................................................................................18
    Rule 41(b) .............................................................................................13

**Regulations**

31 C.F.R. pt. 515 ........................................................................................1

31 C.F.R. § 515.309(a)..............................................................................14

31 C.F.R. § 515.310 ...................................................................................14

31 C.F.R. § 515.527 .........................................................................12, 13, 15

31 C.F.R. § 515.528 ...................................................................................14

**Other Authorities**

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair
    Competition § 32:94 (5th Ed. 2017) ........................................................9

Article 8, General Inter-American Convention for Trade Mark and Commercial
    Protection, 46 Stat. 2907 (1929) .......................................1, 2, 3, 11, 12, 15, 17, 18, 19

18A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4437 (3d ed.
    2018) ...................................................................................................13

Restatement (Second) Judgments § 27 (1982)................................................9

Defendant Empresa Cubana del Tabaco, d.b.a. Cubatabaco ("CT"), respectfully submits this Reply in further support of its motion for judgment on the pleadings.

## INTRODUCTION

As shown in CT's opening brief, and further supported in this Reply, the Court should grant judgment on the pleadings on the ground found dispositive by the Trademark Trial and Appeal Board ("TTAB") in its order cancelling General Cigar's Registrations of COHIBA, for the following reasons:

(a)     The Federal Circuit Decision is binding in a subsequent §1071(b) action by virtue of §1071(a)(4) (Federal Circuit's mandate and opinion "shall govern the further proceedings in the case") and the law of the case doctrine. This disposes of the two threshold objections to judgment that have been argued by General Cigar ("GC"): issue and claim preclusion based on the Second Circuit's decision in prior litigation between the parties, and the prohibitions of the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. Part 515; and

(b)     Because GC raised and then waived the issues in the TTAB, it cannot assert laches and acquiescence as defenses against CT's claims, and cannot contest that the requirements of Article 8, General Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907 (1929), are satisfied.

In its opposition, GC asks this Court to throw out the Federal Circuit Decision on the issues the parties litigated and that court decided, *and* the TTAB's decision on the issues that were before the TTAB but which GC waived. GC claims the right to litigate all of those issues anew. This is an untenable, unsupported position with unacceptable results. It would mean that the Federal Court and the TTAB had labored in vain, and the parties wasted their time and resources in many years of litigation.

GC cites no authority that allows it to disregard in this §1071(b) action what has already

1

transpired. Nor does it distinguish or meaningfully respond to the cases on which CT relies concerning §1071(a)(4), which provides that the Federal Circuit's decision "shall govern the further proceedings in the case," and law of the case, and the decision of a court of this District on claims waived in the TTAB. Moreover, GC's position is necessarily in conflict with the allocation of responsibilities assigned by the Lanham Act to the Federal Circuit, the TTAB, and the §1071(b) district court in the resolution of disputes over trademark registration.

## ARGUMENT

### I.   Fact Disputes Do Not Preclude Granting CT's Motion, Which Is Based Solely on Legal Grounds

By relying principally on the parties' factual disputes, Opp. at 1, 8–10, GC misconceives and obfuscates the grounds upon which CT bases its motion for judgment on the pleadings. Those grounds are entirely independent of the factual disputes GC identifies (or any others), and instead present pure questions of law. GC does not and cannot explain why these alleged factual disputes should have any effect on CT's motion.

GC points to disputes about whether CT enjoyed legal protection for COHIBA during the relevant periods (which, despite GC's characterization, is a legal question but not pertinent to this motion), about when and how CT used or employed the COHIBA mark in Cuba, and about what GC knew and when about COHIBA's use or employment in Cuba—all elements of Article 8. Opp. at 1, 8–10. However, CT's Article 8 argument in this motion is precisely and exclusively that these are all disputes that GC is barred from raising because it waived them in the TTAB. Mem. at 19–22. Whether GC is barred from raising these arguments due to waiver is a question of law, and GC cites no disputed facts pertinent to waiver; its disputed facts go to the *merits* of the underlying issues, not waiver.

II.   **The Federal Circuit Decision Is Binding and Therefore Disposes of GC's Two Threshold Objections to Judgment for CT: That CT Cannot Assert Article 8, Inter-American Convention, Because of the Second Circuit's Decision and the Prohibitions of the CACR**

A.   **GC's Objection to Judgment on the Basis of the Second Circuit's Decision**

1.   **The Federal Circuit Decision Is Binding Because of Judicial Estoppel**

Astonishingly, GC argues that this Court should ignore the Federal Circuit Decision that the Second Circuit's decision is not preclusive, despite *GC itself* requesting that the Federal Circuit "should" address preclusion "rather than extend this [then] 17-year old dispute several more years by a remand to the Board." Brief for General Cigar, *Empresa*, No. 2013-1465 (Fed. Cir. Dec. 2, 2013), ECF 22, at *23, 41 (emphasis added). This is judicial estoppel. *See Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). GC cannot treat as non-binding the Federal Circuit Decision it itself sought in order to bind the parties and bring an end to litigation.

GC had the option of requesting the Federal Circuit to remand the question of preclusion to the TTAB. *See Delta-X Corp. v. Baker Hughes Production Tools, Inc.*, 984 F.2d 410, 413 (Fed. Cir. 1993). Indeed, CT pointed out that the Federal Circuit had the discretion to remand the preclusion issue to the TTAB or resolve the issue itself. *See* Brief for Empresa Cubana del Tabaco, *Empresa*, No. 2013-1465, (Fed. Cir. Sept. 20, 2013), ECF 16, at *42. If GC had asked the Federal Circuit for remand and the Federal Circuit agreed, then GC could have brought an action in the district court under §1071(b) on the question of preclusion if it was dissatisfied with the TTAB's decision.  However, it made a different choice, and it is necessarily and appropriately stuck with the results.

2.   **Contrary to GC's Unsupported Position, 15 U.S.C. §1071(a)(4) Is Applicable to §1071(b) Actions, Making the Federal Circuit Decision Binding**

15 U.S.C. §1071(a)(4) provides that the mandate and opinion of the Federal Circuit "shall

govern the further proceedings in the case." The Fourth Circuit has described it as "mandatory," a "strict version of the 'law of the case' rule," and "does not "admit[] … exceptions." *Snyder's-Lance v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 522 & n.8 (4th Cir. 2021). Application of §1071(a)(4) here would foreclose GC's two threshold objections to judgment: that issue and claim preclusion arising from the Second Circuit's decision bar CT's Article 8 claim; and the CACR likewise bar its claim.

For this reason, GC argues that the provision does not apply here because, while it provides that the Federal Circuit's decision governs "the further proceedings in the case," this a different "case." However, this argument is squarely foreclosed by *Snyder's-Lance*: Federal Circuit decisions are "law of *the case*" in subsequent §1071(b)(1) actions. 991 F.3d at 517 n.3. (emphasis added). If the district court is "the case" for purposes of law of the case, then it is "the case" for purposes of §1071(a)(4). Indeed, GC asks for vacatur of the TTAB order, First Amended Complaint ("FAC"), ECF 27 at 50, and has expressly acknowledged that the TTAB cancellation proceeding was a "prior stage[] *of this proceeding*." Joint Discovery Plan, ECF 20 at 3 (emphasis added).

Decisively, there would be no need to include §1071(a)(4)'s "shall govern" language if it were only binding on the TTAB, as there can be no doubt that an appellate court's decision is binding on the body whose decision it reviews. As a result, GC's interpretation fatally violates the rule against surplusage. *See Snyder's-Lance*, 991 F.3d at 520–21. Furthermore, GC makes no attempt to explain what role §1071(a)(4)'s "shall govern" would play in §1071's scheme if it did not make Federal Circuit decisions binding on actions filed in district court.

In *Gillette*, the Ninth Circuit directly addressed whether §1017(a)(4) applies to the subsequent district court action and held that it did. The Circuit explained that its ruling that a district court "must … recognize that the [Federal Circuit's predecessor]'s opinion foreclosed all

points which it decided," both "fully protect[s] the integrity of the earlier decision of the [Federal Circuit's predecessor]" and "satisfy[ies]" §1071(a)(4)'s "shall govern" requirement. *Gillette*, 435 F.2d at 1117. GC has not cited any contrary authority, and, to CT's knowledge, there is none. The Fourth Circuit cited and discussed *Gillette* approvingly in *Snyder's-Lance*. See 991 F.3d at 525–26. Without deciding the question, the Fourth Circuit stated that "the better interpretation of §1071(a)(4)" "is that it incorporates a strict version of the 'law of the case rule in the event that the Federal Circuit renders a decision and, later, the case comes before a different circuit court." 991 F.3d at 522.

In *Snyder's-Lance*, the Fourth Circuit considered it essential that a party not be allowed to relitigate in the district court what the Federal Circuit had already decided on appeal from a prior TTAB decision if §1071(b) actions were to be permitted following a subsequent TTAB decision in the case. Otherwise, a party would have a second bite at the apple, there would be redundant litigation and conflicts between the Federal Circuit decisions and those in the subsequent action that would violate the "primacy" of the initial Federal Circuit decision. *Snyder's-Lance*, 991 F.3d at 521–22 (internal quotations omitted).  While the law of the case doctrine goes far in providing that essential safeguard (*see infra*), the Lanham Act's inclusion of §1071(a)(4) establishes that, in creating a system where there could be an appeal to the Federal Circuit from one TTAB decision in a case and a district action challenging a second TTAB decision in the same case, Congress intended to go beyond law of the case.

Section 1071(a)(4)'s language is plain— it refers to all "further proceedings in the case" without exception for further proceedings in the district court under §1071(b)(1).[1]  GC's

---

[1] *See United States v. Wayda*, 966 F.3d 294, 303 (4th Cir. 2020) ("[W]hen the statute's language is

interpretation of §1071(a)(4) would allow parties a "second bite at the apple"—an outcome the Fourth Circuit unequivocally rejected. *Snyder's-Lance*, 991 F.3d at 517 n.3, 522. Moreover, such a "second bite" would be fundamentally at odds with §1071, which allows a party to seek remedy *either* by appeal to the Federal Circuit *or* by bringing a civil action in district court, *but not both*. *See* §1071(a)(1) (appeal to Federal Circuit "waiv[es]" rights under section (b)) & (b)(1) (allowing civil action "unless appeal has been taken"). GC's interpretation would also waste judicial and the parties' resources by allowing multiple appeals on the same issue and creating exactly the type of extended delays the bifurcated §1071 review system was intended to resolve. *See Snyder's-Lance*, 991 F.3d at 524 (*citing Hoover Co. v. Coe*, 325 U.S. 79, 86–87 (1945)) (Congress enacted the parallel procedures for patents "to foreclose redundant appeals—appeals of the same decision in different forums…") (internal quotations omitted).

     GC claims that applying §1071(a)(4)'s "shall govern" language to a civil action under §1071(b)(1) would violate the negative-implication rule and is inconsistent with §1071's legislative history. Opp. at 13–16. However, the "force of any negative implication . . . depends on context;" the negative implication rule "does not apply unless it is fair to suppose that Congress considered" and "meant" the negative implication. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (internal quotations omitted). Here, the context supports applying §1071(a)(4)'s "shall govern" provision to §1071(b)(1) actions for the reasons identified above and there is no indication that Congress "considered," let alone "meant," otherwise.

     GC relies on the Supreme Court's decision in *Hoover*, but the Supreme Court never stated, much less "determined," as GC asserts, that the Federal Circuit's decision "*only*" governed the

---

plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation omitted).

case in the Patent Office. Opp. at 15 (emphasis original). The issue of whether the Federal Circuit (or its predecessor court)'s decision would govern a subsequent civil action was never considered in *Hoover*.

### 3.   Contrary to GC's Unsupported Position, Law of the Case Is Applicable to §1071(b) Actions; Intervening Authority Does Not Justify Disregard of the Federal Circuit Decision Under that Doctrine

In its opening brief, CT showed that, even aside from §1071(a)(4), the ordinary principles of law of the case apply. Mem. at 9. GC's argument that law of the case rules do not apply, Opp. at 18–19, is squarely foreclosed by the Fourth Circuit's decision in *Snyder's-Lance*: "Plaintiffs may not . . . seek reconsideration of the Federal Circuit's original decision, which acts as the law of the case." 991 F.3d at 517 n.3. GC does not even mention *Snyder's-Lance* in its argument regarding ordinary law of the case principles, let alone demonstrate how this binding authority is not applicable here. Nor does any of the authority GC cites support its position or even address the fact pattern presented here.

GC argues that, even if law of the case rules apply, the Court should disregard the Federal Circuit Decision and reach a different result because "intervening legal authority from a higher court casts serious doubt on the correctness of the prior decision." Opp. at 22. This argument is made only with respect to *issue* preclusion; GC does not claim there has been an intervening change in the law as to claim preclusion, and thus has not come forward with any justification for the Court to disregard the Federal Circuit's decision on claim preclusion.

As to issue preclusion, even if intervening Supreme Court authority casts serious doubt on the correctness of the Federal Circuit's decision—which it does not (see *infra*)—casting "serious doubt" is not enough. *See U.S. v. Cannady*, 63 F.4th 259, 267 (4th Cir. 2023) (cited by GC) (exception only applies in "very special situations"); *United States v. Aramony*, 166 F.3d 655, 662 (4th Cir. 1999) (requiring "extraordinary circumstances" to apply the exception); *Winston v.*

*Pearson*, 683 F.3d 489, 500 (4th Cir. 2012) (change in law must "compel[] disturbing [] prior holding"); *Fusaro v. Howard*, 19 F.4th 357, 367 (4th Cir. 2021) (applying "compel" requirement).[2] Moreover, the exception cannot simply be applied for any change in the law; the law must have "*changed dramatically*." *Cannady*, 63 F.4th at 267–68 (emphasis added; internal quotations omitted) (applying exception when there was a "clear change in precedent").

GC relies exclusively on *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015) ("*B&B*"), asserting that it changed the governing law. Opp. at 22-25. In a thorough, well-reasoned analysis, the TTAB soundly rejected the same arguments that GC makes here. TTAB Decision, at 36–41 (A91973–78).[3] There was no change in the law, let alone the "dramatic" or "clear change in precedent" required to apply the exception.[4] *B&B* endorsed the preclusion principles and authority that the Federal Circuit relied upon. And *B&B*'s specific ruling concerned a completely different issue, likelihood of confusion, than the one presented here. Instead of showing the requisite *change in the law*, GC merely presents the same arguments that failed before the Federal Circuit, hoping to convince this Court that the Federal Circuit was wrong in its application of unchanged preclusion principles. In other words, it seeks a second bite at the apple.

The Federal Circuit applied the same rule GC says *B&B newly* established, Opp. at 22, namely, that district court rulings have preclusive effect before the Board if ordinary preclusion standards are met. *Empresa*, 753 F.3d at 1276. Indeed, the rule *B&B* purportedly established has

---

[2] GC implies that *Cannady* modified, *sub silentio*, the Fourth Circuit's prior "compel" requirement. Opp. at 22. However, the Fourth Circuit never indicated in *Cannady* that it was modifying this requirement or that the language it used—"undermines or rejects the principal legal reasoning behind the district court's prior decision"—has any less force than "compel[s] a different result." *Cannady*, 63 F.4th at 267 (internal quotations omitted); *Winston*, 683 F.3d at 500.

[3] Citations beginning with "A" are to TTAB record that has been admitted in this action.

been settled in the Federal Circuit for over 50 years.[5] Further, *B&B*, contrary to GC's odd reading, addressed the opposite issue: "whether the District Court … should have applied issue preclusion to the TTAB's decision." 575 U.S. at 141.[6]

Nor did *B&B* change the standards for issue preclusion. Just as the Supreme Court did in *B&B*, the Federal Circuit, like the Fourth Circuit, has long relied on and applied Restatement (Second) Judgments §27's standards;[7] indeed, the Federal Circuit here relied on §27's four factors and cited its own precedent expressly applying §27. *Empresa*, 753 F.3d at 1276 (*citing Jet*, 223 F.3d at 1366). Because *B&B* reaffirmed application of the "ordinary elements" of issue preclusion, as reflected in the Restatement, 575 U.S. at 153, and because the Federal Circuit had applied the same ordinary elements (derived from the same source), the law governing issue preclusion did not change.

GC also cannot meet the second and third requirements, that the Federal Circuit "must have applied the old law," and that the change in law "compels disturbing [the] prior holding." Mem. at 10 (quoting authority). As shown, the Federal Circuit applied Restatement §27's preclusion standards, which *B&B* turned to for the "ordinary elements" of preclusion. There was no change in the law in any way relevant here and, even if the law changed, the Federal Circuit already applied the new law and there is no warrant to disturb its holding.

---

[5] *See, e.g.*, *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365-66 (Fed. Cir. 2000); *Midland Co-ops., Inc. v. Midland Int'l Corp.*, 421 F.2d 754, 164 USPQ 579 (CCPA 1970); 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §32:94 (5th Ed. 2017).

[6] To the extent the Supreme Court addressed the situation presented here, it was only to favorably cite the Board's *existing practice* of giving preclusive effect to district court decisions. *Id.* at 152–53.

[7] *See, e.g.*, *In re Raynor*, 922 F.2d 1146, 1149 (4th Cir. 1991); *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 770 F. Supp. 1093, 1101 (E.D. Va. 1991).

In truth, GC's argument is not that the law changed, but that it disagrees with the conclusion the Federal Circuit reached. This, however, gets it nowhere. To even consider such an argument for disregarding law of the case, the prior decision must be "clearly erroneous," "wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 193–94 (4th Cir. 2009) (internal quotations omitted).

### 4. GC's "Remand" Argument is Barred by Judicial Estoppel, and is Misplaced

GC argues that this Court should find that the Federal Circuit's "deciding preclusion []
instead of remanding" to the TTAB was "clear error," Opp. at 19–21, although *GC itself* requested that the Federal Circuit "should" address this "pure question of law"—preclusion— "rather than . . . remand to the Board" because the Circuit "has the authority to conduct any preclusion analysis that it believes necessary." *Supra* at 3. As noted, this is judicial estoppel. *See Lowery*, 92 F.3d at 223.

Moreover, GC has not presented any reason for the Court to disturb the Federal Circuit's longstanding and well-reasoned assertion of authority to decide pure issues of law presented to the TTAB but not reached by it that were fully briefed. *Empresa*, 753 F.3d at 1276. None of the cases GC cites stand for the proposition that courts must remand straightforward legal issues, requiring no subject matter expertise, like issue and claim preclusion. The purpose of the remand rule is to ensure that an agency—not a reviewing court—makes the subject-matter-specific decisions that Congress delegated to it and to which it can apply its expertise. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). GC's cited cases address the ability of courts to make precisely those highly technical decisions that Congress intended for the agencies, and not, as GC acknowledges

preclusion is, a "pure question of law."[8]

>    **5.**    **Even if Not Disposed of by the Federal Circuit Decision, GC's Preclusion Arguments Fail**

Issue Preclusion. As shown, the Federal Circuit's holding that issue preclusion does not apply is binding. The Court need not and should not go further.

In any event, GC has done nothing to refute the Federal Circuit's analysis of what the issues in the Federal Action and the TTAB were and that they are different. *See* Mem. at 10–11; *Empresa*, 753 F.3d at 1277–78. GC does not present any new arguments that were not already argued to the Federal Circuit, and the Federal Circuit correctly found those arguments unpersuasive.

GC argues that there is issue preclusion by equating the district court's authority in the Federal Action under §1119 with the TTAB's authority under §1067. Opp. at 23. However, the Second Circuit did not even mention §1119, let alone decide whether it authorized application of Article 8, and it did not address, let alone decide, whether the TTAB would have authority to apply Article 8 under §1067 even if the court did not have that authority under §1119. *Empresa*, 399 F.3d 462 (2d Cir. 2005); *see also Empresa*, 478 F. Supp. 2d at 520-21, *aff'd,* 541 F.3d 476 (2d Cir. 2008). Further, as the Federal Circuit correctly found, the issue that the Second Circuit did address and resolve, whether Article 8 is enforceable under Section 44(h) as a provision concerning unfair competition, is different than whether Article 8 is enforceable directly by the Board under §1067. *Empresa*, 753 F.3d at 1277–78.

---

[8] *See Smith v. Berryhill*, 139 S. Ct. 1765, 1779-80 (2019) (eligibility for disability benefits); *Chenery*, 318 U.S. at 92 (restrictions on stock transactions); *Calcutt v. FDIC*, 143 S. Ct. 1317, 1321 (2023) (whether an individual should be barred from working in banking); *Austin v. Jackson*, 353 F.2d 910, 912 (4th Cir. 1965) (cancellation of flue cured tobacco allotments on a farm); *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 17 (2002) (asylum eligibility in light of political change in Guatemala); *Gonzalez v. Thomas*, 547 U.S. 183, 185 (2006) (whether a family is a social group for purposes of refugee statutes).

Claim Preclusion. GC argues that the Federal Circuit erred in holding there is no claim preclusion because "even if" (as the Federal Circuit expressly found, Federal Circuit Decision at 1277–78) "CT did not plead and argue a 'direct' Article 8 claim in the Southern District of New York, it was barred by principles of claim preclusion from raising such a claim in the Proceeding." Opp. at 25. GC's position fails for several reasons.

First, the district court in the Federal Action held that CT *could* proceed in the TTAB and invoke the TTAB's authority under the CACR to cancel the Registrations (by virtue of General License, 31 C.F.R. §515.527), which the district court itself lacked. *Empresa*, 478 F. Supp. 2d 513 (S.D.N.Y. 2007), *aff'd* 541 F.3d 476 (2d Cir. 2008). GC had moved for an order directing the TTAB to dismiss the cancellation proceedings. The district court denied the motion, finding that, in its initial decision, the Second Circuit "only had before it the question whether this Court's cancellation and injunction orders constituted a transaction that violated the CACR, rather than the question of whether a cancellation order by the TTAB would also violate the embargo." *Id.* at 520–21. The district court squarely held that "it is appropriate for Cubatabaco to argue" that §515.527 authorizes the TTAB to order cancellation "to the TTAB." *Id*. at 521.

Because the district court so held, GC is preluded, by issue preclusion, from arguing that CT could not proceed in the TTAB and so argue.

Second, GC's position that CT cannot assert a direct Article 8 claim in the TTAB is undermined by GC's own assertion that the CACR would have prohibited the federal court from granting cancellation based on that claim had it been raised.[9] A bar to relief such as this makes

_____

[9] *See* Opp. at 11–12 ("any [court] order that cancels the Registrations to the benefit of CT, would be a prohibited transfer of property to a Cuban entity," in violation of the CACR; "[the] CACR prohibits CT from obtaining cancellation of the Registrations in this Action [and, hence, any

claim preclusion inapplicable to a subsequent action. Mem. at 12-14. GC contends that this is so only when the bar is lack of subject-matter jurisdiction, Opp. at 29, but the district court's above decision precludes it from so arguing, and 18A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. §4437 (3d ed. 2018), cited by CT in its opening brief, Mem. at 13, provides a plethora of authority, including decisions by the Supreme Court and the Fourth Circuit, holding that this is not so.

GC falls back on Fed. R. Civ. P. 41(b). Opp. at 27. However, the dismissal here was without prejudice, because of the district court's above-discussed decision, and the Supreme Court has made clear that a judgment under Rule 41(b) does not necessarily have claim-preclusive effect and that the three exceptions to claim preclusion specifically noted in the Rule are not exhaustive. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503 (2001).[10]

Finally, GC argues that the Federal Circuit erred because of the second requirement of claim preclusion, that the claim in the second action arises out of the same transactional facts as the claim in the first action. Opp. at 25–27. However, as the Federal Circuit found, that is not true here because of the CACR's differentiated effect in the Federal Court Action and the TTAB proceeding. Federal Circuit Decision, at 1278.

### B.     GC's CACR Argument Is Barred and Meritless

GC offers no justification for departing from the Federal Circuit's holding that CACR General License 31 C.F.R. §515.527 authorizes the TTAB to cancel the Registrations, which

---

federal court action] under <u>any</u> theory;" emphasis in original); Opp. at 30 n.8 (a judicial order of cancellation "would be a prohibited transfer of property to a Cuban entity"); FAC ¶ 17 ("to cancel [the] Registrations … would be a transfer of U.S. property to Cubatabaco forbidden by the Embargo Regulations.").

[10] Dismissal on the basis of a precondition (here, lack of CACR authorization) must be treated as a dismissal without prejudice. *See*, *e.g.*, *Criales v. Am. Airlines, Inc.*, 105 F.3d 93, 96 (2d Cir. 1997).

"govern[s]" pursuant to §1071(a)(4) and is also law of the case. Mem. at 14. That ends the matter.

Even if not barred, GC's CACR argument would fail, as shown. Mem. at 14–16. In its response, GC ignores the General License's text. It does not simply authorize registration, but "transactions related to the registration." The CACR defines "transaction" to include "transfer," 31 C.F.R. §515.309(a), which they define to include "the issuance" of an "administrative process or order." 31 C.F.R. §515.310. The TTAB's issuance of an order cancelling registrations that block a Cuban party's registration of a trademark is a transaction "related" to the Cuban party registering the trademark.

Likewise, GC's reading of the OFAC Director's 1996 letter ignores what it states and would render it senseless. The OFAC Director explained that the General License and its parallel provision, 31 C.F.R. §515.528, are "intended to provide reciprocal *protection* for the intellectual property of Cuba and the United States." ECF 35-1 at 1 (emphasis added). GC does not, and cannot, explain what "protection" would be "provide[d]" by the General License if, as GC contends, it only authorizes the filing of a cancellation petition but not the TTAB's cancellation of a registration on appropriate grounds. It, of course, would provide none.

GC's effort to equate the General License with the specific license issued by OFAC in the Federal Action, Opp. at 11, fails due to OFAC's authoritative construction of the General License. Further, the specific license is simply a typical OFAC litigation license authorizing an individual Cuban party to pursue judicial remedies, *Empresa*, 399 F.3d at 475–76 (2d Cir. 2005), not remotely akin to the General License, which is the foundational provision for trademark relations with Cuba in the context of the Embargo.

GC relies on the Second Circuit's reading of the CACR to bar cancellations unless authorized by license, but the issue here, as the Federal Circuit correctly pointed out, is whether

14

the General License, 31 C.F.R. §515.527, provides the TTAB with that authorization.

GC takes the categorical position that the CACR and the General License do not authorize cancellation of a registration on "any theory," Opp. at 12 (emphasis in original), an untenable and unsupported position.[11] It fails to distinguish between cancellation on grounds that themselves rest on a prohibited transaction, and those that do not.[12] It would destroy the "reciprocal protection" of intellectual property that the OFAC Director has stated to be the intention of the General License. Since, as the OFAC Director noted, the General License and the license authorizing U.S. nationals to engage in trademark transactions in Cuba are "parallel," GC's position would prevent U.S. companies from obtaining cancellation of registrations in Cuba, which they have found it necessary to do to protect their intellectual property. *See* Mem. at 26; Compendium of Materials, ECF 35-1, at 30.

Finally, contradicting itself, GC states at the very end of its brief that it does "not contend the CACR bars the TTAB from cancelling the Registrations to the benefit of a Cuban entity." Opp. at 30 n.8 (emphasis removed). But that is what is at issue here: GC asks the Court to vacate the TTAB's order of cancellation. ECF 27 at 49–50.

III.   **GC Cannot Avoid Judgment Because of Its Waiver in the TTAB of Laches and Acquiescence as Defenses, and Its Waiver of Any Contention that Article 8's Requirements Are Not Met**

In its opening brief, CT relied on decisions by a court of this District and another finding that issues (grounds for relief or defenses) that were waived in the TTAB could not be resurrected

---

[11] On GC's theory, even cancellation of a registration on the ground that a Cuban party had priority under Section 44(d) (priority based upon date of the foreign party's application to register a mark in its home country) would be barred.

[12] *See*, *e.g.*, *Empresa*, 399 F.3d at 475–76 (2d. Cir. 2005) (CACR barred cancellation because no CACR License authorizes Cuban nationals to acquire trademarks under the "well-known" marks doctrine, as distinct from acquiring trademark rights through registration).

before the district court in §1071(b) actions. Mem. at 16 and 18 (*citing Zawod v. SIA "Baltmark Invest"*, No. 12-cv-515, 2013 WL 6189233 (E.D. Va. Nov. 26, 2013) (Cacheris, J.); *Med. Extrusion Techs., Inc. v. Apollo Med. Extrusion Techs., Inc.*, No. 17-cv-2150, 2020 WL 5709298 (S.D. Cal. Sept. 24, 2020)). GC does not mention, let alone successfully distinguish, either case in its opposition. Nor has GC come forward with any other case that addresses whether waived issues can be resurrected, let alone a case in GC's favor.

The Court should adhere to the precedent cited by CT, which is supported by well-reasoned decisions. In *Zawod*, the court carefully evaluated and rejected the same arguments that GC makes here. It acknowledged and accepted that a party can assert "new claims" and present "new evidence" in a §1071(b) action, and specifically discussed *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8 (D.C. Cir. 2008), heavily relied upon by GC. It rejected GC's conclusion that waived claims can be resurrected.

In *Zawod*, a party attempted to assert a claim that it had not raised in the TTAB despite the TTAB's compulsory counterclaim rule. The court persuasively explained that this was not permissible because "the policy of avoiding piecemeal litigation and the compulsory counterclaim rule 'itself would be contravened if a party was simply allowed to ignore it, preferring to take its chances with the district court.'" *Id.* at *8, *quoting Sprinklets Water Ctr., Inc. v. McKesson Corp.*, 806 F. Supp. 656, 663 (E.D. Mich. 1992) (a case that predates *Aktieselskabet*, but which the court rightly found is not superseded by it; *Zawod* at *8, n.8).[13]

GC's affirmative defenses of laches and acquiescence are no less compulsory under the

---

[13] In addition to *Sprinklets*, the court in *Zawod* cited its own earlier decision in *Skippy, Inc. v. Lipton Inv., Inc.,* 345 F. Supp. 2d 585 (E.D. Va. 2002), which the Fourth Circuit affirmed "for the reasons stated by the district court." *Skippy, Inc. v. Lipton Inv., Inc.*, 74 F. App'x 291 (4th Cir. 2003).

TTAB's rules than compulsory counterclaims. *See* TTAB Decision, at 5-6 (A91942–43); TBMP §311.02(c) (citing rules and authority). It was similarly compulsory that GC contest CT's assertions and evidence on the merits of the Article 8 claim. The appropriate consequences of waiver are even clearer and more compelling here than in *Zawod*, given that both waived issues were not only compulsory but expressly part of the TTAB proceeding and raised by GC in its own pleadings.

No case cited by GC evaluated issues that were raised and then abandoned, let alone found that such classic waiver is undone by filing a §1071(b) action. GC relies on case law holding that, under §1071(b), courts "may consider [] new issues … that were not before the TTAB." Opp. at 10; *Aktieselskabet*, 525 F.3d at 13 (emphasis added).[14] This case neither discusses nor justifies resurrecting a waived issue that *had been* before the TTAB. In fact, it examined an instance of forfeiture, not waiver. The distinction between forfeiture and waiver is clearly stated by Supreme Court precedent cited in CT's moving brief, Mem. at 16-18,[15] but GC's opposition does not acknowledge or grapple with it in any way.

Instead, GC insists without support that "the *de novo* nature of a § 1071(b) action" somehow necessarily permits resurrection of old issues that it waived. Opp. at 9. This misunderstands the role of the *de novo* standard. A standard of review exists to identify the amount

---

[14] The other cases GC cites have no bearing on waiver. In *CAE, Inc. v. Clean Air Eng'g, Inc.*, the district court considered new claims *that could not have been brought* before the TTAB as they were beyond its jurisdiction. 267 F.3d 660, 670 (7th Cir. 2001). GC cites a third case, *Apple, Inc. v. Cao*, 2022 U.S. Dist. LEXIS 24665 (E.D.Va Jan. 14, 2022), only for the proposition, which CT does not contest, that a party may submit "new evidence."

[15] "A waived … defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012). "[A] federal court has the authority to resurrect only forfeited [not waived] defenses." *Id.* at 471 n.5.

of deference a court should give to prior findings by another tribunal, but CT does not ask this Court to defer to findings that were made by the TTAB. CT asks that this Court independently find waiver based on GC's conduct in the TTAB. The standard of review is not relevant to that assessment.

Moreover, the allowance of "new issues" and "new evidence" in a *de novo* action cannot resurrect waived issues. Affirmative defenses that are raised and then abandoned are not legally or semantically "new issues." Nor are the merits of the Article 8 claim "new,"[16] and what GC previews now, Opp. at 8-9, is merely new evidence and new arguments.[17] There is no rational basis to conclude that new evidence or arguments can resurrect a waived issue, and GC offers none.[18]

If GC were correct that a §1071(b) action wipes the slate clean with respect to past waiver, a party that wished to challenge a registration in federal court could treat the initial, required TTAB proceeding as a farce.[19] It could assert and then drop an issue, hoping for the best but knowing, if there is an adverse decision, its actions would have no impact or consequences because it could

---

[16] GC argues it was "inappropriate" in a Rule 12(c) motion for CT to summarize its evidence on Article 8's requirements. Opp. at 8. But CT's identification of the evidence it submitted serves to demonstrate that GC's failure to respond was no unintentional oversight or forfeiture. It was a knowing and intelligent decision to forego all arguments on a substantial – and ultimately dispositive – issue in the case that was squarely presented by CT's proof.

[17] The Fourth Circuit has explained that *issues* are grounds for relief or defenses, while "*arguments* are whatever position is taken in support of or against each asserted ground for relief." *Samples v. Ballard*, 860 F.3d 266, 272 (4th Cir. 2017) (emphasis original) (*citing United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992)).

[18] A court conducting a *de novo* review can consider new arguments, but only those pertaining to the issues properly before it. *George*, 971 F.2d at 1118 (consideration of new arguments "as part of its obligation to determine *de novo* any issue to which proper objection is made").

[19] Congress does not allow for a claim of cancellation to be brought in federal court in the first instance unless it is ancillary to another claim – such as for trademark infringement – over which the court already had jurisdiction. 15 U.S.C. §1119. Instead, an action directed at cancellation must first be brought before the TTAB.

begin anew in federal court. The process that Congress established, and the important function it assigned to the TTAB, would be no more than a charade and a meaningless box to be checked – never mind that the TTAB and the other party had, in the meantime, been forced to expend significant effort and resources.

The §1071(b) process is not meant to so undermine the role and authority of the TTAB. The Fourth Circuit and the Supreme Court have made clear that the *de novo* standard of review does not mean the TTAB proceeding and decision should be disregarded by the district court.[20] A party's choices before the TTAB have consequences that do and should survive into §1071(b) actions.[21] Respect for the Congressionally-mandated role of the TTAB therefore requires the conclusion – consistent with the cases CT has cited – that knowing and intelligent waiver of issues is just such a choice, by which GC remains bound.

CT engaged in the TTAB proceeding in good faith. It conducted and was subject to extensive discovery, and fully briefed and argued important issues. GC, however, chose not to brief at all the affirmative defenses it had alleged or the merits of the Article 8 claim. Under the law of the TTAB, the Fourth Circuit, and the Supreme Court, this is binding and inescapable waiver. *See* Mem. at 16-19 (citing cases). GC handwaves this issue away in a single paragraph in its opposition,

---

[20] A district court should "accord respect to decisions of the PTO [] through the court's broad discretion over the weight to be given to evidence newly adduced." *Kappos v. Hyatt*, 566 U.S. 431, 445 (2012). The "district court may [] review the PTO proceedings and give new evidence less weight if the facts of a particular case cast suspicion on the new evidence that an applicant failed to introduce before the [PTO]." *Swatch AG v. Beehive Wholesale, Ltd. Liab. Co.*, 739 F.3d 150, 156 n.6 (4th Cir. 2014) (internal quotation marks omitted) (*quoting Hyatt v. Kappos*, 625 F.3d 1320, 1335 (Fed. Cir. 2010), affirmed by *Kappos*, 566 U.S. at 432).

[21] Similarly, as GC emphasizes, a decision by the TTAB can have preclusive effect in a later federal action under *B&B*. "When registration is opposed, there is good reason to think that both sides will take the matter seriously," and, accordingly, "registration decisions can be weighty enough to ground issue preclusion." *B&B Hardware*, 575 U.S. at 159.

Opp. at 9-10, without citation to any case that evaluates an analogous scenario.

If GC were allowed to resurrect claims it deliberately and knowingly waived in the TTAB, that would encourage piecemeal litigation, and undermine the TTAB's utility, integrity and procedures. GC's strategic reversals before this Court do not and should not excuse its waiver and resurrect issues it let die before the TTAB.

## CONCLUSION

For the foregoing reasons, Cubatabaco's motion for judgment on the pleadings should be granted. The TTAB's order of cancellation should be sustained on the ground that the TTAB found dispositive, and the First Amended Complaint's counts for a declaration that there are no other grounds for cancellation should be dismissed as moot.

Dated: July 5, 2023                                    Respectfully submitted,

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch (VA Bar No. 70116)          Michael Krinsky (Admitted *Pro Hac Vice*)
MCGUIREWOODS LLP                              Lindsey Frank (Admitted *Pro Hac Vice*)
World Trade Center                            RABINOWITZ, BOUDIN, STANDARD,
101 West Main Street, Ste 9000               KRINSKY & LIEBERMAN, P.C.
Norfolk, Virginia 23510-1655                 320 West 85th Street
Telephone: (757) 640-3727                    New York, NY 10024
Facsimile: (757) 640-3947                    Telephone: 212-254-1111
E-mail: bhatch@mcguirewoods.com              Facsimile: 212-674-4614
                                             E-mail: mkrinsky@rbskl.com
Lucy Jewett Wheatley (VA Bar No.77459)       E-mail: lfrank@rbskl.com
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-4320
Facsimile: (804) 698-2017
E-mail: lwheatley@mcguirewoods.com

John Marston (VA Bar No. 95106)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006
Telephone: 202-232-1200
Facsimile: 202-785-6687
E-mail: jmarston@foleyhoag.com

Natasha N. Reed (Admitted *Pro Hac Vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: 212-812-0400
Facsimile: 212-812-0399
E-mail: nreed@foleyhoag.com

Nicole Kinsley (Admitted *Pro Hac Vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone: 617-832-1000
Facsimile: 617-832-7000
E-mail: nkinsley@foleyhoag.com


*Attorneys for Empresa Cubana del Tabaco, d.b.a. Cubatabaco*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 5th day of July, 2023, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court for the Eastern District of Virginia, using the CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: July 5, 2023

<u>/s/ Benjamin L. Hatch</u>
Benjamin L. Hatch (VA Bar No. 70116)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Ste 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3727
Facsimile: (757) 640-3947
E-mail: bhatch@mcguirewoods.com

*Attorney for Empresa Cubana del Tabaco,*
*d.b.a. Cubatabaco*